# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| BILLITTERI v. SECURITIES AMERICA, INC., et al.  (Provident Royalties Litigation) | ) ) ) ) ) ) | |
| | | Case No. 3:09-cv-01568-F |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) ) ) | AND RELATED CASES |

## DEFENDANT SECURITIES AMERICA, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ......................................................................................1

ALLEGATIONS RELEVANT TO THIS MOTION ....................................................2

ARGUMENT ...................................................................................................................4

I.      PLAINTIFFS MUST SATISFY AN EXACTING PLEADING STANDARD UNDER EACH OF RULE 8 AND RULE 9(b)................................4

II.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER ARTICLE 581-33(A)(2) OF THE TEXAS SECURITIES ACT (COUNT I) .................................6

       A.     Neither The Underlying Fraud Nor Securities America's Alleged Role In It Is Pled With Particularity ............................................8

            1.     The Alleged Underlying Ponzi Scheme Is Not Pled With Particularity.....................................................................8

            2.     Securities America's Alleged Role in the Underlying Ponzi Scheme Is Not Pled With Particularity ..........................................10

       B.     The Complaint Does Not Identify A Single Misrepresentation or Omission Made By Securities America.....................................................12

       C.     The Complaint Does Not Allege That The Alleged Misstatements Of Future Performance In The PPMs Were Knowingly False When Made ......................................................................................................13

III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY (COUNT III) AGAINST SECURITIES AMERICA..........15

CONCLUSION................................................................................................................17

# TABLE OF AUTHORITIES

Page

## CASES

Anderson v. Vinson Exploration, Inc., 832 S.W.2d 657 (Tex. App.-El Paso 1992) .......................6

Anixter v. Home-Stake Production Co., 77 F.3d 1215 (10th Cir. 1996) ......................................13

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009)................................................................................. passim

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).............................................................. passim

Carroll v. Fort James Corp., 470 F.3d 1171 (5th Cir. 2006).......................................................6, 10

In re Charter Communications, Inc., 443 F.3d 987 (8th Cir. 2006), aff'd sub nom.
Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148 (2008)...........................13

Conley v. Gibson, 355 U.S. 41 (1957)............................................................................................5

Dorsey v. Portfolio Equities, Inc., 540 F.3d 333 (5th Cir. 2008) ............................................11, 14

Duperier v. Texas State Bank, 28 S.W.3d 740 (Tex. App.-Corpus Christi 2000)........................12

Edward D. Jones & Co. v. Fletcher, 975 S.W.2d 539 (Tex. 1998)................................................16

In re General Motors ERISA Litigation, 2006 WL 897444 (E.D. Mich. April 6, 2006) .............15

Grotjohn Precise Connexiones International, S.A. v. JEM Finance, Inc., 12 S.W.3d 859
(Tex. App.-Texarkana 2000)............................................................................................................6

Hand v. Dean Witter Reynolds Inc., 889 S.W.2d 483 (Tex. App. 1994) ......................................16

Herrington v. Household International, Inc., 2004 WL 719355 (N.D. Ill. March 31, 2004) ..........7

Herrmann Holdings, Ltd. V. Lucent Technologies, Inc., 302 F.3d 552 (5th Cir. 2002) ...........7, 14

In Re IKON Office Solutions, Inc. Sec. Litigation, 86 F. Supp. 2d 481 (E.D. Pa. 2000) ..............7

Lexington Insurance Co. v. North American Interpipe, Inc., 2009 WL 1750523 (S.D.
Tex. 2009)......................................................................................................................................17

Lone Star Ladies Investment Club v. Schlotzsky's Inc., 238 F.3d 363 (5th Cir. 2001)...............15

Martinez Tapia v. Chase Manhattan Bank, N.A., 149 F.3d 404 (5th Cir. 1998).........................16

Melder v. Morris, 27 F.3d 1097 (5th Cir. 1994) .........................................................................15

8936492.1

**TABLE OF AUTHORITIES**
**(Continued)**

Page

Patel v. Holiday Hospitality Franchising, Inc., 172 F. Supp. 2d 821 (N.D. Tex. 2001)................11

R2 Investments v. Phillips, 2003 WL 22862738 (N.D. Tex. March 26, 2003).............................12

Rogers v. Baxter International, Inc., 417 F. Supp. 2d 974 (N.D. Ill. 2006)..................................15

Southland Sec. Corp. v. Inspire Insurance Solutions Inc., 365 F.3d 353 (5th Cir. 2004)..........5, 10

Tel-Phonic Services, Inc. v. TBS International, Inc., 975 F.2d 1134 (5th Cir. 1992) ....................6

