UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BILLITTERI v. SECURITIES AMERICA, INC., et al. (Provident Royalties Litigation)<br><br>This Order Relates To:<br>   ALL ACTIONS | §<br>§<br>§  Case No. 09-cv-1568-F<br>§  AND RELATED CASES<br>§<br>§<br>§ |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS**

Before the Court are the Motions to Dismiss the Consolidated Amended Class Action Complaint, filed by multiple Defendants. Securities America, Inc., QA3 LLC, QA3 Financial Corp., Capital Financial Services, Inc., Capital Financial Holdings, Inc., and Ameriprise Financial, Inc. filed their motions on February 12, 2010. (Docket nos. 35, 36, 39, 41). On February 16, 2010, GunnAllen Financial Inc., GunnAllen Holdings Inc., NEXT Financial Holdings Inc., Next Financial Group Inc. filed their Motion to Dismiss. (Docket no. 43).[1] On March 18, 2010, National Securities Corp. and National Holdings Corp. filed their motion. (Docket no. 62).

The six motions to dismiss raise related challenges to Plaintiffs Consolidated Amended Class Action Complaint, and Defendants incorporate the arguments of the primary brief filed by the NEXT Defendants. As such, Plaintiffs filed an omnibus response in opposition to all Defendants' motions to dismiss on March 22, 2010. (Docket no. 65). Also before the Court are Defendants' reply briefs.

Having considered the briefing by all parties, the record as a whole, and the applicable law,

---

[1] On May 5, 2010, Plaintiffs dismissed Defendant GunnAllen Financial Inc. after notice of the entity's filing of a bankruptcy petition. *See* Docket nos. 90, 94.

1

the Court GRANTS IN PART and DENIES IN PART Defendants' motions to dismiss.[2] The Court also, as explained herein, ORDERS Plaintiffs to amend their Complaint to cure the deficiencies explained on or before August 20, 2010. Defendants may challenge the resulting amended complaint, pursuant to Rule 12, in no more than ten (10) pages. The Court requests that Defendants file a single brief, but if a single brief is not possible, separate briefs will be permitted. In any event, the total briefing of all Defendants shall not exceed ten (10) pages.

## I. Background

**A.    Procedural Background**

Plaintiffs initiated this case on behalf of themselves and others similarly situated on August 24, 2009, alleging subject matter jurisdiction based upon the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). Consol. Am. Class Action Complaint ("Am. Compl.") ¶ 14. (Docket no. 22). Pursuant to a joint request for case management order, on November 5, 2009, the Court consolidated related cases: *Joseph Billitteri, et al., v. Securities Am., Inc., et al.*, No. 3:09-cv-1568, and *Karen L. Bopp, et al., v. Cedar Brook Fin. Partners, et al.*, No. 3:09-cv-1646. *See* Case Management Order. (Docket no. 17). There the Court also provided for the briefing on Defendants' proposed motions to dismiss. (Docket no. 17, ¶ 16).

On December 7, 2009, Plaintiffs filed their Consolidated Amended Class Action Complaint ("Amended Complaint"). (Docket no. 22). At the request of the parties, the Court amended the Case Management Order with respect to the filing of pleadings responsive to the Amended Complaint. (Docket no. 31). Defendants filed their Motions to Dismiss the Amended Complaint as explained above, and subsequent briefing was timely completed.

---

[2] This Order disposes of Docket nos. 35, 36, 39, 41, 43, and 62.

2

**B.     Consolidated Amended Class Action Complaint**

Plaintiffs allege that Provident Royalties is a Texas-based company that holds oil and gas working and royalty interests, and that Provident Asset Management, LLC ("PAM") is a registered broker-dealer who beginning in September 2006, offered and sold some $485 million of oil and gas investments through a series of non-publicly-traded offerings. Plaintiffs allege that Provident Royalties was a beneficial owner in each of the "Provident" or "Shale" entities that were part of the offerings. Through these offerings, Plaintiffs and would-be class members purchased either preferred stock or partnership interests with returns payable in monthly dividends or distributions. Am. Compl. ¶ 1.

