## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| BILLITTERI v. SECURITIES AMERICA, INC., *et al.* (*Provident Royalties Litigation*) | 3:09-cv-01568-F<br>AND RELATED CASES |
| THIS DOCUMENT RELATES TO:<br>ALL ACTIONS | |
| C. RICHARD TOOMEY, *et al.* v.<br>SECURITIES AMERICA, INC.*, et al.* | 3:10-cv-01833-F |
| IN RE:  MEDICAL CAPITAL SECURITIES LITIGATION | Case No. ML 10-2145 DOC (RNBx)<br>(C.D. Cal.) |
| THIS DOCUMENT RELATES TO:<br>*McCoy*, SACV09-1084 DOC (RNBx) (C.D. Cal.) | Limited transfer for settlement purposes as Case No. 3-11-cv-00191-F (N.D. Tex.) |

## MEMORANDUM IN OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT WITH SECURITIES AMERICA, INC. AND SECURITIES AMERICA FINANCIAL CORPORATION

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     BACKGROUND OF THE LITIGATION........................................................... 3

        A.      The Provident Class Actions................................................................ 3

        B.      The Medical Capital Class Action ....................................................... 4

        C.      Other Proceedings Pending Against Securities America Arising Out of
                the Sale of Provident Securities and Medical Capital Notes .................. 6

III.    THE PROPOSED SETTLEMENT..................................................................... 7

        A.      The Settlement Classes ....................................................................... 7

        B.      The Components of the Settlement Fund................................................ 7

                1.      The Excess Net Capital Contribution ....................................... 8

                2.      The Provident/Medical Capital Reserves.................................... 8

                3.      Securities America's Future Earnings Component...................... 8

                4.      SAFC's Contribution .............................................................. 9

                5.      SAFC's Future Earnings Component ........................................ 9

                6.      The Policy Proceeds................................................................ 9

        C.      The Amount of the Settlement Fund...................................................... 10

        D.      Allocation of the Settlement Fund ....................................................... 11

        E.      The Release of Settlement Class Members' Claims ............................... 11

IV.     PRELIMINARY SETTLEMENT APPROVAL ............................................... 12

        A.      The Role of the Court ......................................................................... 12

        B.      The Proposed Settlement Classes May Be Certified ............................. 12

                1.      The Proposed Settlement Classes Satisfy Rule 23(a) ............... 13

                        a.      The Classes Are Too Numerous to Join All Members ................ 13

i

b.      There Are Common Questions of Law or Fact............................ 13

c.      The Representative Plaintiffs' Claims Are Typical..................... 14

d.      The Representative Plaintiffs Will Adequately Represent the Settlement Classes ....................................................................... 15

2.      The Proposed Settlement Classes Satisfy Rule 23(b)(1) ......................... 16

a.      Standards for Certification Under Rule 23(b)(1)(B).................... 16

b.      The Settlement Fund Is Limited and Inadequate to Pay the Claims of All Settlement Class Members..................................... 17

c.      The Settlement Fund Will Be Devoted to the Settlement Classes........................................................................................... 19

d.      The Settlement Fund Will Be Equitably Distributed................... 20

3.      The Court Should Appoint Girard Gibbs and Zwerling, Schachter as Settlement Class Counsel ................................................... 21

C.      The Settlement Warrants Preliminary Approval.................................................... 21

1.      There Are No Grounds to Doubt the Fairness of the Settlement, Which Is the Product of Extensive, Arm's-Length Negotiations ............ 22

2.      The Proposed Settlement Has No Obvious Deficiencies......................... 23

3.      The Settlement Falls Within the Range of Possible Approval ................ 24

V.      THE PROPOSED PLAN OF CLASS NOTICE............................................................... 24

VI.      PRELIMINARY INJUNCTION TO PRESERVE THE STATUS QUO ....................... 25

VII.      CONCLUSION............................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Stewart Title Guaranty*
   246 F.R.D. 218 (E.D. Pa. 2007)................................................................... 16

*Amchem Prods. Inc. v. Windsor*
   521 U.S. 591 (1997)........................................................................................ 13

*Baker v. Wash. Mutual Finance Group, LLC*
   193 Fed. Appx. 294 (5th Cir. 2006)........................................................... 17, 19

*Berthelot v. Am. Postal Workers Union, Local 185*
   2010 WL 4639050 (S.D. Tex. Nov. 8, 2010) ................................................ 17

*Eatmon v. Palisades Collection, LLC*
   2010 WL 1189571 (E.D. Tex. Mar. 5, 2010) ........................................... 13, 14

*Feder v. Elec. Data Sys. Corp.*
   429 F.3d 125 (5th Cir. 2005) ...................................................................... 20

*Hamilton v. First Am. Title Ins. Co.*
   266 F.R.D. 153 (N.D. Tex. 2010) ............................................................... 15

*In re Am. Bank Note Holographics, Inc., Sec. Litig.*
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................... 24

*In re Baldwin-United Corp.*
   770 F.2d 328 (2d Cir. 1985)........................................................................ 26

*In re Combustion, Inc.*
   1997 U.S. Dist. LEXIS 18249 (W.D. La. 1997).......................................... 22

*In re Corrugated Container Antitrust Litig.*
   643 F.2d 195 (5th Cir. 1981) ................................................................. 15, 16

*In re Katrina Canal Breaches Litig.*
   628 F.3d 185 (5th Cir. 2010) ................................................................. 23, 25

*In re Nissan Motor Corp. Antitrust Litig.*
   552 F.2d 1088 (5th Cir. 1977) ..................................................................... 25

*In re Painewebber Ltd. P'ships Litig.*
   1996 WL 374162 (S.D.N.Y. July 1, 1996) ................................................... 26

*In re Shell Oil Refinery*
    155 F.R.D. 552 (E.D. La. 1993)..................................................... 22

*In re the Mills Corp. Sec. Litig.*
    265 F.R.D. 246 (E.D. Va. 2009) ..................................................... 22

*In re the Reserve Fund Securities & Derivative Litig.*
    673 F. Supp. 2d 182 (S.D.N.Y. 2009)...................................... 12, 26

*James v. City of Dallas*
    254 F.3d 551 (5th Cir. 2001) ......................................................... 14

*Klein v. O'Neal, Inc.*
    705 F. Supp. 2d 632 (N.D. Tex. 2010) ........................................... 24

*Langbecker v. Elec. Data Sys. Corp.*
    476 F.3d 299 (5th Cir. 2007) ......................................................... 25

*Lightbourn v. County of El Paso*
    118 F.3d 421 (5th Cir.1997) .......................................................... 13

*Liles v. Del Campo*
    350 F.3d 742 (8th Cir. 2003) ......................................................... 26

*Longden v. Sunderman*
    123 F.R.D. 547 (N.D. Tex. 1988) ................................................... 14

*McNamara v. Bre-X Minerals Ltd.*
    214 F.R.D. 424 (E.D. Tex. 2002).............................................. 12, 22

*Mehl v. Canadian Pac. Ry., Ltd.*
    227 F.R.D. 505 (D.N.D. 2005) ....................................................... 16

*Mullen v. Treasure Chest Casino, LLC*
    186 F.3d 620 (5th Cir. 1999) ......................................................... 13

*Neff v. Via Metro. Transit Auth.*
    179 F.R.D. 185 (W.D. Tex. 1998) ................................................... 23

*Ortiz v. Fibreboard Corp.*
    527 U.S. 815 (1999)........................................................... 17, 19, 20