United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899 (5th Cir. 1997) ..........................................................................................................................6

Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273 (11th Cir. 2006)..................................7, 8

Williams v. Bell Helicopter Textron, Inc., 417 F.3d 450 (5th Cir. 2005) ......................................6

Williams v. WMX Technologies, Inc., 112 F.3d 175 (5th Cir. 1997)..................................5, 8, 11

Wright v. Ernst & Young LLP, 152 F.3d 169 (2d Cir. 1998).......................................................13

**RULES & STATUTES**

Fed. R. Civ. P. 8(a)(2)...................................................................................................4, 5, 8, 10

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

Rule 12(b)(6).....................................................................................................................4

Texas Securities Act, Article 581-33(A)(2).........................................................................6, 12, 14

8936492.1

Defendant Securities America, Inc. ("Securities America") submits this Memorandum of Law in Support of its Motion to Dismiss the Consolidated Amended Class Action Complaint ("Complaint" or "Compl.").

## PRELIMINARY STATEMENT

The Complaint seeks to impose liability on Securities America, and several other registered broker-dealers, for an alleged Ponzi scheme devised and perpetrated by other persons and entities who are presently subject to bankruptcy law protection and therefore immune from suit.  Unable to pursue their alleged claims against the proper defendants, Plaintiffs Joseph Billitteri ("Billitteri") and Sharon Kreindel Revocable Trust DTD 02/09/2005 ("Kreindel"), respectively residents of Illinois and Ohio ("Plaintiffs"), instead attempt to stretch the Texas Securities Act ("TSA") and Texas common law beyond the breaking point in seeking to hold Securities America, a Nebraska corporation, accountable for the alleged misconduct of these other insolvent entities.  With the benefit of hindsight, a statutory trustee, and an SEC civil action, Plaintiffs outline, in conclusory fashion, the purported indicia of a fraud scheme that Securities America somehow allegedly should have uncovered years before anyone else did or could have.  This action is misdirected and baseless, as is vividly demonstrated by Plaintiffs' inability to properly plead their claims against Securities America.  For the reasons set forth herein, Plaintiffs fail to state a claim upon which relief can be granted against Securities America under Counts I and III of their Complaint, and those claims should be dismissed.[1]

---

[1] Only two of the eleven named plaintiffs in this consolidated class action allegedly purchased securities from Securities America, as distinct from the other named broker-dealer defendants.  Accordingly, this motion on behalf of Securities America is directed to the claims of Plaintiffs Billitteri and Kreindel in Count I (alleging a violation of Article 581-33(A)(2) of the TSA) and Count III (alleging common law breach of fiduciary duty).  The only other claim in the case, Count II, alleges control person liability under the TSA against alleged "control persons" with respect to the various broker-dealer defendants.  Defendant Ameriprise Financial, Inc. is alleged as a "control person defendant" with respect to Securities America under Count II and has moved separately for dismissal of that claim.

## <u>ALLEGATIONS RELEVANT TO THIS MOTION</u>

Plaintiffs allege that in September 2006, Provident Royalties, LLC ("Provident Royalties"), began a series of offerings by affiliated companies and limited partnerships ("the Provident Entities"), created to invest in the oil and gas business.  (Compl. ¶ 1.)

The Provident Entities' securities were not publicly-offered securities but rather were offerings of securities exempt from registration pursuant to Rule 506 of Regulation D, 17 C.F.R. § 230.506, to be sold only to accredited investors through private placement memoranda ("PPMs").  (<u>Id.</u> ¶¶ 2, 53.)  Provident Asset Management ("PAM"), a broker-dealer affiliated with Provident Royalties, acted as the Managing Dealer for the offerings.  (<u>Id.</u> ¶ 52.)  PAM, as Managing Dealer, is alleged to have conducted each offering through a syndicate of participating broker-dealers across the country, allegedly including Securities America, that executed participation agreements with PAM.  (<u>Id.</u> ¶ 66.)  PAM is alleged to have (i) employed wholesalers that assisted the other broker-dealer defendants with product training through workshops and conference appearances; (ii) conducted sales presentations regarding the various offerings for the other broker-dealer defendants; and (iii) developed the sales and marketing materials designed to encourage investors to purchase the alleged Provident Securities.  (<u>Id.</u> at ¶¶ 66-67.)