Plaintiffs allege that the offers were made to "accredited" investors pursuant to a Private Placement Memorandum ("PPM"), and that Plaintiffs paid fees and commissions to PAM and the Broker Defendants named in this case. Plaintiffs allege the Broker Defendants disseminated materially false and misleading Private Placement Memoranda to Plaintiffs and breached their fiduciary duty to Plaintiffs by failing to perform adequate due diligence. *Id.* ¶ 2. Plaintiffs allege that the PPM failed to disclose material information, such as: the offering proceeds were allegedly commingled improperly with funds from other investors of other offerings, the Provident-related entities allegedly engaged in dozens of undocumented or improper inter-company transfers, the proceeds of the offerings allegedly were not invested as represented, and that later investors' funds were use to pay returns to earlier investors in Provident Securities. The Broker Defendants, according to Plaintiffs, failed to perform due diligence on the offerings and did not have adequate procedures in place to review these investments on behalf of Plaintiffs. *Id.* ¶ 4.

Plaintiffs allege that Defendants' scheme began to unravel in 2009, when Provident Royalties

3

announced it would not accept new investors, suspended dividend or return payments, and then filed for Chapter 11 Bankruptcy, along with some twenty-six related companies. *Id.* ¶¶ 5-6. About the same time, the SEC filed civil fraud charges against Provident Royalties. *See id.*

Primarily, Plaintiffs complain of two groups of Defendants: the broker defendants and the control person defendants. Other parties are mentioned in the complaint but are not named as parties to the causes of action stated. Plaintiffs allege that PAM assembled a nation-wide network of broker-dealers. Plaintiffs contend that the broker defendants agreed to sell Provident Securities pursuant to a participation agreement they entered into with the managing dealer, PAM. *Id.* ¶ 34. The broker defendants include: Capital Financial, National Securities, NEXT, QA3, and Securities America. The control person defendants include: Ameriprise Financial Inc. (allegedly owning 100% of Securities America), Capital Financial Holdings Inc. (allegedly owning 100% of Capital Financial), GunnAllen Holdings Inc. (allegedly owning 75% of GunnAllen),[3] National Holdings Corp. (allegedly owning 75% of National Securities), NEXT Financial Holdings Inc. (allegedly owning 75% of NEXT), and QA3 LLC (allegedly owning 75% of QA3).

Plaintiffs explain that Provident Royalties and PAM are not named as defendants due to the bankruptcy filing and the Bankruptcy Court's Order Appointing Receiver. The Amended Complaint alleges in material part that the broker defendants are connected to the alleged fraudulent conduct of the Provident Royalties affiliated entities because the "Broker Defendants participated in the drafting, preparation, approval, due diligence and/or dissemination of various materially false and misleading statements contained in the PPMs issued by the Provident Group [that is, Provident Management Group, Provident Royalties, PAM, and the Rule 506 Entities, *see id.* ¶¶ 53, 56-57].

---

[3] Again, GunnAllen was subsequently dismissed from this case and is no longer a party.

4

*Id.* ¶ 64.[4]

With respect to the control person defendants, Plaintiffs allege that they directly or indirectly controlled the broker defendants under Texas law; and as a result of the control person defendants' ability to control broker management, policies, or transactions, the control person defendants are jointly and severally liable under § 33(F)(1) of the Texas Securities Act. *Id.* ¶¶ 141-43.

The Amended Complaint sets forth three causes of action: (1) a violation of § 33(A)(2) of the Texas Securities Act, Tex. Rev. Civ. Stat. art. 581-33(A)(2), against the Broker Defendants; (2) a violation of § 33(F)(1) of the Texas Securities Act, against the Control Person Defendants; and (3) breach of fiduciary duty against the Broker Defendants. *Id.* at ¶¶ 135-149.