*Reed v. General Motors Corp.*
    703 F.2d 170 (5th Cir. 1983) ................................................. 12, 22

*Sandoval v. Tharaldson Employee Mgmt.*
　　2010 WL 2486346 (C.D. Cal. June 15, 2010) ................................................................ 23

*Schwartz v. TXU Corp.*
　　2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ................................................................ 24

*Vaughn v. American Honda Motor Co.*
　　627 F. Supp. 2d 738 (E.D. Tex. 2007) .......................................................................... 23

*Williams v. Nat'l Security Insurance Co.*
　　237 F.R.D. 685 (M.D. Ala. 2006) .................................................................................. 19

**Statutes**
28 U.S.C. §1651(a) ................................................................................................................ 26

**Other Authorities**

Manual for Complex Litigation, Fourth (2010) ............................................................ 12, 21, 22

**Rules**
Fed. R. Civ. P. 23(b)(1)(B) ............................................................................................... 16, 19

Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................................... 25

Fed. R. Civ. P. 23(g)(1)(A) ..................................................................................................... 21

## I.      INTRODUCTION

Individual and representative plaintiffs Joseph Billitteri, the Sharon Kreindel Revocable Trust DTD 02/09/2005, Henry Mitchell, Alvin Sabroff and June Sabroff ("Representative Plaintiffs")[1] submit this application under Rule 23(e) of the Federal Rules of Civil Procedure for preliminary approval of a proposed partial class action settlement that settles all claims against Securities America, Inc. and Securities America Financial Corporation (SAFC) on behalf of persons who invested through Securities America, Inc. in (1) a series of stock offerings and partnership interests issued by Provident Royalties, LLC affiliates between September 2006 and January 2009, and (2) a series of notes issued by Medical Capital Holdings, Inc. affiliates between November 2003 and July 2008.  Following the transfer of the Medical Capital litigation to this Court for settlement purposes, the parties have negotiated a resolution of the claims of both classes of investors against Securities America and its immediate parent, Securities America Financial Corporation (SAFC).  Representative Plaintiffs now seek preliminary approval of the proposed settlement.

Like the settlement with Capital Financial Services, Inc. that the Court recently preliminarily approved, this proposed settlement is based on a "limited fund" theory because the potential exposure Securities America and SAFC face from pending and potential claims against them relating to Provident and Medical Capital securities far exceeds available assets.  Securities America is currently defending numerous arbitrations commenced by investors in Provident and Medical Capital securities, as well as administrative actions by the states of Massachusetts and Montana, and has exposure to liability for more than $100 million of claims.  Securities America's and SAFC's financial information, filed under seal with this motion, shows that they would not have sufficient funds to satisfy the claims of all Provident and Medical Capital investors.  Moreover, Securities America has exhausted its primary insurance policy proceeds defending these claims.

---

[1] Capitalized terms in this memorandum are defined in the Settlement Agreement.

The settlement fund includes the following components:

- A $7 million payment by Securities America, which is the amount of the company's excess net capital that its regulator, the Financial Industry Regulatory Authority (FINRA), has determined will not place the company in imminent jeopardy of a net capital deficiency.

- A $2,253,440 payment by Securities America of reserves it established for financial statement purposes related to potential losses in arbitrations involving Provident and Medical Capital securities.

- A future earnings payment by Securities America of 1% of its gross revenue each year for a three year period. Securities America has the option of "buying down" this obligation by paying $6 million within three months of the effective date of the settlement. Securities America may also buy down its obligation for the second and third years of the three year period for a payment of $4.5 million in the second year and $2.5 million in the third year.

- A payment of $800,000 by SAFC, which constitutes more than 60% of SAFC's available cash.

- A future earnings payment by SAFC of 1.5% of its gross revenue, excluding Securities America, each year for a three year period. SAFC may buy down this obligation by paying $5 million within three months of the effective date of the settlement. SAFC may also buy down its obligation for the second and third years of the three year period for a payment of $3.75 million in the second year and $2.2 million in the third year.

- An additional potential $4 million in excess liability insurance policy proceeds from Securities America's carrier, Columbia Casualty Company. Securities America will assert its rights to the proceeds of this policy and will pay any resulting collections into the settlement fund. To the extent that Columbia Casualty refuses to voluntarily pay over the policy proceeds, Securities America shall take such actions as may be reasonable to enforce its rights under the policy.

Not including the disputed insurance policy proceeds, and assuming Securities America and SAFC exercise their right to buy down their future payment obligations, the combined contributions of Securities America and SAFC to the settlement fund total **$21,053,440**, including near-term cash payments of $10,053,440. The addition of the insurance proceeds brings the total settlement fund to **$25,053,440**.

The proposed compromise is set forth in the Settlement Agreement filed with this motion. *See* Appendix ("Apx") 0003-0034. Representative Plaintiffs ask this Court to enter an order:

(1) granting preliminary approval of the proposed settlement; (2) certifying the proposed Settlement Classes for purposes of the settlement as mandatory pursuant to Rules 23(a) and 23(b)(1)(B) of the Federal Rules of Civil Procedure; (3) directing that the Settlement Classes be given notice of the pendency of these Class Actions and the settlement in the form and manner proposed by the Settling Parties; (4) scheduling a hearing to consider Representative Plaintiffs' motion for final approval of the settlement and entry of the proposed final judgment, and application for an award of attorneys' fees and reimbursement of expenses; and (5) to preserve the *status quo* pending the Court's final settlement approval determination, preliminarily enjoining all proceedings in federal or state court and all arbitration and administrative proceedings by or on behalf of members of the proposed Settlement Classes against Settling Defendants or their Registered Representatives asserting claims arising from the offer and sale of Provident Securities or Medical Capital Notes.

## II.     BACKGROUND OF THE LITIGATION

### A.     The Provident Class Actions

The Provident Class Actions are two related cases pending before this Court: *Joseph Billitteri, et al. v. Securities America, Inc., et al. (Provident Royalties Litigation)*, Case No. 3:09-cv-01568-F (N.D. Tex.), and *C. Richard Toomey, et al. v. Bradley K. Hofhines, et al.*, Case No. 3:10-cv-018330-F (N.D. Tex.).  In both cases, the plaintiffs allege that Securities America violated securities laws by offering and selling Provident Securities by means of private placement memoranda (PPMs) containing false and misleading statements.  Securities America sold more than $47 million in Provident securities to 543 investors and collected sales commissions of 5.5% to 8% of each sale plus a 1% "due diligence" payment.

*Billitteri* was filed in this Court on August 24, 2009.  (Dkt. No. 1.)  On November 5, 2009, the Court consolidated related cases and appointed Girard Gibbs LLP and Zwerling, Schachter & Zwerling, LLP as Interim Co-Lead Plaintiffs' Counsel.  (Dkt. No. 17.)  Plaintiffs filed their consolidated complaint on December 7, 2009, asserting claims for violation of the Texas Securities Act and breach of fiduciary duty.  (Dkt. No. 22.)  On July 26, 2010, the Court

denied in part and granted in part Defendants' motions to dismiss.  (Dkt. No. 101.)  On

September 9 and 17, 2010, respectively, plaintiffs filed a second amended complaint and motion

for class certification.  (Dkt. Nos. 116, 118-31.)  On October 6, 2010, the Court granted the

parties' joint motion to defer all scheduled dates and directed the parties to mediation.  (Dkt.