Provident Royalties and the Provident Entities, none of which is a named defendant, are alleged to have offered the Providence Securities pursuant to a PPM that was substantially similar for each offering and that contained materially false and misleading statements, or that omitted material facts, pursuant to a complex and ongoing fraudulent Ponzi scheme.  (<u>See id.</u> ¶¶ 2-5, 7-8.)  Despite such repeated, though conclusory, allegations of fraud with respect to the underlying securities offerings, however, "Plaintiffs specifically disclaim any allegations of

2

fraudulent intent or scienter by the Broker Defendants with respect to the claims asserted against them under the Texas Securities Act and for breach of fiduciary duty." (Id. ¶ 9.)

Plaintiff Billitteri, an Illinois resident, allegedly purchased the securities of one of the Provident Entities, known as Shale 12, from Securities America (id. ¶ 17), but no allegations are made as to the time or place of purchase, or the specific identity of any Securities America representative allegedly involved in the purchase. Similarly, Plaintiff Kreindel, a trust formed under Ohio law, allegedly purchased preferred stock in Shale 12 and another alleged Provident Entity known as Shale Royalties 20, Inc. ("Shale 20") from Securities America (id. ¶ 22), but again no allegations are made as to the time or place of the purchase, or the identity of any Securities America representative allegedly involved in the purchase. As alleged, Securities America is a registered broker-dealer with its principal offices in Nebraska. (Id. ¶¶ 17-22, 33.)

Defendant Securities America is a broker-dealer, and is not alleged to have been, nor was it, an issuer, underwriter, or managing dealer of the Provident Securities. Some of Securities America's accredited investor customers purchased the Provident Securities, but Securities America is not alleged to have created or issued the PPMs or any other offering documents issued by Provident Royalties, PAM, or the Provident Entities.[2] Co-Defendant Ameriprise is a second-level parent company of Securities America.

In January 2009, Provident Royalties announced that it would cease accepting new investors into any of the open Provident Entities' offerings, and suspended dividends and

---

[2] The Complaint includes a conclusory allegation that "[t]he Broker Defendants participated in the drafting, preparation, approval, due diligence and/or dissemination of various false and misleading statements contained in the PPMs issued by the Provident Group". (Compl. ¶ 64.) However, the Complaint does not allege that Securities America specifically participated in one or more of these actions. Nor does the Complaint contain any specific factual allegation as to what actions were taken by any of the Broker Defendants with respect to "drafting, preparation, approval, due diligence and/or dissemination" of the PPMs.

3

payments for all investors in the offerings.  (Id. ¶ 119.)  In June 2009, Provident Royalties and

related and affiliated companies filed bankruptcy petitions.  (Id. ¶¶ 6, 123.)

The Complaint alleges that Securities America and other broker-dealers are liable for the

investment losses suffered by Plaintiffs because the PPMs, "issued by the Provident Group" (id.

¶ 64), allegedly contained false and misleading statements.  Plaintiffs also allege that Securities

America and the other broker-dealers are liable for breach of fiduciary duty.  These allegations

are purely conclusory and are unaccompanied by the requisite level of factual detail to make out

legally cognizable claims against Securities America.  Indeed, at no point in the Complaint do

Plaintiffs differentiate among the various defendants with respect to any alleged acts of

wrongdoing; rather, all defendants are repeatedly lumped together in conclusory fashion.

## ARGUMENT

## I.   PLAINTIFFS MUST SATISFY AN EXACTING PLEADING STANDARD UNDER EACH OF RULE 8 AND RULE 9(b)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2)

(emphasis added).  The Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007) and, more recently, Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), articulated the

standards that apply to test the sufficiency of a plaintiff's complaint in the face of a motion to

dismiss pursuant to Rule 12(b)(6).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

The Court must accept all factual allegations as true, but this requirement does not apply to

4

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Id. (citing Twombly, 550 U.S. at 555).  Unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  Twombly, 550 U.S. at 570.

Essentially, the Supreme Court has endorsed a two-step process for evaluating the sufficiency of a complaint under this plausibility standard.  This process requires district courts to (1) identify and disregard all legal conclusions in the complaint, and (2) determine whether the remaining factual allegations plausibly suggest the defendant's liability.

The Supreme Court's decisions in Twombly and Iqbal mark a considerable departure from the oft-invoked "no set of facts" standard, extracted from Conley v. Gibson, 355 U.S. 41 (1957), for evaluating a defendant's motion to dismiss.  By replacing Conley's "no set of facts" standard with the plausibility standard of Twombly and Iqbal, the Supreme Court has ushered in a more rigorous and fact-intensive test for assessing whether a complaint fails to state a claim upon which relief can be granted.