## II. Legal Standard For Motion to Dismiss

When deciding a motion to dismiss pursuant to Rule 12(b)(6), "[t]he 'court accepts all well-pleaded facts as true viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere

---

[4] Plaintiffs allege that the broker defendants were paid commissions and fees for selling the Provident Securities including a "due diligence" fee of 1% of the proceeds, and that the PPMs explicitly provided for the payment of the due diligence fees. *Id.* ¶ 2, 10, 64, 68.

possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

When alleging fraud, a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). "What constitutes 'particularity' will necessarily differ with the facts of each case." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992). To plead fraud with particularity, a plaintiff must, at a minimum, allege the "time, place, and contents of the false representations," as well as identify the speaker who made the misrepresentation and what that person obtained thereby." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir.1993) (quoting *Tel-Phonic Servs, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 5th Cir. 1992)). In other words, a plaintiff must set forth the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). Further, "general allegations, which lump all defendants together failing to segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b)." *In re Urcarco Sec. Lit.*, 148 F.R.D. 561, 569 (N.D. Tex. 1993), aff'd, *Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994).

### III. Analysis

**A.   Applicable Law**

    **1.   Substantive Law**

The parties brief the substantive issues as controlled by the law of the state of Texas, but Defendant Securities America disputes that Texas law is certainly controlling, arguing that Plaintiffs are residents of Illinois and Ohio and Securities America is a Nebraska corporation. Securities America reserves the right to raise the question of controlling law at a later date. However, as to Plaintiffs' allegations arising under the Texas Securities Act, Tex. Rev. Civ. Stat. art. 581-33, the

law of Texas applies. At this stage and based upon the allegations and the parties' briefing, the Court applies the law of Texas to Plaintiffs' claims. *See* Am. Compl. ¶ 13 (alleging that the "claims asserted herein arise under the Texas Securities Act and the common law of the State of Texas").

### 2. Pleading Standard

Also, the parties dispute whether Rule 9(b) applies to Plaintiffs' allegations for violation of the Texas Securities Act and Count Three for breach of fiduciary duty (Counts One and Three).

First, with respect to the Texas Securities Act, Defendants argue that the allegations are inherently fraud-based and that Texas has construed the applicable article of the Texas Securities Act as an "antifraud provision." Plaintiffs argue that they have explicitly disclaimed fraudulent intent or scienter. Am. Compl. ¶ 9. Plaintiffs argue that they state no claim for fraud and that Texas law makes Securities America liable under § 33(A)(2) and for breach of fiduciary duty absent any allegation of fraud.

In Texas, heightened pleading is not required for causes of action arising under the Texas Securities Act. *Baxter v. Gardere Wynne Sewell LLP*, 182 S.W.3d 460, 464 (Tex. App. - Dallas 2006, petition denied) (citing Tex. R. Civ. P. 45, which is the Texas equivalent of notice pleading). However, it is well settled that the procedural law of Texas does not govern in this case. The "Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal quotation marks and citation omitted) (addressing Rule 9(b)'s application to a California substantive claim for which California law does not require heightened pleading); *see also Gasperini v. Ctr. For Humanities,*

*Inc.*, 518 U.S. 415, 428 n.7 (1996) ("it is settled that if the Rule on point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law"); *Ellis v. Weasler Eng'g, Inc.*, 258 F.3d 326, 337 (5th Cir. 2001) (listing supporting authorities and addressing Fed. R. Civ. P. 50).