Nos. 140, 141.)  On January 25, 2011, the Court stayed all proceedings to allow the parties to

continue settlement discussions.  (Dkt. No. 190.)

     In *Toomey*, filed as a class action in the United States District Court for the District of

Idaho, the plaintiffs alleged claims for violations of the Securities Act of 1933 and Idaho state

law.  On June 10, 2010, the Court appointed the Sharon Kreindel Revocable Trust DTD

02/09/2005 as lead plaintiff and Girard Gibbs and Zwerling, Schachter as Co-Lead Counsel.  The

case was transferred to this Court on September 13, 2010 and stayed on October 7, 2010.

     The parties' settlement discussions were informed by substantial discovery conducted to

date, which has included the production and review of more than a million pages of documents

produced by the parties and certain non-parties.  Securities America produced more than 10,000

pages of documents.  The parties have taken the depositions of the Provident Entities' Chief

Restructuring Officer, the Provident Entities' Chapter 11 Trustee, and the Representative

Plaintiffs, among others.

        **B.**      **The Medical Capital Class Action**

     The Medical Capital Class Action arises out of the collapse of an investment scheme in

which Medical Capital Holdings, Inc. affiliates raised approximately $2.2 billion from over

20,000 investors between November 2003 and July 2009.  Plaintiffs allege that Securities

America was part of a nationwide network of broker-dealers that offered and sold Medical

Capital Notes, a series of notes issued by special purpose corporations (SPCs) created by

Medical Capital.  Medical Capital purported to be in the business of financing healthcare

providers by purchasing their accounts receivables and making secured loans to them.  The note

offerings were for the stated purpose of funding Medical Capital's medical provider financing

operations.  The funds were used to be purchase batches of medical receivables to be held in trust for the SPC that issued the notes.

The brokers received commissions based on the aggregate principal amount of the Medical Capital Notes sold.  The notes were sold as exempt from the registration requirements under Rule 506 of Regulation D of the federal securities laws. The offerings were thus considered "private placement securities," legally marketable only to sophisticated and accredited investors.  Nonetheless, Securities America and the other broker-dealers offered and sold the Medical Capital Notes through public solicitations without regard to the investors' sophistication or knowledge, or whether they qualified as accredited investors, including dinner seminars that were open to the general public.

Securities America and other broker-dealers offered and sold the Medical Capital Notes using PPMs that plaintiffs contend contained false and misleading statements in that they misrepresented or omitted to disclose, among other things that:  (1)  accounts receivable were transferred from older SPCs to new SPCs (known as "round-tripping") at least 301 times, amounting to over $829 million in sales of assets from one SPC to another; (2) Medical Capital commingled funds between entities and overpaid for assets; (3) certain receivables purchased by SPCs did not exist at the time of purchase; (4) Medical Capital's accounting records did not comply with GAAP; (5) Medical Capital overstated its assets, overstated the amount of proceeds used to purchase accounts receivable, and made improper payments of administrative fees to Medical Capital entities; and (6) Medical Capital misappropriated and wrongfully used investor funds to pay administrative fees to Medical Capital-affiliated entities and to invest in other ventures that were unrelated to the medical receivables business.  Starting in August 2008, several of the SPCs began to default on payments of interest and principal to investors.

Securities America sold approximately 37% of the Medical Capital Notes that were issued, totaling around $697 million in sales.  Approximately $379 million of these notes, held by 2,605 investors, are in default.  On July 16, 2009, the SEC initiated an enforcement action against Medical Capital and its principals for securities violations.  Medical Capital's alleged

transgressions, including accounting violations, misappropriation of investor funds, and inflated collateral valuations, have been detailed in the reports of a court-appointed receiver.

*Jana McCoy, et al. v. Cullum & Burks Securities, Inc., et al.*, Case No. 8:09-CV-01084 DOC (RNBx) (C.D. Cal.), is one of a series of cases included in *In re Medical Capital Securities Litigation*, SA 10-ML-2145 DOC (RNBx) (C.D. Cal.), centralized before the Honorable David O. Carter of the United States District Court for the Central District of California by the Judicial Panel on Multidistrict Litigation.  Plaintiffs allege claims against several broker-dealers, including Securities America, for violations of the Securities Act and for negligence.  By order dated December 8, 2009, Judge Carter appointed Jana McCoy, Henry Mitchell, Jeff Huber, Alvin and June Sabroff, James and Cheryl Merrill and Don Ribacchi to serve as Lead Plaintiffs and appointed Girard Gibbs and Zwerling Schachter to serve as Co-Lead Counsel.  By order dated January 26, 2011, Judge Carter transferred the cases to this Court for settlement purposes only "in an effort to maximize the potential recovery to investors who purchased Provident and Medical Capital securities from these common broker defendants."  (*McCoy* Dkt. No. 141 at 2.)

### C.    Other Proceedings Pending Against Securities America Arising Out of the Sale of Provident Securities and Medical Capital Notes

There are numerous arbitrations currently pending against Securities America and its affiliates relating to the sale of Provident Securities and Medical Capital Notes.  Securities America's potential exposure from these arbitrations far exceeds its available assets.  *See* Apx. 0136-0304, 0327-0342.  Last month, Securities America paid approximately $1.2 million in connection with an arbitration award arising out of the offer and sale of Medical Capital Notes. In addition, state securities departments for Massachusetts and Montana are pursuing administrative actions against Securities America for, among other things, restitution to approximately 70 investors in each state.  Both state actions are still pending.

### III.    THE PROPOSED SETTLEMENT

### A.    The Settlement Classes

The proposed settlement has been reached on behalf of two Settlement Classes.  The

Provident Settlement Class is defined as:

> All Investors, their successors and assigns, who purchased Provident Securities
> from Settling Defendant Securities America.  The Provident Settlement Class
> excludes:  the Defendants; any entity that is a parent or subsidiary of any
> Defendant; the officers, directors, affiliates, legal representatives, predecessors,
> successors and assigns of any Defendant; all Registered Representatives; any
> Investor with whom Settling Defendant Securities America has previously settled
> Claims and from whom Securities America has received a release as to such
> Claims; Provident Royalties, LLC and its affiliates; any entity that is a parent or
> subsidiary of any Provident Entity, and the officers, directors, affiliates, legal
> representatives, predecessors, successors and assigns of any Provident Entity.

(Settlement Agreement ¶ I.25.)  The Medical Capital Settlement Class is defined as:

> All Investors, their successors and assigns, who purchased Medical Capital Notes
> from Settling Defendant Securities America.  The Medical Capital Settlement
> Class excludes:  the Defendants; any entity that is a parent or subsidiary of any
> Defendant; the officers, directors, affiliates, legal representatives, predecessors,
> successors and assigns of any Defendant; all Registered Representatives; any
> Investor with whom Settling Defendant Securities America has previously settled
> Claims and from whom Securities America has received a release as to such
> Claims; Medical Capital Holdings, Inc. and its affiliates; any entity that is a parent
> or subsidiary of Medical Capital, and the officers, directors, affiliates, legal
> representatives, predecessors, successors and assigns of Medical Capital.

(Settlement Agreement ¶ I.16.)  Representative Plaintiffs seek certification of the proposed

Settlement Classes for settlement purposes only.  Because the proceeds of the settlement

constitute a "limited fund," which is inadequate to satisfy all claims against Securities America

and SAFC arising from the sale of Provident Securities and Medical Capital Notes,

Representative Plaintiffs ask the Court to certify the Settlement Classes as mandatory under Rule

23(b)(1)(B) of the Federal Rules of Civil Procedure.