In addition to the new Rule 8(a)(2) plausibility standard, Rule 9(b) of the Federal Rules of Civil Procedure continues to require even greater specificity when pleading fraud or mistake.  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b)'s demand for particularity, the complaint must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  Southland Sec. Corp. v. Inspire Ins. Solutions Inc., 365 F.3d 353, 362 (5th Cir. 2004) (quoting Williams v. WMX Technologies, Inc., 112 F.3d 175, 177-78 (5th Cir. 1997)).  In essence, Rule 9(b) requires the complaint to show "the who, what, when, where,

5

and how of the alleged fraud." Carroll v. Fort James Corp., 470 F.3d 1171 (5th Cir. 2006)

(quoting Williams v. Bell Helicopter Textron, Inc., 417 F.3d 450, 453 (5th Cir. 2005), and

United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir.

1997)); see also Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992)

("At a minimum, Rule 9(b) requires allegations of the particulars of time, place and contents of

the false representations, as well as the identity of the person making the misrepresentation and

what he obtained thereby.") (internal quotation omitted).

As discussed below, Plaintiffs' allegations fail to satisfy Twombly and Iqbal, as well as

the particularity requirements of Rule 9(b) for fraud-based claims.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER ARTICLE 581-33(A)(2) OF THE TEXAS SECURITIES ACT (COUNT I)

Count One of the Consolidated Amended Class Action Complaint alleges a violation of

Article 581-33(A)(2) of the TSA.  Plaintiffs' allegations fall far short of sufficiently alleging a

claim under Article 581-33(A)(2).[3]

Plaintiffs' claim against Securities America under Article 581-33(A)(2) of the TSA is in

the nature of a fraud claim.  Grotjohn Precise Connexiones Int'l, S.A. v. JEM Fin., Inc., 12

S.W.3d 859, 867 (Tex. App.-Texarkana 2000) (discussing claim under the "antifraud provisions

of the Texas Securities Act, TEX. REV. CIV. STAT. ANN. art. 581-33(A)(2)"); Anderson v.

Vinson Exploration, Inc., 832 S.W.2d 657, 661 (Tex. App.-El Paso 1992) (discussing directed

verdict on "anti-fraud claim under the Texas Securities Act, Tex.Rev.Civ.Stat.Ann. art. 581-33

A(2)").  Plaintiffs allege, repeatedly (though conclusorily), that Provident Royalties, PAM, and

---

[3]  There is an open question whether the TSA and Texas law in general apply to claims by residents of Illinois and Ohio against a Nebraska corporation, particularly where there is no allegation that the transactions at issue occurred in Texas.  Nevertheless, Securities America will assume without conceding, solely for purposes of this motion, that Texas law applies to Plaintiffs' claims, and reserves the right to raise the issue at a later time.

the Provident Entities engaged in a "scheme" (Compl. ¶ 5.); "made a series of fraudulent securities offerings involving oil and gas investments" (id. ¶ 7.); "engaged in a Ponzi scheme" (id.); issued securities offerings that "were based on false and misleading representations to investors" (id. ¶ 8); and issued PPMs containing "untrue statements of material facts" and omissions of "material facts necessary to make the statements" not misleading (id. ¶ 79). The essence of the underlying alleged fraudulent scheme for which Plaintiffs seek to hold Securities America liable is that the various Provident parties used later investors' funds to pay "dividends" and "returns of capital" to earlier investors in Provident Securities -- alleged as a classic Ponzi scheme -- through misrepresentations and omissions of material facts. (See id. ¶ 4.)

Where the gravamen of a claim involves fraud, even if the claim is pled as a non-fraud claim, the exacting pleading requirements of Rule 9(b) apply, and the circumstances constituting fraud "shall be stated with particularity." Fed. R. Civ. P. 9(b); see Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1278 (11th Cir. 2006) ("The purpose of [Rule 9] is to protect a defendant's good will and reputation when that defendant's conduct is alleged to be fraudulent."); Herrington v. Household Int'l., Inc., 2004 WL 719355, at *6, (N.D. Ill. March 31, 2004) (complaint alleging knowing misrepresentation triggered Rule 9(b) despite negligence claim); In Re IKON Office Solutions, Inc. Sec. Litig., 86 F. Supp. 2d 481, 488-89 (E.D. Pa. 2000) (same).