Plaintiffs argue that because the Texas Securities Act does not provide a fraud-based claim, there is no reason to apply Rule 9(b) and that Rule 8 should instead govern. In *Dorsey v. Portfolio Equities, Inc.*, a Fifth Circuit panel affirmed in part and reversed in part the district court's dismissal of fraud claims arising under federal and Texas state law. 540 F.3d 333 (5th Cir. 2008). "Both federal securities claims and state-law fraud claims are subject to the pleading requirements of Rule 9(b)." *Id.* at 339. The plaintiff's state law claims included both state common-law fraud, state statutory fraud, and *state securities fraud*. *Id.* at 338. Mr. Dorsey alleged both affirmative false representations and omissions of material fact. *Id.* at 341. The district court ultimately dismissed for failure to state a claim all but one claim. Mr. Dorsey's appeal sought review *only* of the dismissal of his own claims for fraud under the federal securities law and Texas state law. *Id.* at 338. With respect to Dorsey's claims for violations of the Texas Securities Act, the panel opinion implicitly supports the application of Rule 9(b). *See id.* at 343-44. The Court held that an article 33 claim "'does not require scienter – i.e., proof that the speaker knew that the representation was false, or made it without regard to its truth or falsity.'" *Id.* at 344 (quoting *Herrmann Holdings Ltd. v. Lucent Tech., Inc.*, 302 F.3d 552, 563 (5th Cir. 2002)). The Court explained, however, that because he was not required to plead scienter, "and he alleged all of the elements of Texas securities fraud under the TSA with sufficient particularity, his claims against [the defendant] acting as a seller . . . should not have been dismissed." *Id.*

8

In *Kearns*, the Ninth Circuit concluded that although fraud was not an element of the state causes of action, Rule 9(b) nonetheless governed the pleading requirement because the claim was grounded in fraud. *Kearns*, 567 F.3d at 1125. There, the plaintiff alleged "a fraudulent course of conduct" because he alleged that (1) the defendant "misrepresent[s] the benefits of its . . . program to . . . increase revenue"; and (2) marketing materials misled him to purchase a car covered by the program with the alleged misrepresentations. *Id.* at 1126. The plaintiff in *Kearns*, as here, argued that these claims were not grounded in fraud because he did not plead fraud. *Id.* The Ninth Circuit panel relied upon prior Ninth Circuit law and California law to conclude that merely omitting an allegation of fraud did not remove the pleading from the application of Rule 9(b). *See id.*

This Court is persuaded by the analysis of *Dorsey*, though the holding is not controlling here. A plaintiff alleging a violation of "Texas securities fraud under the TSA," that is, a violation of article 33 of the TSA, must satisfy the heightened pleading requirements of Rule 9(b), but need not plead scienter. *See Dorsey*, 540 F.3d at 343-44. This conclusion is supported by the *Dorsey* panel's additional distinction of aider and abettor liability under the TSA from seller liability under the TSA on the basis that scienter is required of aider and abettor liability but not of seller liability. Implicitly, though unstated, both require the heightened pleading standard of Rule 9(b). And, it is compelling that *Dorsey* simply states that the "Texas Securities Act . . . creates a cause of action for *securities fraud*," and then proceeds to provide that such claims against sellers of securities are controlled by article 33(A)(2), the provision alleged by Plaintiffs here. *Id.* at 343 (emphasis added).[5]

---

[5] Moreover, one Texas court referred to article 33 as the Texas Securities Act's "fraud provision." *Aegis Ins. Holding Co., LP v. Gaiser*, No. 04-05-00938-CV, 2007 Tex. App. LEXIS 2364, *13 (Tex. App. -- San Antonio Mar. 28, 2007, pet. denied). While the Texas Supreme Court has long held that the Act's purpose is to regulate securities' sales and to protect from fraud. *Flowers v. Dempsey-Tegeler & Co.*, 472 S.W.2d 112, 115 (Tex. 1971).

Finally, although fraudulent intent is neither a element to a cause of action under article 33, nor alleged by Plaintiffs here, the Amended Complaint is replete with allegations of fraudulent conduct, including as against Securities America.[6] In addition to the applicable law, the allegations here are "averments of fraud or mistake" sufficient to conclude that Rule 9(b) applies to Plaintiffs' allegations against Securities America under the Texas Securities Act. Fed. R. Civ. P. 9(b). Accordingly, Rule 9(b) applies to Plaintiffs' claims arising under the Texas Securities Act.