### B.    The Components of the Settlement Fund

The Settlement Fund has six components:  (1) the Excess Net Capital Contribution;

(2) the Provident/Medical Capital Reserves; (3) Securities America's Future Earnings

Component; (4) the SAFC Contribution; (5) the SAFC Future Earnings Component; and

(6) Policy Proceeds obtained from Columbia Casualty Company.  (Settlement Agreement,

¶ I.42.)  Each of the components of the Settlement Fund is described below.

### 1.     The Excess Net Capital Contribution

Securities America will pay $7,000,000, the amount of the company's excess net capital

that FINRA has determined will not place the company in imminent jeopardy of a net capital

deficiency.  (Settlement Agreement, ¶ I.9.)  Securities America has produced its annual audited

financial statements for 2007, 2008 and 2009, and the quarterly reports it provides to FINRA for

2008 through 2010.  *See* Apx. 0136-0304.  These financial documents are being filed under seal

with this motion and will be made available to interested class members or their counsel who

sign a confidentiality order.

### 2.     The Provident/Medical Capital Reserves

Securities America has established reserves for financial statement reporting purposes for

potential losses relating to upcoming arbitrations involving the sale of Provident Securities and

Medical Capital Notes.  These reserves currently total $2,253,440.  Upon final approval of the

settlement, Securities America will pay its Provident/Medical Capital Reserves to the Settlement

Fund.  (Settlement Agreement, ¶ I.26.)

### 3.     Securities America's Future Earnings Component

Securities America will pay an amount equal to 1% of its gross revenue each year for a

three year period following the Effective Date of the settlement.  Securities America has the

option, however, of "buying down" its obligation to pay this Future Earnings Component by

paying into the Settlement Fund the sum of $6 million at any time through the last day of the

third month following the Effective Date of the settlement.  Securities America is also free to

buy down its obligation for the second and third years of the three year period for a payment of

$4.5 million in the second year and $2.5 million in the third year.  (Settlement Agreement,

¶ I.33.)

### 4.      SAFC's Contribution

SAFC is the immediate parent company of Securities America.  SAFC will pay $800,000, which is over 60% of its available cash. (Settlement Agreement, ¶ I.31.)  SAFC has produced its consolidated financial statements for 2007, 2008 and 2009.  *See* Apx. 0305-0306.  SAFC also wholly owns Brecek & Young Advisors, Inc. and Securities America Advisors, Inc., both of which provide investment advisory services.  SAFC has produced income statements and balance sheets from 2009 and 2010 for both companies.  *See* Apx. 0307-0324.  These documents are being filed under seal with this motion and will be made available to interested class members who sign a confidentiality order.

### 5.      SAFC's Future Earnings Component

SAFC will pay an amount equal to 1.5% of its gross revenue each year, excluding Securities America, for a three year period following the Effective Date of the settlement.  As with Securities America's Future Earnings Component, SAFC has the right to "buy down" its obligation to pay the SAFC Future Earnings Component by paying into the Settlement Fund the sum of $5 million at any time through the last day of the third month following the Effective Date of the Settlement.  SAFC may also buy down its obligations for the second and third years of the three year period for a payment of $3.75 million in the second year and $2.2 million in the third year.  (Settlement Agreement, ¶ I.32.)

### 6.      The Policy Proceeds

Securities America maintains a primary liability insurance policy titled "Securities Broker/Dealer and Registered Representative Professional Liability Insurance," with American International Specialty Lines Insurance Company to pay claims and defense costs in Provident and Medical Capital legal proceedings.  (Settlement Agreement, ¶ I.1.)  Although the aggregate limits of the policy are $15,000,000 for all losses occurring during the policy period, the policy includes a sublimit of $2,000,000 for all claims (including civil actions and arbitrations) arising out of the same, related or common nexus of facts.  Because the American International policy is a "wasting" policy, defense costs are deducted from the available coverage.  The sub-limits for

Medical Capital and Provident claims have been fully consumed by defense costs and settlement of individual claims.  *See* Apx. 0035-0036.

Securities America has an excess liability insurance policy which may provide additional coverage.  *See* Apx. 0036, 0123-0133.  Securities America has demanded that the carrier, Columbia Casualty Company, pay a total of $4,000,000 in insurance to indemnify Securities America for its present and future contributions to this Settlement (defined in the Settlement Agreement as the "Policy Proceeds"). (Settlement Agreement, ¶¶ I.4, I.21.)  Securities America will assert its rights to the Policy Proceeds and will pay any resulting collections into the Settlement Fund.  To the extent that Columbia Casualty refuses to voluntarily pay over the Policy Proceeds, Securities America shall take such actions as may reasonable to enforce its rights under the policy.  If the Policy Proceeds are paid in full, they will add an additional $4,000,000 to the settlement.  (*Id.*, ¶ VIII.D.4.)

### C.  The Amount of the Settlement Fund

Without reference to the disputed Policy Proceeds, and assuming Securities America and SAFC exercise their right to buy down their future payment obligations, the combined contributions of Securities America and SAFC to the Settlement Fund equal $**21,053,440**, including near-term cash payments of $10,053,440.  Any amount collected in respect of the Policy Proceeds would increase the Settlement Fund by a like amount.  Should the business of Securities America and SAFC decline, however, the amounts of the future earnings contributions could decrease.  Plaintiffs have agreed to discount the amount Securities America and SAFC are required to pay to eliminate their future earnings obligations to encourage early payment and minimize the risk to Settlement Class Members of a delay in payment.  The future earnings components of the settlement are designed to maximize the amounts Securities America and SAFC can pay in settlement without affecting the viability of the enterprises and recognizing their limited available cash.

### D.      Allocation of the Settlement Fund

The parties propose that the Settlement Fund be allocated *pro rata*.  It will first be divided proportionately between the Provident Settlement Class and the Medical Capital Settlement Class based upon the amount of money actually invested in such securities, net of any return of investments received by the Settlement Class Members.  The Net Provident Settlement Fund will then be distributed to the Provident Settlement Class Members on a pro rata basis, in the same proportion as each individual Provident Settlement Class Member's lost principal investment amount in Provident Securities bears to the total lost principal investment amount of all Provident Settlement Class Members, net of any return of investments received by the Provident Settlement Class Members.  The Net Medical Capital Settlement Fund will be distributed to the Medical Capital Settlement Class Members on a pro rata basis, in the same proportion as each individual Medical Capital Settlement Class Member's lost principal investment amount in Medical Capital Securities bears to the total lost principal investment amount of all Medical Capital Settlement Class Members, net of any return of investments received by the Medical Capital Settlement Class Members.  (*Id.* ¶ VIII.G.2.)  The Court will determine the amount of any deduction for payment of attorneys' fees to Class Counsel, reimbursement of litigation expenses, Defense Costs (not to exceed $100,000), and costs of settlement administration.  (Settlement Agreement, ¶¶ I.7, I.17, VIII.G.2(a).)