In Wagner, the complaint alleged nonfraud claims under sections 11 and 12 of the Securities Act of 1933 as well as a securities fraud claim under Section 10(b) of the Securities Exchange Act of 1934. The court concluded, with respect to the non-fraud securities claims, that:

> [A] § 11 or § 12(a)(2) claim must be pled with particularity when
> the facts underlying the misrepresentation at stake in the claim are

7

said to be part of a fraud claim, as alleged elsewhere in the complaint.  It is not enough to claim that alternative pleading saves the nonfraud claims from making an allegation of fraud because the risk to a defendant's reputation is not protected.  It would strain credulity to claim that Rule 9(b) should not apply in this allegation: The defendant is a no good defrauder, but, even if he is not, the plaintiff can still recover based on the simple untruth of the otherwise fraudulent statement.  Nor is it enough to present a general disclaimer in an attempt to immunize the nonfraud claims from the Rule 9 requirements, for the same common sense reasons.  The purpose of the rule is to protect a defendant's good will and reputation when that defendant's conduct is alleged to have been fraudulent.  This conclusion does not add new elements to the nonfraud claims nor does it elevate the pleading standard when the claim is not alleged to have been part of another fraud-based claim. **If plaintiffs bring a § 11 of § 12(a)(2) claim without alleging the misrepresentation at issue in the claim was fraudulent, they would avoid the heightened pleading requirements of Rule 9(b).  On the other hand, if the plaintiffs are claiming that the § 11 or § 12(a)(2) misrepresentation is part and parcel of a larger fraud, then the rule's protective purpose attaches, and plaintiffs must plead with particularity.**

464 F.3d at 1278 (emphasis added).  Plaintiffs here fail to meet this standard, or even the standard under Rule 8.

> ### A.    Neither The Underlying Fraud Nor Securities America's Alleged Role In It Is Pled With Particularity

As set forth below, the Complaint, despite its length, fails to satisfy either Rule 9(b)'s particularity standard or even the new Rule 8 standard.[4]

> ### 1.    The Alleged Underlying Ponzi Scheme Is Not Pled With Particularity

The Complaint is replete with conclusory allegations of a fraudulent scheme perpetrated by the Provident parties, but relatively few specifics are provided, and those specific details that are provided do not correlate to one another.

---

[4] Although the Complaint is fairly lengthy (at more than 50 pages), it is important to keep in mind the Fifth Circuit's observation: "A complaint can be long-winded, even prolix, without pleading with particularity.  Indeed, such a garrulous style is not an uncommon mask for an absence of detail.  The amended complaint here, although long, states little with particularity."  Williams, 112 F.3d at 178.

Plaintiffs allege in conclusory fashion that the securities offerings at issue were nearly identical in their terms and stated investment goals (Compl. ¶ 74), and then quote some of the representations in the PPM for only one of the offerings -- the so-called Shale 12.  (See id. ¶¶ 74-75, 77-78.)  Each of the purported statements and/or omissions in the PPM for Shale 12, as alleged in paragraphs 74, 75 and 78, pertains to potential future actions, such as acquisition of property, development of the property by oil and gas exploration, or participation in oil and gas drilling programs, for example.  Plaintiffs then allege in paragraph 79 that all of the PPMs "contain untrue statements of material facts and omit to state material facts necessary to make the statements" made not misleading.  It is by no means clear, however, how the purported examples given in paragraph 79, which are all conclusorily pled, relate to the alleged representations or omissions in the PPM for even Shale 12, much less all the remaining PPMs that are not specifically described.

While Plaintiffs then purport to give a handful of examples of situations where funds were allegedly transferred from one investment's bank account to another investment's bank account, with a portion of the transferred funds used to pay dividends to investors, none of the examples of such transfers relates to Plaintiffs' interests respectively in Shale 12 or Shale 20.  Rather, the examples of transferred funds being used to pay dividends relate to Shale 3, Shale 4 and Shale 5.  (See id. ¶¶ 86-87.)  One allegation relates to funds being placed by Provident Royalties into accounts for Shale 17, Shale 18, Shale 19 and Shale 20, with the allegation that some of those funds were used to pay dividend and distribution payments to prior investors rather than to invest in oil and gas assets; however, there is no indication that the funds placed in Shale 20 were the result of an improper transfer or originated with any improper source.  Neither

is it clear from the allegations that use of a portion of these funds to pay investors is per se improper or renders any prior statement an actionable misrepresentation.  (See id. ¶ 88.)

There is a series of allegations regarding the Provident Entities' other improper business practices (see ¶¶ 98-105), but these are conclusory allegations regarding the purported advance of funds to someone named Blimline.  All of the Blimline allegations of purported misconduct are purely conclusory with no detail whatsoever provided.