Second, with respect to Count Three's allegations of breach of fiduciary duty, Securities America argues that Rule 9(b) applies to the extent that Plaintiffs allege the broker defendants had a duty to disclose the underlying allegedly fraudulent statements or conduct. Plaintiffs confirm their allegation for breach of fiduciary duty by the broker defendants and argue that their pleading is sufficient because the broker defendants were part of a syndicate of brokers who actively solicited investments in Provident Securities. A portion of the fees received by the brokers for selling Provident Securities was specifically attributed to due diligence purportedly performed in connections with the Offerings on behalf of their clients. Plaintiffs also allege that each broker defendant acted as a fiduciary with respect to the sale of Provident Securities to each named Plaintiff and class member. *See* Am. Compl. ¶¶ 2, 9, 27-33, 64-67, 69, 106.

Rule 9(b) does not apply to the breach of fiduciary duty claim as pleaded against the broker defendants here because the Texas cause of action is not limited to one arising from fraud. Quite to the contrary, the cause of action accrues and may be properly stated with far less than pleadings of fraud. *See USPPS, Ltd. v. Avery Dennison Corp.*, 326 Fed. Appx. 842 (5th Cir. 2009); *Laird v.*

---

[6] The Texas Securities Act defines "fraud" and "fraudulent practice" at Tex. Civ. Stat. art. 581-4F.

*Integrated Res.*, 897 F.2d 826, 836 (explaining some differences between breach of fiduciary duty and a Rule 10b-5 fraud claim and citing *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977)).

**B.      Count One – Violation of § 33(A)(2) of the Texas Securities Act**

Texas's Blue Sky Law provides for the civil liability of a "person who offers or sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact." Tex. Rev. Civ. Stat. art. 581-33(A)(2); *Geodyne En. Income Prod. P'ship I-E v. Newton Corp.*, 161 S.W.3d 482, 484-85 (Tex. 2005).

Texas defines "security" to include interests in oil and gas leases. *Id.* art. 581-4(A); *Geodyne*, 161 S.W.3d at 485. "An omission or misrepresentation of fact is 'material' if 'there is a substantial likelihood that a reasonable investor would consider it important in deciding to invest.'" *Aegis Ins. Holding Co., LP v. Gaiser*, No. 04-05-00938-CV, 2007 Tex. App. LEXIS 2364, at *21 (Tex. App. – San Antonio Mar. 28, 2007, pet. denied) (quoting *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 649-50 (Tex. App. – Houston [14th Dist.] 1995, writ dism'd w.o.j.)). An investor need not show that "but for" the omission or misrepresentation, he would have acted differently; there is no reliance requirement. *Id.*, at *22 (citing *Duperier v. Texas State Bank*, 28 S.W.3d 740, 745 (Tex. App.– Corpus Christi 2000, aff'd as modified)).

"Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not meant that no claim has been stated. The proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). However, instead of rewriting such a "deficient complaint," the court "may dismiss, without prejudice, placing that responsibility upon counsel." *Id.*

11

//

### 1. Failure to Plead Individual Defendant's Role In Alleged Misconduct with Sufficient Specificity

Plaintiffs argue that they have satisfied the pleading requirements, even under Rule 9(b). Defendants argue that the pleading is deficient in terms of particularity in the following areas: underlying fraud or any individual Defendant's alleged role therein; any misrepresentation or omission made; alleged misstatements of future performance in the PPMs are not alleged to have been knowingly false when made.

Having carefully reviewed the Amended Complaint, the Court agrees with Defendants that Plaintiffs have failed to sufficiently state a claim against the Broker Defendants under article 33 of the TSA. Plaintiffs carefully and thoroughly explain the underlying wrongful conduct of the non-parties now involved in bankruptcy proceedings. But, the allegations of the Amended Complaint fail to state with sufficient particularity any broker defendant's role in the described fraud. Although the Amended Complaint states generally that the Broker Defendants' were involved in the drafting of the PPMs, this bare allegation is not enough. Moreover, assuming that the general allegation of involvement in drafting the allegedly misleading PPMs were sufficient, Plaintiffs have not identified the conduct of a specific Defendant as required by Rule 9(b).