### E.      The Release of Settlement Class Members' Claims

The Settlement Agreement provides that Settling Defendants and their current and former officers, directors, employees, and Registered Representatives, and any subsidiaries of Settling Defendants (collectively, "Releasees") will be released from any and all liability as to Settled Claims.  (Settlement Agreement, ¶ I.28.)  The Settlement Agreement defines Settled Claims as "any and all Claims (known or unknown) that have or could have been asserted by, on behalf of, or in the name of, any Settlement Class Member against Releasees, directly or indirectly, based upon, arising out of, or related to:  (i) an investment or interest in one or more of the Provident Securities or Medical Capital Notes, or (ii) the facts, transactions, events, occurrences, acts, or

omissions that relate to any of the matters alleged in the Class Actions." (*Id.*, ¶ I.36.) The Registered Representatives may have indemnification or contribution claims against Securities America and their release is therefore necessary to protect the limited fund and to provide a comprehensive resolution of the Settled Claims. *See In re the Reserve Fund Securities & Derivative Litig.*, 673 F. Supp. 2d 182, 202-03 (S.D.N.Y. 2009).

The release will bar and permanently enjoin Settlement Class Members from prosecuting, commencing or continuing any and all Settled Claims they had or have against the Releasees in any forum. (Settlement Agreement, ¶¶ VIII.C.3-5.) This release ensures that the settlement will resolve on an equitable basis all claims of all investors who purchased Provident Securities and Medical Capital Notes through Securities America. No Settlement Class Member will be able to pursue individual litigation or arbitration to deplete Settling Defendants' remaining assets at the expense of the Settlement Classes as a whole.

## IV.   PRELIMINARY SETTLEMENT APPROVAL

### A.   The Role of the Court

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is a matter within the broad discretion of the district court. *See Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). "First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002). "Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id.*; *see also* Manual for Complex Litigation, Fourth § 13.14 (2010) ("Manual 4th").

### B.   The Proposed Settlement Classes May Be Certified

Initially, the Court must determine that that the proposed Settlement Classes are properly certified for settlement purposes. *See* Manual 4th § 21.632; *McNamara*, 214 F.R.D. at 426-27.

The Court has great discretion in determining whether to certify a class.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 624 (1997).  The Court may certify a class where the plaintiffs demonstrate that the proposed classes and proposed class representatives meet the prerequisites of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—and one of the three requirements of Rule 23(b).

<strong>1.      The Proposed Settlement Classes Satisfy Rule 23(a)</strong>

<strong>a.      The Classes Are Too Numerous to Join All Members</strong>

The Settlement Classes are so numerous that joinder of all members of each class is impracticable.  Securities America sold approximately $47 million in Provident Securities to 543 investors, all of which are in default.  Securities America sold $697 million in Medical Capital Notes, of which approximately $379 million purchased by 2,605 investors are in default.  *See, e.g., Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding a class of 100 to 150 members satisfies numerosity and any more than 40 members should raise a presumption that joinder is impracticable).  In addition, the Settlement Class Members are too geographically dispersed to be easily joined into one action.  *See, e.g., Eatmon v. Palisades Collection, LLC*, No. 2:08-CV-306-DF-CE, 2010 WL 1189571, at *4 (E.D. Tex. Mar. 5, 2010).

<strong>b.      There Are Common Questions of Law or Fact</strong>

The commonality requirement under Rule 23(a)(2) is met where, as here, "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."  *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir.1997).  Some of the issues common to all Provident Settlement Class Members are:  whether Securities America is a "seller" of securities under applicable law; whether Securities America sold Provident Securities by means of false and misleading statements; whether the PPMs and brochures contained untrue statements or omissions of material fact; whether Securities America owed and breached a fiduciary duty to Provident Settlement Class Members; whether Provident Settlement Class Members are entitled to rescission or damages; and whether SAFC is liable as a control person of Securities America.  Issues common to all Medical Capital Settlement Class Members include:

13

whether Securities America is a "seller" under applicable law; whether Securities America sold the Medical Capital Notes by means of false and misleading statements; whether the Medical Capital PPMs contained untrue statements or omissions of material fact; whether Securities America was negligent; whether Medical Capital Settlement Class Members are entitled to rescission or damages; and whether SAFC is liable as a control person of Securities America.

### c. The Representative Plaintiffs' Claims Are Typical

The typicality requirement is satisfied because the Representative Plaintiffs' claims arise from a similar course of conduct and assert the same legal theories as the claims of the members of each of the Settlement Classes. *See James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir. 2001) (typicality requires only that "the class representative's claims have the same essential characteristics of those of the putative class"); *Eatmon,* 2010 WL 1189571, at *6 ("If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.").  Like every Provident Settlement Class Member, Representative Plaintiffs Joseph Billitteri and the Sharon Kreindel Revocable Trust were sold Provident Securities by Securities America by means of PPMs and sales brochures that contained untrue statements and omissions of material fact in violation of securities laws.  Similarly, like all Medical Capital Settlement Class Members, Representative Plaintiffs Henry Mitchell, Alvin Sabroff and June Sabroff were sold Medical Capital Notes by Securities America by means of PPMs that contained untrue statements and omissions of material fact in violation of securities laws.  To succeed on the merits, Representative Plaintiffs and members of each of the Settlement Classes would have to prove the same or similar facts about Securities America's conduct and the same or similar untrue statements and omissions of material fact.

That Representative Plaintiffs purchased Provident Securities and Medical Capital Notes in offerings different from other members of each Settlement Class does not defeat typicality. Securities America sold the Provident Securities offerings in the same way by using PPMs and brochures containing the same or very similar false and misleading statements.  The same is true of Securities America's sale of the Medical Capital Notes.  *See, e.g., Longden v. Sunderman*, 123

14

F.R.D. 547, 553, 556-57 (N.D. Tex. 1988) (investors in seven partnerships could represent a class of investors in 121 partnerships where defendants engaged in a "common course of conduct through a uniform sales plan involving PPMs that were the same or very similar in their misleading or omitted information").

> **d.     The Representative Plaintiffs Will Adequately Represent the Settlement Classes**

The adequacy requirement is met where "(1) the named plaintiffs' counsel will prosecute the action zealously and competently; (2) the named plaintiffs possess a sufficient level of knowledge about the litigation to be capable of taking an active role in and exerting control over the prosecution of the litigation; and (3) there are no conflicts of interest between the named plaintiffs and the absent class members." *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 163-64 (N.D. Tex. 2010).  The Representative Plaintiffs and their counsel have fairly and adequately represented and protected the interests of all members of each Settlement Class. The Representative Plaintiffs have demonstrated that they are capable of directing the prosecution of the class claims, and have "an adequate layperson's understanding of the factual and legal bases of this action." *Id.* at 164.  There are no conflicts of interest between the Representative Plaintiffs and the members of either Settlement Class because their interests are aligned. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (holding that as long as "all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purpose.").

The Representative Plaintiffs have also retained counsel who are highly qualified to pursue the litigation.  Settlement Class Counsel have committed significant resources to represent the Settlement Classes and have zealously prosecuted the Class Actions, opposing motions to dismiss, communicating regularly with the Representative Plaintiffs, and engaging in complex and demanding settlement negotiations.  Counsel also engaged in substantial discovery

in the Provident Class Action that included multiple depositions and the review of many thousands of pages of documents.

Settlement Class Counsel previously notified this Court of their representation of the named plaintiffs in both the Provident litigation and the Medical Capital litigation. "Most courts have held that class counsel may represent more than one class against the same set of defendants in large part because of the procedural safeguards in place to protect the proposed class; i.e., the court must approve any proposed settlement." *Mehl v. Canadian Pac. Ry., Ltd.*, 227 F.R.D. 505, 515 (D.N.D. 2005) (granting class certification in toxic exposure case, despite class counsel's concurrent representation of other plaintiffs in actions against same defendant for same railroad accident). This Court's close oversight of the Provident litigation, the recent transfer of the Medical Capital litigation to this Court for settlement purposes, and the Court's review of the proposed settlement ensure that the interests of both classes are protected.