To the extent the alleged underlying fraud consists of misrepresentations, the Complaint fails to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent" with respect to the PPMs for Shale 12 and Shale 20.  Southland, 365 F.3d at 362.  To the extent Plaintiffs intend to plead fraud by omission, they have failed to "plead the type of fact omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading" with respect to the PPMs for Shale 12 and Shale 20.  Carroll v. Fort James Corp., 470 F.3d 1171, 1174 (5th Cir. 2006).  As to Rule 8, Plaintiffs fail to allege facts that make their alleged Ponzi scheme plausible, as distinct from possible.  It is equally possible, and certainly plausible, that Plaintiffs have alleged high risk investments that simply were not successful through no fault of any defendant.

## 2. Securities America's Alleged Role in the Underlying Ponzi Scheme Is Not Pled With Particularity

Securities America's alleged role in the underlying fraud is even more cryptic.  First, although the Complaint alleges that Plaintiff Billitteri purchased preferred stock in Shale 12 through Securities America, and that Plaintiff Kreindel purchased preferred stock in Shale 12 and Shale 20 through Securities America, nowhere does the Complaint identify when such purchases were made.  More importantly, nowhere does the Complaint identify when the PPMs for Shale

10

12 and Shale 20, and the allegedly false and misleading statements contained within those PPMs, were given to Plaintiff Billitteri or Plaintiff Kreindel.  Indeed, the Complaint is silent with respect to when any allegedly false or misleading statement was made to any of the named Plaintiffs.  See Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 341 n.4 (5th Cir. 2008) (finding failure to plead fraud with particularity where plaintiff "did not include the specific dates of any subsequent transactions and did not identify the speakers making alleged misrepresentations").

Second, the Complaint does not specify where Plaintiff Billitteri, Plaintiff Kreindel, or any other Plaintiff received the PPMs containing the allegedly false and misleading statements. Cf. Williams, 112 F.3d at 178-79 (complaint failed to state the place where an alleged misstatement was made).  Finally, the Complaint does not allege who provided the PPM for Shale 12 or Shale 20 to either Plaintiff Billitteri or Plaintiff Kreindel.  See Dorsey, 540 F.3d at 341 n.4.  The failure to plead any aspect of the alleged fraud with particularity mandates dismissal of the claim.

Rather than plead any of these necessary specifics with respect to Securities America, Plaintiffs instead lump all defendants together and fail to differentiate among the defendants as to any substantive allegations of wrongdoing.  (See, e.g., Compl. ¶¶ 9, 11, 68-69, 106-09, 114-16, 135-36, 145-48.)  The failure to specify which of many defendants committed which particular acts of alleged wrongdoing, accompanied by the requisite specificity, itself constitutes grounds for dismissal.  See Patel v. Holiday Hospitality Franchising, Inc., 172 F. Supp. 2d 821, 824 (N.D. Tex. 2001) ("[G]eneral allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b).") (citation omitted).

**B.** **The Complaint Does Not Identify A Single Misrepresentation or Omission Made By Securities America**

The Complaint does not identify a single misrepresentation or omission by Securities America. Instead, the Complaint seeks to hold Securities America responsible for the alleged misrepresentations and omissions of others as reflected, and conclusorily alleged, in the various PPMs. Alleged misrepresentations and omissions by others cannot be attributed to Securities America under Article 581-33(A)(2) of the TSA.

To prevail under Article 581-33(A)(2), a plaintiff must show that the defendant seller in offering or selling a security made an untrue statement of material fact or an omission of material fact that was essential to make the statement not misleading. R2 Investments v. Phillips, 2003 WL 22862738, at *7 (N.D. Tex. March 26, 2003); Duperier v. Texas State Bank, 28 S.W.3d 740, 745 (Tex. App.-Corpus Christi 2000). In R2 Investments, an accounting firm was alleged to have violated the TSA when it agreed to the inclusion of its audit reports for a particular company in that company's SEC filings and when it allegedly failed to make public that the company did not have sufficient funds to proceed with a tender offer. This Court, on those facts, expressly held that the TSA claim "fails because the pleadings do not allege that [the accounting firm] made any untrue statements or omitted any material facts." 2003 WL 22862738, at *7. The Court noted that the TSA prohibits false statements and material omissions in the sale of securities and imposes liability on sellers who offer or sell securities "by means of an untrue statement of a material fact or omission" (id., citing Article 581-33). Despite the inclusion of the accounting firm's audit reports in the company's public filings, the Court concluded that the plaintiff "failed to identify any false statements or material omissions" by the accounting firm itself as distinct from the company. Id.