In *R2 Investments v. Phillips*, the Court addressed defendants' motion to dismiss an investor's action against a corporation and officers, alleging violation of federal and state securities law. No. 3:02-cv-323-N, 2003 WL 22862738 (N.D. Tex. Mar. 26, 2003). Dismissing the investor plaintiff's TSA claim, the Court explained that the pleading failed because it did "not allege that [Defendant] made any untrue statements or omitted any material facts. *Id.* at *7 (citing Tex. Civ. Stat. Ann. art. 581-33). "The Texas Securities Act prohibits false statements and material omissions

in the sale of securities and imposes liability upon sellers, aiders and control persons who offer or sell securities 'by means of an untrue statement of a material fact or omission.'" *Id.* (quoting Tex. Civ. Stat. Ann. art. 581-33. The *R2Investments* court dismissed the TSA claim because plaintiff "failed to identify any false statements or material omissions by" the defendant. *Id.*

Plaintiffs counter that Article 581-33 of the TSA holds all sellers "in the chain" liable and does not require that Defendants make the false or misleading statements. The Court does not read Texas law so broadly. Even if the TSA permitted such a broad reach, Rule 9(b) requires Plaintiffs to identify the facts underlying each Broker Defendant's involvement in the production or drafting of the allegedly false or misleading PPMs.

> Plaintiffs aver, as follows, the conduct that allegedly violates article 33 of the TSA:
>
> "the PPMs . . . failed to disclose, among other things, that Offering proceeds were commingled improperly with funds received from other investors of the offerings;" Am. Compl. ¶ 4.
>
> "The PPMs contained untrue statements of material facts and omitted to state material facts necessary to make the statements made in ¶¶ 74-78, in light of the circumstances under which they were made, not misleading;" Am. Compl. ¶ 79.
>
> "The PPMs did not disclose whether any revenues generated by the Rule 506 Entities were used to pay investors, or whether loan proceeds, income generated from properties, sales of assets, funds from investors in other Rule 506 Entities or commingled funds were used to make distributions;" Am. Compl. ¶ 81.
>
> Plaintiffs and the Class purchased Provident Securities in the Offerings pursuant to the materially untrue statements and omissions of material facts in the PPMs disseminated by the Broker defendants." Am. Compl. ¶ 136.

The pleading lacks, however, a sufficient connection between the above allegations, and similar ones throughout the Amended Complaint to the individual Broker Defendant. Specifically, the Amended Complaint is insufficient under Rules 9(b) and 12(b)(6) when it states in conclusory fashion that all of the Broker Defendants "participated in the drafting, preparation, approval, due

13

diligence and/or dissemination of various materially false and misleading statements." Am. Compl. ¶ 64.

In order to survive dismissal, Plaintiffs must connect, with greater specificity, the individual Broker Defendants to their alleged involvement in the making of the allegedly materially false and misleading statements. If each Broker Defendant participated in exactly the same way, and Plaintiffs so allege, then such is not an inappropriate grouping. But as currently drafted, the Amended Complaint does improperly group the Broker Defendants. The Court cannot distinguish what conduct is alleged against which Broker Defendant. Thus, the Court cannot "infer more than the mere possibility of misconduct." *See Iqbal*, 129 S. Ct. at 1940. Such a pleading fails to satisfy Rules 8(a)(2), 9(b) and Rule 12(b)(6).

As explained above, the Court must accordingly grant in this part Defendants' motions to dismiss, but Plaintiffs have requested leave to amend. The Court finds that justice favors an opportunity to amend the Amended Complaint one final time.