Under the circumstances of this case, counsel's concurrent representation furthers the interest of the members of both Settlement Classes. Securities America's assets are being rapidly depleted by its defense of a multitude of litigation and arbitrations, and having separate counsel negotiate separately would create inefficiencies, impede the prospect of settlement, dissipate funds, and delay resolution. *See, e.g., In re Corrugated Container*, 643 F.2d at 208 ("logic dictates that one set of negotiators, with the authority to release defendants from all claims, would be in a better bargaining position than negotiators with authority to compromise only part of the action."); *Allen v. Stewart Title Guaranty,* 246 F.R.D. 218, 219 (E.D. Pa. 2007) (finding that permitting attorneys to represent similar classes in separate courts against the same defendant would "facilitate cooperation and economic use of judicial resources").

### 2.    The Proposed Settlement Classes Satisfy Rule 23(b)(1)

#### a.    Standards for Certification Under Rule 23(b)(1)(B)

Rule 23(b)(1)(B) permits certification of a mandatory (non opt-out) class when:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of . . . (B) adjudications with respect to individual

members of the class which would as a practical matter be dispositive of the
interests of the other members not parties to the adjudications or substantially
impair or impede their ability to protect their interests.

Rule 23(b)(1)(B) is usually applied when a "limited fund" exists, such that non-class members

seeking damages would likely deplete the fund and deprive class members of any recovery.  *See*

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832 (1999); *Baker v. Wash. Mutual Finance Group,*

*LLC*, 193 Fed. Appx. 294, 297 (5th Cir. 2006); *Berthelot v. Am. Postal Workers Union, Local*

*185*, No. H-10-0018, 2010 WL 4639050, at *6 (S.D. Tex. Nov. 8, 2010) ("Rule 23(b)(1)(B)

focuses on whether individual actions would prejudice other class members …, e.g., where

individuals seek compensation from a single, common fund insufficient to settle all claims").

In *Ortiz*, the Supreme Court held that cases in which mandatory class treatment is proper

on a limited fund theory have three "presumptively necessary" characteristics.  First, the total

amount of the fund and the claims against that fund, "set definitely at their maximums,

demonstrate the inadequacy of the fund to pay all the claims."  *Ortiz*, 527 U.S. at 838.  "Second,

the whole of the inadequate fund [will] be devoted to the overwhelming claims."  *Id.* at 839.

And third, "the claimants identified by [the] common theory of recovery [will be] treated

equitably among themselves."  *Id.*  All of these requirements are satisfied here.

> **b.**   **The Settlement Fund Is Limited and Inadequate to Pay the
> Claims of All Settlement Class Members**

To satisfy the first of the necessary characteristics under Rule 23(b)(1)(B), the movants

must demonstrate the actual "limit and … insufficiency of the fund" to satisfy the claims of

Settlement Class Members.  *Ortiz*, 527 U.S. at 849.  Securities America's and SAFC's financial

documents, filed under seal with this motion, confirm that its assets are insufficient to satisfy the

claims of all Provident and Medical Capital investors if reduced to judgment.  Securities

America sold approximately $47 million of Provident Securities, all which are in default, and

$697 million of Medical Capital Notes, of which approximately $379 million are in default.

Very few of the Settlement Class Members received any significant return on their investments,

and many lost their entire principal investment.  Individual investors have also commenced

numerous arbitrations against Securities America and its affiliates, seeking far more than Securities America's available assets.

Securities America and SAFC do not have sufficient assets to satisfy the claims in the pending arbitrations if reduced to judgment, much less the claims in the Class Actions. Securities America and SAFC are paying the maximum amount into the Settlement Fund that they can pay without affecting the ability of the companies to remain in business (and make the additional payments required under the terms of the settlement). Securities America is paying the full amount of its excess net capital that FINRA has determined will not place the company in imminent jeopardy of a net capital deficiency, the reserves it established for upcoming arbitrations involving Provident Securities and Medical Capital Notes, and a percentage of its gross revenue over the next three years. Assuming Securities America exercises its "buy down" option in year one, Securities America would contribute a total of $15,253,440 to the Settlement Fund. SAFC is paying over 60% of its available cash, plus an amount equal to 1.5% of its gross revenue (excluding Securities America) each year for a three year period. Assuming SAFC exercises its "buy down" option in year one, SAFC would contribute a total of $5,800,000 to the settlement. Securities America is also pursuing an additional $4,000,000 in excess liability insurance policy proceeds.

Securities America and SAFC have produced evidence, subject to the Court's evaluation, that they have no other available assets with which to satisfy a judgment. *See* Apx. 0136-0324. They have also warranted that the financial information they have produced is complete and correct and that they do not possess, own, control or have any beneficial interest, direct or indirect, in any other account or asset. If any of the financial information is found to be materially inaccurate prior to the Effective Date of the settlement, Plaintiffs are entitled to petition the Court to cancel or terminate the Settlement Agreement or for such other relief as may be appropriate. (Settlement Agreement, ¶ VIII.D.8.)

Certification of a mandatory class under these circumstances is appropriate because the continued prosecution of separate actions against Settling Defendants "would create a risk of …

adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). The Settlement Fund, which constitutes the maximum amount that Securities America and SAFC can pay, is insufficient to fully satisfy the Settlement Class Members' claims. *See, e.g., Baker*, 193 Fed. Appx. at 297 (affirming the district court's approval of a Rule 23(b)(1)(B) settlement over the objections of intervenors and class members that the plaintiffs had not established the inadequacy of the fund to pay all claims); *Williams v. Nat'l Security Insurance Co.*, 237 F.R.D. 685, 693 (M.D. Ala. 2006) ("The prosecution of separate actions against [the defendant] unquestionably creates a risk of adjudications that, as a practical matter, would be dispositive of the interests of class members not parties to the adjudications or would substantially impair or impede their ability to protect their interests." ). The first *Ortiz* factor is satisfied.

### c. The Settlement Fund Will Be Devoted to the Settlement Classes

The second *Ortiz* factor requires that the limited settlement fund be dedicated to the claims of class members. *Ortiz*, 527 U.S. at 839. This requirement ensures that "the class as a whole was given the best deal; [and that] they did not give defendant a better deal than seriatim litigation would have produced." *Id.* Under the Settlement Agreement, the entirety of the Settlement Fund will be devoted to payment of the claims of members of the Settlement Classes, after Court-approved payments of attorneys' fees, litigation expenses, Defense Costs (not to exceed $100,000), and settlement administration fees. (Settlement Agreement ¶¶ I.7, I.17, VIII.G.) Plaintiffs' Class Counsel will make a separate written application to the Court for an award of attorneys' fees and costs to be heard on the same day as the Fairness Hearing. (*Id.* ¶ VIII.B.1(g).) The Settlement will be administered by Settlement Class Counsel or their designees under the continuing supervision of the Court. (*Id.* ¶ VIII.G.1.) The second *Ortiz* factor is satisfied.