12

The principle that a TSA defendant must actually "make" the false or misleading statements and/or omissions, rather than merely circulate the misstatements or omissions of others, is well settled under analogous provisions of the federal securities laws as well. See In re Charter Communications, Inc., 443 F.3d 987, 992 (8th Cir. 2006) ("[A]ny defendant who does not make or affirmatively cause to be made a fraudulent misstatement or omission . . . cannot be held liable under § 10(b) or any subpart of Rule 10b-5."), aff'd sub nom. Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148 (2008); Wright v. Ernst & Young LLP, 152 F.3d 169, 175 (2d Cir. 1998) ("[A] defendant must actually make a false or misleading statement in order to be held liable under Section 10(b).  Anything short of such conduct, is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)."). Plaintiffs' allegations that Securities America made misrepresentations by disseminating PPMs are thus insufficient under this analogous line of authority as well.  "[A] secondary actor cannot incur primary liability . . . for a statement not attributed to that actor at the time of its dissemination."  Wright, 152 F.3d at 175; see also Anixter v. Home-Stake Production Co., 77 F.3d 1215, 1226 (10th Cir. 1996) ("[I]n order for accountants to 'use or employ' a 'deception' actionable under the antifraud law, they must themselves make a false or misleading statement (or omission) that they know or should know will reach potential investors.").

### C.   The Complaint Does Not Allege That The Alleged Misstatements Of Future Performance In The PPMs Were Knowingly False When Made

Although lacking in particularity, most of the statements in the PPMs alleged by Plaintiffs to be false and misleading, as noted above, relate to the Provident Entities' promises to perform future acts with respect to the invested funds.  Thus, the Complaint broadly alleges that the PPMs contain misstatements about how funds "will be" or "would be" used; what activities

13

the entity "anticipates", "intends to" or "may" do; and what the entity "anticipates" to be its sources of revenues.  (Compl. ¶¶ 74-78, 80.)  With respect to these promises of future performance, those alleged misstatements are actionable under Article 581-33(A)(2) <u>only</u> if they were knowingly false at the time they were made.  In other words, the Plaintiffs must adequately allege, and ultimately prove, fraudulent intent – i.e., that the promises were made with no intention of performing at the time they were made, not just that future events and decisions retrospectively rendered the statements false.  <u>See</u> <u>Dorsey</u>, 540 F.3d at 344 ("We have held that intent or scienter is an element of a claim under article 581-33 for an untrue promise of future performance."); <u>Herrmann Holdings, Ltd. V. Lucent Technologies, Inc.</u>, 302 F.3d 552, 564 (5th Cir. 2002) ("We agree with the district court's determination that if an article 581-33 claim were to be based on an untrue promise of future performance, fraudulent intent would be required.").

Furthermore, in order to adequately plead fraudulent intent under Rule 9(b), "a plaintiff must set forth specific facts to support an inference of fraud."  <u>Herrmann</u>, 302 F.3d at 565.  The Complaint fails to allege with particularity that anyone -- Provident Royalties, the Provident Entities, their principals, Securities America, Securities America's agents or employees, or even Securities America's co-defendants -- acted with fraudulent intent.  Indeed, not only is the Complaint devoid of any allegation of fraudulent intent or scienter whatsoever, it is alleged that "Plaintiffs specifically disclaim any allegations of fraudulent intent or scienter by the Broker Defendants with respect to the claims asserted against them under the Texas Securities Act . . . ." (Compl. ¶ 9.)  The absence of alleged fraudulent intent, and in the case of Securities America an express disavowal of any such allegations, is fatal to Plaintiffs' claim under the TSA.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF FIDUCIARY DUTY (COUNT III) AGAINST SECURITIES AMERICA

To the extent that Plaintiffs allege that Securities America (and the other broker defendants) had a duty to disclose the underlying fraudulent statements and fraudulent conduct by the Provident Entities, Plaintiffs' allegations concerning such fraud must satisfy the particularity requirements of Rule 9(b) (even if the breach of fiduciary duty cause of action does not require that Securities America itself committed fraud).  "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."  Lone Star Ladies Investment Club v. Schlotzsky's Inc., 238 F.3d 363 (5th Cir. 2001); see also Melder v. Morris, 27 F.3d 1097, 1100 n.6 (5th Cir. 1994).

Merely eschewing use of the word "fraud" is not enough to avoid the requirements of Rule 9(b).  In Rogers v. Baxter International, Inc., 417 F. Supp. 2d 974 (N.D. Ill. 2006), the court held that Rule 9(b) applied to plaintiffs' fiduciary claims where those claims implied fraudulent acts.  "Although paragraph 71 does not use the term 'fraud' or 'fraudulent,' it alleges conduct that is classically associated with fraud:  a 'scheme' and 'course of conduct' engaged in by the defendants to disseminate inaccurate and misleading information.  The court finds that this allegation is sufficient to bring paragraph 71 within Rule 9(b)'s ambit."  Id. at 984-85.  In In re General Motors ERISA Litig., 2006 WL 897444, at *16 (E.D. Mich. April 6, 2006), plaintiffs alleged that defendant fiduciaries "fail[ed] to provide complete and accurate information," made "material misrepresentations," and "convey[ed] inaccurate information."  The court found that those allegations sounded in fraud and therefore must be pled in compliance with Rule 9(b).