### 2. Whether the Alleged Misstatements of Future Performance Were Alleged to Have Been Knowingly False When Made

In addition to the challenges raised and addressed above, Securities America argues that, with respect to promises of future fraudulent intent must be alleged *with particularity* to state a TSA claim and that it is not alleged at all, let alone with sufficient specificity. Also, Securities America points to Plaintiffs' disclaimer of "any allegations of fraudulent intent or scienter by the Broker Defendants with respect to the claims asserted against them" under the TSA. Am. Compl. ¶ 9. Securities America concedes that the Amended Complaint broadly alleges that the PPMs contain misstatements about how funds "will be" or "would be" used, what activities the entity "anticipates", "intends to" or "may" do, and what the entity "anticipates" its sources of revenue will be. *See* Am.

14

Compl. ¶¶ 74-78, 90. With respect to these future performance promises, Securities America argues that Plaintiffs only have a cause of action if the promises were knowingly false at the time they were made. In addition, according to Securities America, Plaintiffs must adequately allege and ultimately prove fraudulent intent with respect to these promises. Plaintiffs argue that they have not made claims based upon promises of future performances but have instead alleged misstatements and omissions relating to past and present facts, which does not require any allegation of fraudulent intent.

Securities America urges that Plaintiffs fail to explain how the relevant statements in the PPMs that refer to an intent to undertake actions in the future should be considered statements of present fact, absent fraudulent intent. Plaintiffs, for example, allege that the PPMs contain misstatements about how much funds "will be" or "would be" used; what activities are "anticipated;" and what sources of revenues are "anticipated." Am. Compl. ¶¶ 74-78. The parties implicitly agree that fraudulent intent is required for a claim of an untrue promise of future performance. *See Dorsey*, 540 F.3d at 344; *Herrmann Holdings Ltd. v. Lucent Techs.*, 302 F.3d 552, 564 (5th Cir. 2002). Because Plaintiffs have disclaimed any allegation of fraudulent intent as to Securities America (*see* Opposition at 30), the Court agrees with Securities America that Plaintiffs have not alleged an article 33 claim based upon an untrue promise of future performance as against Securities America. However, this conclusion does not preclude Plaintiffs from alleging an article 33 action for past or present facts. If Plaintiffs cannot demonstrate how their allegations based upon futuristic language in the PPMs gives rise to an article 33 claim for past or present conduct, then their claim will fail. But resolution of the claim, as stated, must await another day. Plaintiffs have sufficiently pleaded an article 33 claim based on past or present facts alone.

15

### C. Count Two – Control Person Liability Under TSA § 33(F)(1)

The Texas Securities Act holds liable "control persons and aiders." Tex. Rev. Civ. Stat. art. 581-33(F).

> A person who directly or indirectly controls a seller, buyer, or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer, unless the controlling person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

*Id.* § 33(F)(1).

Because the Court dismisses the existing claims under TSA article 33(A) and permits amendment, the Court declines to address the control person claim that is dependent upon the article 33(A) claim. In amending their article 33(A) claim, Plaintiffs may also amend the related control person claim arising under article 33(F).

### D. Count Three – Breach of Fiduciary Duty

In Texas, the "elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App. –Dallas 2006, pet. denied). "A fiduciary relationship may be formal or informal. Fiduciary duties arise as a matter of law in certain formal relationships." *Id.* (citing *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005)).

"The relationship between a broker and its customer is that of principal and agent." *Hand v. Dean Witter Reynolds, Inc.*, 889 S.W.2d 483, 492-93 (Tex. App.–Houston, aff'd) (citing *Magnum Corp. v. Lehman Bros. Kuhn Loeb, Inc.*, 794 F.2d 198 (5th Cir. 1986)). "The relationship between an agent and a principal is a fiduciary one." *Id.* at 493 n.5 (citing *Hill v. Bache Halsey Stuart Shields*

16

*Inc.*, 790 F.2d 817, 824 (10th Cir. 1986), quoting Restatement (Second) of Agency § 13 (1958)). However, it is a narrow fiduciary relationship, beginning with and constrained to the agency. *Id.* (citing *Hill*, 790 F.2d at 824). "The agency relationship between a broker and a customer does not come into existence until the order has been placed and the broker has consented to execute it." *Id.* at 494; *see also Moody v. EMC Servs, Inc.*, 828 S.W.2d 237, 241 (Tex. App. – Houston [14th Dist.] 1992, writ denied); *Republic Bankers Life Ins. Co. v. Wood*, 792 S.W.2d 768, 778 (Tex. App. – Fort Worth 1990, writ denied).