19

### d.    The Settlement Fund Will Be Equitably Distributed

The third *Ortiz* factor, requiring equitable treatment, involves two issues:  "the inclusiveness of the class and the fairness of distributions to those within it."  *Ortiz*, 527 U.S. at 854.  Because exclusion from the class effectively means denial of any relief, a class definition that unreasonably excludes a significant portion of claimants does not satisfy this requirement.  *See id*.  Similarly, distributions among class members must be fair, usually accomplished through a distribution on a *pro rata* basis.  *See id.* at 855.

The Settlement Classes include all persons who purchased Provident Securities or Medical Capital Notes through Securities America.  The Defendants and their affiliates, directors, officers and registered representatives are excluded from the class, as are Provident and Medical Capital and their affiliates.  (Settlement Agreement ¶¶ I.16, I.25.)  These types of exclusions are a common litigation practice necessary to avoid conflicts of interest among class members that would otherwise preclude certification.  *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 128-29 (5th Cir. 2005) (affirming the certification of investor plaintiff class with comparable exclusions).

The parties propose that the Settlement Fund be allocated *pro rata*, divided proportionately between the Provident Settlement Class and the Medical Capital Settlement Class based upon the amount of money actually invested in such securities, net of any return of investments received by the Settlement Class Members.  The Net Provident Settlement Fund will then be distributed to the Provident Settlement Class Members on a pro rata basis, in the same proportion as each individual Provident Settlement Class Member's lost principal investment amount in Provident Securities bears to the total lost principal investment amount of all Provident Settlement Class Members, net of any return of investments received by the Provident Settlement Class Members.  The Net Medical Capital Settlement Fund will be distributed to the Medical Capital Settlement Class Members on a pro rata basis, in the same proportion as each individual Medical Capital Settlement Class Member's lost principal investment amount in Medical Capital Securities bears to the total lost principal investment amount of all Medical

Capital Settlement Class Members, net of any return of investments received by the Medical Capital Settlement Class Members.  (*Id.* ¶ VIII.G.2.)  This distribution will provide an equitable monetary recovery to all Settlement Class Members.  As all three factors under *Ortiz* are satisfied, preliminary certification of mandatory classes under Rule 23(b)(1)(B) is appropriate.

### 3.      The Court Should Appoint Girard Gibbs and Zwerling, Schachter as Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel … [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(A), (B).  In making this determination, the Court must consider counsel's:  (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  The Court previously appointed the law firms of Girard Gibbs and Zwerling, Schachter to serve as Interim Co-Lead Plaintiffs' Counsel in the *Billitteri* action and has preliminarily appointed both firms as Settlement Class Counsel with respect to a recent settlement of claims against Capital Financial Services in this litigation.  The Girard Gibbs and Zwerling, Schachter firms were also appointed as Co-Lead Counsel under the PSLRA in the *Toomey* and *McCoy* actions.  As shown in the firm resumes previously submitted to the Court, the firms have significant experience in litigating class actions and securities cases and, over the last year, have diligently litigated the Class Actions, dedicated substantial resources to the investigation and prosecution of these claims, and demonstrated their knowledge of the laws at issue.  Girard Gibbs and Zwerling, Schachter should be appointed Settlement Class Counsel under Rule 23(g).

### C.      The Settlement Warrants Preliminary Approval

In determining whether to preliminarily approve the settlement, the Court must "make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms." *Manual 4th*, § 21.633.

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*McNamara*, 214 F.R.D. at 430 (quoting Manual for Complex Litigation, Third § 30.41).  The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range reasonableness."  Manual 4th § 40.42.

"The court … must not try the case in the settlement hearings because 'the very purpose of the compromise is to avoid the delay and expense of such a trial."  *Reed*, 703 F.2d at 172 (citation omitted).  "A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case." *Id.*; *see also In re Combustion, Inc.*, 968 F. Supp. 1116, 1129 (W.D. La. 1997) ("The proposed settlement need only reflect a fair, reasonable, and adequate estimation of the value of the case in view of what might happen at trial.").

### 1.      There Are No Grounds to Doubt the Fairness of the Settlement, Which Is the Product of Extensive, Arm's-Length Negotiations

The first consideration in the analysis is whether "'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations.'"  *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993) (citation omitted).  Courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement.  *See Reed*, 703 F.2d at 175; *McNamara*, 214 F.R.D. at 430-31.  When a settlement is negotiated at arm's length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re the Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009) ("Negotiations were sufficiently thorough, contentious, and at arm's length to ensure the propriety of Class Counsel's decision to enter into the settlement and the proceedings leading thereto."); *Shell Oil Refinery*, 155 F.R.D. at 556 (citing evidence of counsel demonstrating "their conviction that the settlement amount was well within the range of possible approval and was the result of arms length, non-collusive

bargaining"). Courts may also consider whether settlement was reached with the assistance of an experienced mediator. *See Sandoval v. Tharaldson Employee Mgmt.*, No. 08-482-VAP, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010); *Neff v. Via Metro. Transit Auth.*, 179 F.R.D. 185, 211 (W.D. Tex. 1998).

This proposed settlement is the product of extensive arm's-length negotiations that took place over many months. The parties engaged in mediation and continued discussions through in-person meetings and many lengthy telephone conferences. Counsel for both parties devoted significant time and energy to negotiating and documenting the terms of the settlement. Based on their familiarity with the factual and legal issues, the parties were able to negotiate a fair settlement that took into account the costs and risks of continued litigation, particularly in light of Settling Defendants' limited financial resources. The negotiations were hard fought and have produced a result that the Settling Parties believe to be in their respective best interests.

### 2.     The Proposed Settlement Has No Obvious Deficiencies

The proposed settlement is fair and has no obvious deficiencies. The Settlement Fund is comprised of all of Securities America's and SAFC's available assets. Because Securities America has already exhausted the limits of its primary liability insurance policy, its remaining assets are subject to ongoing depletion for the payment of defense costs and would almost certainly be consumed before the Class Action claims could be adjudicated. The proposed settlement provides no preferential treatment for the Representative Plaintiffs or any other group of investors. All Settlement Class Members will receive distributions from the Settlement Fund that are calculated in the same manner to compensate them in proportion to their actual investment losses. *See Vaughn v. American Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007) ("There was no bias, collusion, or coercion in favor of any party or group of class members. This fact weighs heavily in favor of approval."). The settlement does not mandate excessive compensation for Class Counsel since any award of fees and expenses is subject to Court approval. *See In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010).

### 3.     The Settlement Falls Within the Range of Possible Approval

The proposed settlement also falls within the range of possible approval.  Settling

Defendants will pay all of their available assets to resolve claims arising from the sale of

Provident Securities and Medical Capital Notes.  Settlement Class Counsel, who have a great

deal of experience in the prosecution and resolution of complex class action securities litigation,

have carefully evaluated the merits of this case and the proposed settlement.  *See, e.g., Klein v.

O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010) ("The Fifth Circuit has repeatedly

stated that the opinion of class counsel should be accorded great weight.").  Even if the matter

were to proceed to trial, Settlement Class Counsel know from experience that the apparent

strength of their case is no guarantee against a defense verdict.  *See, e.g. Schwartz v. TXU Corp.*,

2005 WL 3148350, at *32 (N.D. Tex. Nov. 8, 2005) (citing cases in which jury verdicts for

substantial damages in securities actions were reversed on appeal).  Furthermore, the likelihood

of recovering any judgment after trial is minimal given the Settling Defendants' limited assets

and the numerous pending arbitrations against them.  Other broker-dealers that sold Provident

Securities and Medical Capital Notes, such as GunnAllen Financial Inc. and QA3 Financial

Corp., are now defunct.[2]

The parties' proposed plan of allocation is fair and equitable.  *See In re Am. Bank Note

Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) ("An allocation

formula need only have a reasonable, rational basis [to warrant approval], particularly if

recommended by 'experienced and competent class counsel.").  Ultimately, allocation of the

Settlement Fund will be subject to approval by the Court after Settlement Class Members have

the opportunity to comment, but the parties propose distribution on a *pro rata* basis.  (Settlement

Agreement ¶ VIII.G.2.)