Even if the particularity requirements of Rule 9(b) do not apply to the claim for breach of fiduciary duty, Plaintiffs' allegations of a breach of fiduciary duty would still fail to satisfy the pleading requirements set forth in Twombly and Iqbal.  Under Iqbal and Twombly, the Court

must accept all factual allegations as true, but this requirement does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 555). Unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed. Twombly, 550 U.S. at 570. Plaintiffs' allegations of a breach of fiduciary duty do no more than state, in a conclusory manner unsupported by relevant factual allegations, that Securities America is liable for breach. Although Plaintiffs assert that Securities America "acted in a fiduciary capacity to Plaintiffs Kreindel and Billitteri" (Compl. ¶ 33), Plaintiffs do not make any factual allegations that plausibly suggest existence of a fiduciary duty by Securities America to Plaintiffs Kreindel or Billitteri.

Plaintiffs Kreindel and Billitteri had non-discretionary investment accounts with Securities America. Plaintiffs do not allege otherwise. A non-discretionary account is one in which the customer must approve all transactions before they are effected. Texas law is clear that a broker's only duty to a customer with a non-discretionary account is to faithfully carry out the client's instructions. Edward D. Jones & Co. v. Fletcher, 975 S.W.2d 539, 544 (Tex. 1998). "In a non-discretionary account, a broker's duty is confined to executing the orders he or she has accepted from the customer. Thus, the fiduciary duty owed to the customer is very narrow— primarily not to make unauthorized trades." Hand v. Dean Witter Reynolds Inc., 889 S.W.2d 483, 493 n.5 (Tex. App. 1994); see also Martinez Tapia v. Chase Manhattan Bank, N.A., 149 F.3d 404, 412 (5th Cir. 1998) ("[W]here the investor controls a nondiscretionary account and retains the ability to make investment decisions, the scope of any duties owed by the broker will generally be confined to executing the investor's order.").

16

Again lumping all defendants together, Plaintiffs have not pled any facts that plausibly suggest the existence of a "special relationship" between the parties or any facts that would otherwise suggest the existence of a fiduciary duty by Securities America.  Lexington Ins. Co. v. North American Interpipe, Inc., 2009 WL 1750523, at *2-*3 (S.D. Tex. 2009).  Nor are there any factual allegations that suggest any kind of relationship between Securities America and Plaintiff Billitteri or Plaintiff Kreindel beyond the purchase by Plaintiffs (via non-discretionary accounts) of the Provident Securities at issue here.  In short, Plaintiffs allege the legal conclusion of an existence of a fiduciary duty, and a breach of such duty, but do not allege any "factual content that allows the court to draw the reasonable inference that [Securities America] is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 570).  For this reason, Plaintiffs' cause of action for breach of fiduciary duty against Securities America should be dismissed.

## CONCLUSION

For the foregoing reasons, Securities America requests that the Court enter an order dismissing all claims in the Complaint against Securities America.

Dated:  February 12, 2010

Respectfully submitted,

s/ Peter Ligh
Peter Ligh (admitted *pro hac vice*)
New York Attorney Registration No. 4079455
SUTHERLAND ASBILL & BRENNAN LLP
1114 Avenue of the Americas
New York, NY 10036
Phone: (212) 389-5029
Fax: (212) 389-5099
peter.ligh@sutherland.com

17

Bruce M. Bettigole (admitted *pro hac vice*)
District of Columbia Bar No. 358103
Deborah G. Heilizer (admitted *pro hac vice*)
District of Columbia Bar No. 494908
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004-2415
Phone: (202) 383-0858
Fax: (202) 637-3593 fax
deb.heilizer@sutherland.com
bruce.bettigole@sutherland.com

Rachel Giesber Clingman
Texas State Bar No. 00784125
SUTHERLAND ASBILL & BRENNAN LLP
2 Houston Center
909 Fanin, Suite 2200
Houston, TX 77010-1043
Phone:  (713) 470-6100
Fax:  (713) 654-1301
rachel.clingman@sutherland.com

ATTORNEYS FOR DEFENDANT SECURITIES
AMERICA, INC.

18

**Certificate of Service**

On February 12, 2010 I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

s/ Peter Ligh

8936492.1