NEXT Financial Group argues (and by virtue of joining NEXT's motion, all Defendants argue) that an alleged violation of a FINRA Rule or NASD rule does not create a private right of action. *See, e.g., Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 200 (3d Cir. 1990). However, the Court does not read the Amended Complaint to rely upon such as a matter of law or claim, even if such facts are included in the allegations. Rather, Plaintiffs allege a Texas breach of fiduciary duty claim based upon the Broker Defendants' involvement in a syndicate who actively solicited investments in Provident Securities. Am. Compl. ¶ 2, 9, 69, 106. NEXT and the other Broker Defendants challenge the sufficiency of the allegations under *Twombly*, 550 U.S. at 555, 570, and *Iqbal* 129 S.Ct. at 1949. In general, Plaintiffs allege that all Broker Defendants actively solicited investments based upon materially false or misleading PPMs in violation of their fiduciary duties to Plaintiffs. Am. Compl. ¶¶ 74-85.

More specifically, Plaintiffs allege that Securities America "acted in a fiduciary capacity to Plaintiffs Kreindel and Billitteri." *See* Am. Compl. ¶ 33. But Securities America says this allegation is insufficient because Plaintiffs fail to aver any factual allegations that plausibly suggest the existence of a fiduciary duty by Securities America to Plaintiffs Kreindel or Billitteri. Securities

17

America argues that both individual Plaintiffs had non-discretionary investment accounts, that is, one in which the customer must approve all transactions before they are made. Securities America argues that in the case of such a non-discretionary investment account, a broker's duty is limited to executing orders accepted from the customer. *See Hand*, 889 S.W.2d at 493 n.5.

In opposition, Plaintiffs argue that the nature of the accounts at issue, as discretionary or non-discretionary, is a fact issue that cannot be resolved at this stage. Plaintiffs also counter that they need not plead any special relationship because of the broker's fiduciary relationship as a matter of law. *Id.* at 492-93. The live pleading states that Plaintiffs seek damages for the broker defendants' breach of their fiduciary duty to perform adequate due diligence. *See, e.g.,* Am. Compl. ¶ 2.

Plaintiffs have satisfied their burden to plead breach of fiduciary duty, whether or not it may ultimately be proved. The Court cannot resolve at this stage whether the agreements are subject to a narrow non-discretionary fiduciary duty or a larger one arising from a broader fiduciary relationship, despite Defendants' invitation to conclude that because the pleading does not resolve the question, Plaintiffs' claim must be dismissed. Rule 8 and the Supreme Court cases interpreting it do not require such a result. On this basis, the Court must DENY Defendants' motions to dismiss Plaintiffs' breach of fiduciary duty claim.

### IV. Conclusion

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motions to Dismiss. Defendants' challenge to the sufficiency of Plaintiffs' claim for breach of fiduciary duty is DENIED. Defendants' challenge to Plaintiffs' claim under § 33(A) is GRANTED.

Plaintiffs are granted leave to file a final Amended Complaint to cure the challenges and

deficiencies discussed herein. Such pleading shall be filed on or before **August 27, 2010**. As explained above, Defendants may file a subsequent Rule 12 challenge to the amended complaint, on or before **September 10, 2010**. Such motion to dismiss shall not exceed ten pages, whether it is filed as a single, joint motion by all Defendants or filed as separate motions. Defendants may refer to arguments made in the motions to dismiss disposed of by this Order.

It is so Ordered.

Signed this 26th day of July, 2010.

ROYAL FURGESON
SENIOR UNITED STATES DISTRICT JUDGE