### V.     THE PROPOSED PLAN OF CLASS NOTICE

Although Rule 23(b)(1)(B) class actions do not require notice to class members, Rule

---

[2] *See* Bruce Kelly, "B-D down: QA3 to close up shop next week," *Investment News*, Feb. 4, 2011
(http://www.investmentnews.com/article/20110204/FREE/110209926).

23(c)(2)(A) provides that a court "may direct appropriate notice" to the class.  *See Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 306 (5th Cir. 2007).  The parties propose to mail notice to all Settlement Class Members who can be identified through reasonable effort, which comports with the requirements of due process and the heightened standards for notice for Rule 23(b)(3) classes.  *See* Fed. R. Civ. P. 23(c)(2)(B) (for a Rule 23(b)(3) class, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort").

The parties' proposed notice will provide Settlement Class Members with "information reasonably necessary for them to make a decision whether to object to the settlement."  *Katrina*, 628 F.3d at 197.  It describes the nature, history and status of the Class Actions; sets forth the definition of the Settlement Classes; describes the Settlement Classes as mandatory; says that Settlement Class Members may enter an appearance through their own counsel; and advises of the binding effect of the settlement approval proceedings on Settlement Class Members.  The notice also describes the Settlement, the proposed plan of distribution, and the amount of attorneys' fees and expenses that Settlement Class Counsel intend to seek, and the reasons the parties are proposing the Settlement.  It also supplies the date, time, and place of the Fairness Hearing, and the procedures for commenting on the Settlement and appearing at the hearing.  The notice provides a toll-free number and contact information for Settlement Class Counsel to obtain additional information.  The notice "contain[s] an adequate description of the proceedings written in objective, neutral terms that, insofar as possible, may be understood by the average absentee class member."  *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977).

## VI.    PRELIMINARY INJUNCTION TO PRESERVE THE STATUS QUO

In connection with its preliminary approval of the limited fund settlement with Capital Financial, the Court enjoined under the All-Writs Act all proceedings in federal and state court and all arbitrations against Capital Financial to protect the limited fund from competing judgments, from further reduction for defense costs, and to preserve the *status quo* pending the

Court's consideration of final approval of the settlement.  (Dkt. No. 184.)  A similar injunction is necessary to protect the Securities America limited fund from further depletion.  Plaintiffs therefore request that the Court enjoin any other federal or state litigation, arbitration and administrative proceedings that involve claims of Settlement Class Members arising from the offer and sale of Provident Securities or Medical Capital Notes pending the Court's final determination on approval of the proposed settlement.

The Court has the authority to enter the proposed injunction under the All-Writs Act, which provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. §1651(a).  The Court may stay proceedings in other courts, arbitrations and administrative proceedings by or on behalf of investors to assist the Court in the complex task of ensuring resolution of class action claims before it.  *See, e.g., In re Baldwin-United Corp.*, 770 F.2d 328, 336 (2d Cir. 1985) (affirming injunction of competing state court litigation that would have interfered with settlement of federal securities class action); *see also Liles v. Del Campo*, 350 F.3d 742, 746-47 (8th Cir. 2003) (affirming injunction of related litigation as "necessary to ensure the enforceability of the order approving the preliminary settlement and to prevent further draining of the limited settlement fund"); *In re Painewebber Ltd. P'ships Litig.*, No. 94 Civ. 8547, 1996 WL 374162, at *4 (S.D.N.Y. July 1, 1996) (enjoining an arbitration from proceeding because "the Court may enjoin arbitration—even before judgment has been entered in this action—where that injunction would be 'in aid of its jurisdiction' within the terms of the *Baldwin-United* line of cases"); *see also Reserve Fund*, 673 F. Supp. 2d at 202-03 (enjoining state court actions adjudicating claims against an insolvent defendant's assets or any of the defendant's officers, representatives, or other employees to the extent the claims against them are subject to indemnification by the defendant).  The Court's injunction may include the claims in the Massachusetts and Montana state actions that are asserted in a representative capacity on behalf of investors.  *See Baldwin-United*, 770 F.2d at 339-41 (holding—over the objection of 31 states—that the district court had the authority under the All Writs Act to bar states "from

26

undertaking actions of a representative character" but not criminal or regulatory actions).

The Court's exercise of its authority to issue an injunction is warranted here. Securities America is currently defending numerous arbitrations commenced by individual Settlement Class Members in connection with their investments in Provident Securities and Medical Capital Notes. The defense of these and other arbitrations, and possible awards, threaten to deplete the Provident/Medical Capital Reserves and the Excess Net Capital Contribution that make up the bulk of the Settlement Fund and would frustrate efforts to resolve these claims in an equitable manner for all Settlement Class Members. To protect the limited fund from further reduction through competing judgments by individual Settlement Class Members, and to preserve the *status quo* pending final approval, the Court should enjoin any and all proceedings in federal or state court and any and all arbitration and administrative proceedings by or on behalf of Settlement Class Members against Settling Defendants or Securities America's Registered Representatives.

## VII.    CONCLUSION

Representative Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement and enter the proposed order: (1) Preliminarily Certifying Mandatory Class For Settlement Purposes, (2) Granting Preliminary Approval of the Settlement, (3) Approving Class Notice, and (4) Preliminarily Enjoining Other Proceedings By Settlement Class Members.

Dated: February 17, 2011                     Respectfully submitted,

**GIRARD GIBBS LLP**

By:     /s/  Daniel C. Girard

Daniel C. Girard
Amanda M. Steiner
Dena C. Sharp
601 California Street, 14th Floor
San Francisco, CA  94108

Tel:  (415) 981-4800

Robin Zwerling
Susan Salvetti
Sona R. Shah
Stephen Brodsky
**ZWERLING, SCHACHTER &
    ZWERLING, LLP**
41 Madison Avenue
New York, NY  10010
Tel:  (212) 223-3900


Dan Drachler
**ZWERLING, SCHACHTER &
    ZWERLING, LLP**
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Tel:  (206) 223-2053

*Interim Co-Lead Plaintiffs' Counsel*


Lewis T. LeClair
**McKOOL SMITH P.C.**
State Bar No. 12072500
300 Crescent Court, Suite 1500
Dallas TX 75201
Tel: 214.978.4984
Fax: 214.978.4044

*Liaison Plaintiffs' Counsel*


Ari H. Jaffe
**KOHRMAN JACKSON & KRANTZ, PLL**
One Cleveland Center, 20th Floor
Cleveland, OH  44114
Tel:  (216) 696-8700

28

David M. Foster
**DAVID M. FOSTER PC**
30833 Northwestern Highway
Suite 209
Farmington Hills, MI 48334
Tel:  (248) 855-0940

Scott L. Silver
**BLUM & SILVER, L.L.P**
12546 West Atlantic Blvd.
Coral Springs, FL  33071
Tel:  (954) 255-8181

*Plaintiffs' Counsel*