**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| BILLITTERI v. SECURITIES AMERICA, INC., *et al.* (*Provident Royalties Litigation*) | : | 3:09-cv-01568-F |
| | : | AND RELATED CASES |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | : | |
| | : | |
| | : | |

**MEMORANDUM IN OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT**
**WITH CAPITAL FINANCIAL SERVICES, INC.**

# TABLE OF CONTENTS

I.       Introduction .................................................................................................................. 1

II.      The Material Terms of the Settlement ........................................................................ 2

     A.      The Settlement Class .......................................................................................... 2

     B.      The Settlement Fund .......................................................................................... 2

           1.      The Insurance Policy Proceeds ................................................................ 3

           2.      The Surplus Capital Contribution ............................................................ 3

     C.      The Release of Settlement Class Members' Claims ........................................... 4

     D.      Capital Financial's Disclosure Obligations ....................................................... 4

     E.      Capital Financial's Cooperation Obligations ..................................................... 4

III.     The Settlement Class Should Be Certified Under Rule 23(b)(1)(B) .............................. 5

     A.      The Settlement Class Satisfies Rule 23(a) .......................................................... 5

           1.      The Class Is Too Numerous To Join All Members ................................... 5

           2.      There Are Common Questions of Law or Fact .......................................... 5

           3.      The Representative Plaintiff's Claims Are Typical ................................... 5

           4.      The Representative Plaintiff Adequately Represents the Class .................. 6

     B.      The Settlement Class Satisfies Rule 23(b)(1)(B) ................................................ 7

           1.      The Settlement Fund Is Limited and Inadequate to Pay the Claims
                of All Settlement Class Members ............................................................. 8

           2.      The Settlement Fund Will Be Devoted to the Settlement Class ................. 9

           3.      The Settlement Fund Will Be Equitably Distributed ............................... 10

IV.      Settlement Class Counsel Should Be Appointed Under Rule 23(g)(1) ........................ 10

V.       The Notice to the Settlement Class Complied With Rule 23 and Due Process ............... 11

VI.      The Settlement Is Fair, Adequate and Reasonable and Merits Final Approval ............... 12

A.  The Legal Standards for Final Settlement Approval ............................................ 12

B.  There Is No Fraud or Collusion Behind the Settlement........................................ 12

C.  Litigation of this Case Would Likely Be Complex, Expensive and
    Protracted ............................................................................................................ 13

D.  The Litigation Has Reached a Stage at Which the Parties Can Accurately
    Assess the Benefit of the Proposed Settlement to the Class ................................ 14

E.  Procedural Hurdles and Capital Financial's Limited Resources Reduce
    the Probability of Plaintiffs' Success on the Merits............................................. 14

F.  The Range of Possible Recovery and the Immediate Benefit Support
    Settlement ............................................................................................................ 15

G.  The Opinions of Class Counsel, Class Representatives and Absent
    Class Members...................................................................................................... 16

VII.  Conclusion ..................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Stewart Title Guaranty*
    246 F.R.D. 218 (E.D. Pa. 2007) ........................................................................ 7

*Ayers v. Thompson*
    358 F.3d 356 (5th Cir. 2004) .............................................................. 12, 14, 16

*Baker v. Washington Mutual Finance Group, LLC*
    193 Fed. Appx. 294 (5th Cir. 2006) .................................................................. 9

*Berthelot v. American Postal Workers Union, Local 185*
    2010 WL 4639050 (S.D. Tex. Nov. 8, 2010) .................................................... 7

*Cotton v. Hinton*
    559 F.2d 1326 (5th Cir. 1977) ................................................................... 12, 16

*DeHoyos v. Allstate Corp.*
    240 F.R.D. 269 (W.D. Tex. 2007) ........................................................... passim

*Eatmon v. Palisades Collection, LLC*
    2010 WL 1189571 (E.D. Tex. Mar. 5, 2010) .................................................... 5

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974) .......................................................................................... 11

*Feder v. Elec. Data Sys. Corp.*
    429 F.3d 125 (5th Cir. 2005) .......................................................................... 10

*Hamilton v. First Am. Title Ins. Co.*
    266 F.R.D. 153 (N.D. Tex. 2010) ..................................................................... 6

*In re Corrugated Container Antitrust Litig.*
    643 F.2d 195 (5th Cir. 1981) ............................................................... 6, 7, 12

*In re Dell Inc.*
    2010 WL 2371834 (W.D. Tex. June 11, 2010) .............................................. 15

*In re Katrina Canal Breaches Litig.*
    628 F.3d 185 (5th Cir. 2010) .......................................................................... 11

*In re the Reserve Fund Securities & Derivative Litig.*
    673 F. Supp. 2d 182 (S.D.N.Y. 2009) .............................................................. 4

*James v. City of Dallas*
    254 F.3d 551 (5th Cir. 2001) ...................................................................... 5, 6

*Klein v. O'Neal, Inc.*
    705 F. Supp. 2d 632 (N.D. Tex. 2010) ........................................... 12, 13, 15, 16

*Lightbourn v. County of El Paso*
    118 F.3d 421 (5th Cir.1997) ........................................................................... 5

*Maher v. Zapata Corp.*
    714 F.2d 436 (5th Cir. 1983) ........................................................................ 12

*Mehl v. Canadian Pacific Railway, Ltd.*
    227 F.R.D. 505 (D.N.D. 2005) ....................................................................... 7

*Mullen v. Treasure Chest Casino, LLC*
    186 F.3d 620 (5th Cir. 1999) .......................................................................... 5

*Ortiz v. Fibreboard Corp.*
    527 U.S. 815, 842 (1999).................................................................. 7, 8, 9, 10

*Parker v. Anderson*
    667 F.2d 1204 (5th Cir. 1982) ...................................................................... 12

*Quintanilla v. A&R Demolition Inc.*
    2007 WL 5166849 (S.D. Tex. May 7, 2007) ................................................. 13

*Reed v. General Motors Corp.*
    703 F.2d 170 (5th Cir. 1983) ........................................................... 12, 14, 16

*Schwartz v. TXU Corp.*
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005).................................... 13, 15, 16

*Stirman v. Exxon Corp.*
    280 F.3d 554 (5th Cir. 2002) .......................................................................... 6

*Vaughn v. American Honda Motor Co.*
    627 F. Supp. 2d 738 (E.D. Tex. 2007)............................................... 13, 15, 16

*Williams v. Nat'l Security Insurance Co.*
    237 F.R.D. 685 (M.D. Ala. 2006)................................................................... 9

*Young v. Katz*
    447 F.2d 431 (5th Cir. 1971) ........................................................................ 14

**Statutes**

17 C.F.R. § 240.15c3-1 .................................................................................................. 3

**Rules**

Fed. R. Civ. P. 23(c)(2) .............................................................................................. 11

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................................ 10

## TABLE OF RELEVANT EVIDENCE

| FINANCIAL DOCUMENTS | |
|---|---|
| 2008 Quarterly Reports | Plaintiffs' Supplemental Appendix 0035-0060 (Dkt. No. 170) |
| | Plaintiffs' Final Approval Appendix 0091-0118 (Dkt. No. 213) |
| 2009 Quarterly Reports | Plaintiffs' Supplemental Appendix 0061-0102 (Dkt. No. 170) |
| 2010 Quarterly Reports | Plaintiffs' Supplemental Appendix 0103-0127 (Dkt. No. 170) |
| | Plaintiffs' Final Approval Appendix 0119-0127 (Dkt. No. 213) |
| 2010 Monthly Reports (except for months in which quarterly reports were filed) | Plaintiffs' Final Approval Appendix 0128-0199 (Dkt. No. 213) |
| Audited Financials 2007 through 2009 | Plaintiffs' Supplemental Appendix 0002-0034 (Dkt. No. 170) |
| INSURANCE DOCUMENTS and ARBITRATION CLAIMS | |
| Arch Insurance Policy | Plaintiffs' Supplemental Appendix 0130-0163 (Dkt. No. 170) |
| Letter re Coverage | Plaintiffs' Supplemental Appendix 0164-0173 (Dkt. No. 170) |
| List of Arbitrations | Plaintiffs' Supplemental Appendix 0174-0176 (Dkt. No. 170) |
| SETTLEMENT DOCUMENTS and FIRM RESUMES | |
| Settlement Agreement | Plaintiffs' Final Approval Appendix 0005-0031 (Dkt. No. 213) |
| Class Notice | Plaintiffs' Final Approval Appendix 0081-0087 (Dkt. No. 213) |
| Firm Resume of Girard Gibbs LLP | Plaintiffs' Final Approval Appendix 0032-0050 (Dkt. No. 213) |
| Firm Resume of Zwerling, Schachter & Zwerling, LLP | Plaintiffs' Final Approval Appendix 0051-0074 (Dkt. No. 213) |

I.      **Introduction**

On January 25, 2011, the Court entered an order granting preliminary approval of the proposed limited fund settlement with Capital Financial Services, Inc.  The Court's order preliminarily certified a mandatory class for settlement purposes under Federal Rule of Civil Procedure 23(b)(1)(B), preliminarily approved the terms of the settlement as fair, reasonable and adequate, and approved notice to the Settlement Class.[1]  (Dkt. No. 192.)  The Court also preliminarily enjoined other proceedings by Settlement Class Members under the All Writs Act by order dated January 11, 2011.  (Dkt. No. 184.)  The Court has scheduled a Fairness Hearing for April 8, 2011 to consider final approval of the settlement.  (Dkt. No. 195.)

The settlement merits final approval.  It was negotiated at arms' length over a period of several months by experienced counsel who were sufficiently familiar with the relevant facts and law to assess the strengths and weakness of the case and the relative benefits of settlement over trial and any appeals.  The settlement will pay investors who purchased Provident Securities through Capital Financial on a *pro rata* basis, or as otherwise allocated by the Court.  Because of Capital Financial's limited assets, the settlement provides Settlement Class Members with certain benefits while continued litigation poses the considerable risk of no recovery at all.  Settlement Class Members were mailed the Court-approved notice and have until March 4 to comment on the settlement.

Representative Plaintiff Donald Stott therefore requests that the Court enter an order (1) certifying the Settlement Class for settlement purposes; (2) appointing Girard Gibbs LLP and Zwerling, Schachter & Zwerling, LLP as Settlement Class Counsel; (3) finding that the notice to Settlement Class Members complied with Rule 23 and due process; (4) determining that the terms of the settlement are fair, reasonable and adequate; (5) approving the plan of allocation of the Settlement Fund as fair and reasonable; (6) directing the parties to consummate the settlement according to its terms; and (7) dismissing the claims against Capital Financial with

---

[1] Capitalized terms in this memorandum have the same meaning as defined terms in the Settlement Agreement.  *See* Apx. 0005-0031.

prejudice and barring and permanently enjoining Settlement Class Members from prosecuting Settled Claims.

## II.     The Material Terms of the Settlement

### A.     The Settlement Class

The proposed settlement covers the following Settlement Class:  all Investors, their successors and assigns, who purchased Provident Securities from Settling Defendant.  The Settlement Class excludes:  the Defendants; any entity that is a parent or subsidiary of, or is controlled by any Defendant; the officers, directors, affiliates, legal representatives, predecessors, successors and assigns of any Defendant; all Registered Representatives; Provident Royalties, LLC and its affiliates; any entity that is a parent or subsidiary of, or is controlled by, any Provident Entity, and the officers, directors, affiliates, legal representatives, predecessors, successors and assigns of any Provident Entity.  Apx. 0009 (Settlement Agreement ¶ I.23).

### B.     The Settlement Fund

Capital Financial will pay the balance of the sole insurance policy available to pay claims arising from its sale of Provident Securities and an additional amount from its net surplus regulatory capital that has been determined by its regulator, the Financial Industry Regulatory Authority (FINRA), creating a settlement fund of approximately $1,520,000.  (Settlement Agreement, ¶¶ I.13, I.27, I.30, VIII.D.1-2).  The parties propose that the funds be allocated to Settlement Class Members on a *pro rata* basis in proportion to the amounts each Settlement Class Member invested in Provident Securities, net of any return on investment they received.[2] (*Id.* ¶ VIII.G.2(b).)  The Court will determine the appropriate deduction for payment of attorneys' fees, reimbursement of litigation expenses, and costs of settlement administration.  (*Id.* ¶¶ I.10, VIII.A.)

---

[2] As assignee of the claims of some of the investors who purchased Provident Securities through Capital Financial, the PR Liquidating Trustee will receive a portion of the Settlement Fund pursuant to the terms of the Settlement Agreement.

### 1. The Insurance Policy Proceeds

Capital Financial is insured under a "Securities Broker/Dealer and Registered Representative Errors and Omissions Policy" by Arch Specialty Insurance Company. Although the aggregate limits of the policy are $5,000,000 for all losses occurring during the policy period, the policy contains a sub-limit of $2,000,000 for all claims (including civil actions and arbitrations) arising out of the same facts, circumstances, events or transactions. Arch Specialty has taken the position that the $2,000,000 sub-limit applies to all claims arising in connection with Capital Financial's offer and sale of Provident Securities, including the claims asserted in this litigation and in numerous individual arbitrations. Moreover, the Arch Specialty policy is a "wasting" policy so all defense costs are deducted from the available coverage. Capital Financial and Arch Specialty have agreed to pay the balance of the policy, but not less than $1,400,000, to resolve all claims arising from Capital Financial's offer and sale of Provident Securities. To date, approximately $550,000 of the policy proceeds has been paid for defense costs. Supp. Apx. 0129, 0165-0173.[3]

### 2. The Surplus Capital Contribution

In addition, Capital Financial will make a contribution into the Settlement Fund from its net surplus regulatory capital. The solvency of broker-dealers like Capital Financial is regulated by FINRA. FINRA determined that Capital Financial could pay $200,000 from its surplus net capital without placing itself in imminent jeopardy of violating the SEC's "Net Capital Rule," which requires broker-dealers to maintain certain levels of their own liquid assets to prevent insolvency and protect their customers' assets. *See* 17 C.F.R. § 240.15c3-1. FINRA has allocated $120,000 to the payment of Provident claims and allocated the balance to Medical Capital. FINRA has advised the Settling Parties that Capital Financial's Provident contribution is to be distributed in accordance with the orders of this Court.

---

[3] References to "Supp. Apx." refer to Plaintiffs' Supplemental Appendix filed at Docket No. 170.

### C.      The Release of Settlement Class Members' Claims

Capital Financial, its current and prior officers and directors, its registered representatives and Arch Specialty (collectively, "Releasees") will be released from any and all liability as to Settled Claims.  The Settlement Agreement defines Settled Claims as "any and all Claims that could have been asserted by or on behalf of any Settlement Class Member against Settling Defendant, directly or indirectly, based upon, arising out of, or related to:  (i) an investment or interest in one or more of the Provident Securities, or (ii) the facts, transactions, events, occurrences, acts, or omissions that relate to any of the matters alleged in the Class Action." (Settlement Agreement ¶ I.21.)  The release will bar and permanently enjoin Settlement Class Members from prosecuting, commencing or continuing any and all Settled Claims they had or have against the Releasees in any forum.  (*Id.* ¶¶ VIII.C.3-5.)  The registered representatives may assert indemnification or contribution claims against Capital Financial and their release is therefore necessary to protect the limited fund and to provide a comprehensive resolution of the Settled Claims.  *See In re the Reserve Fund Securities & Derivative Litig.*, 673 F. Supp. 2d 182, 202-03 (S.D.N.Y. 2009).

### D.      Capital Financial's Disclosure Obligations

The Settlement is expressly conditioned upon full disclosure by Capital Financial and its Registered Representatives of their financial condition.  If, at any time, the financial information that any Releasee provided is found to be materially incorrect, Representative Plaintiff and the Settlement Class may ask the Court to set aside the release and reinstate their claims against that Releasee only.  Settlement Class Members would not be required to refund the Settlement Fund. (Settlement Agreement ¶ VIII.D.4.)

### E.      Capital Financial's Cooperation Obligations

As additional consideration, and as a condition of the settlement, Capital Financial has agreed to cooperate fully with Settlement Class Counsel in the prosecution of claims against the Non-Settling Defendants.  (*Id.* ¶ VIII.D.7.)

4

### III.    The Settlement Class Should Be Certified Under Rule 23(b)(1)(B)

In granting preliminary approval of the settlement, the Court preliminarily certified the Settlement Class under Rule 23(b)(1)(B).  It is now appropriate for the Court to certify the Settlement Class for settlement purposes.[4]

### A.    The Settlement Class Satisfies Rule 23(a)

### 1.    The Class Is Too Numerous To Join All Members

There are at least 650 Settlement Class Members, which is more than sufficient to satisfy the numerosity requirement.  *See, e.g., Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding a class of 100 to 150 members satisfies numerosity and any more than 40 members should raise a presumption that joinder is impracticable).  In addition, Settlement Class Members are too geographically dispersed to be easily joined into one action.  *See, e.g., Eatmon v. Palisades Collection, LLC*, No. 2:08-CV-306-DF-CE, 2010 WL 1189571, at *4 (E.D. Tex. Mar. 5, 2010).

### 2.    There Are Common Questions of Law or Fact

The commonality requirement is satisfied because "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir.1997).  Issues common to all Settlement Class Members include:  whether Capital Financial sold Provident Securities by means of untrue statements or omissions of material fact; whether Capital Financial owed a fiduciary duty to Settlement Class Members; whether Capital Financial breached its fiduciary duty; and whether Settlement Class Members are entitled to rescission or damages.

### 3.    The Representative Plaintiff's Claims Are Typical

The typicality requirement is satisfied because the Representative Plaintiff's claims arise from the same course of conduct as Settlement Class Members' claims.  *See James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir. 2001) (typicality requires only that "the class representative's

---

[4] The briefing and exhibits in support of certification of a Rule 23(b)(3) class, filed on September 17, 2010, also support certification for settlement purposes.  (Dkt. No. 118-130.)

claims have the same essential characteristics of those of the putative class."). "[T]he test for typicality is not demanding" and "does not require a complete identity of claims." *Stirman v. Exxon Corp.,* 280 F.3d 554, 562 (5th Cir. 2002) (quoting *James*, 254 F.3d at 571). "The prerequisite in the settlement context requires 'proof that the interests of the class representatives and the class are commonly held for purposes of receiving similar or overlapping benefits from a settlement.'" *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 281 (W.D. Tex. 2007) (citation omitted). The Representative Plaintiff does not assert claims unique to himself. Like all Settlement Class Members, his claims arise out of Capital Financial's sale of Provident Securities. Because Capital Financial's conduct affected all Settlement Class Members in the same general fashion, and the Representative Plaintiff's interests are aligned with those of the entire class, the typicality requirement is satisfied. *See id.* at 282.

### 4.      The Representative Plaintiff Adequately Represents the Class

The adequacy requirement is met because "(1) the named plaintiffs' counsel will prosecute the action zealously and competently; (2) the named plaintiffs possess a sufficient level of knowledge about the litigation to be capable of taking an active role in and exerting control over the prosecution of the litigation; and (3) there are no conflicts of interest between the named plaintiffs and the absent class members." *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 163-64 (N.D. Tex. 2010). The Representative Plaintiff has no conflicts with Settlement Class Members. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (holding that as long as "all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purpose."). He has a sufficient level of knowledge about the litigation and has taken an active role in overseeing the litigation, including the settlement. Apx. 0075-0077 (Stott Decl., ¶¶ 4-8). He has also retained counsel qualified to pursue the litigation who have zealously and competently prosecuted the case. Apx. 0032-0074 (Girard Decl., Exs. 2 & 3).

At the preliminary approval stage, some objectors pointed to the fact that Girard Gibbs

and Zwerling Schachter also represent Medical Capital investors in a class action against Capital Financial as a potential conflict of interest.  But "[m]ost courts have held that class counsel may represent more than one class against the same set of defendants in large part because of the procedural safeguards in place to protect the proposed class; i.e., the court must approve the proposed settlement."  *Mehl v. Canadian Pacific Railway, Ltd.*, 227 F.R.D. 505, 515 (D.N.D. 2005).  This Court's close oversight of the Provident litigation, the recent transfer of the Medical Capital litigation to this Court for settlement purposes, and the Court's review and approval of the proposed settlement ensure that the interests of both classes are protected.  In fact, the firms' representation of both Provident and Medical Capital investors benefits both proposed classes because "logic dictates that one set of negotiators, with the authority to release defendants from all claims, would be in a better bargaining position than negotiators with authority to compromise only part of the action."  *In re Corrugated Container*, 643 F.2d at 208; *see also Allen v. Stewart Title Guaranty,* 246 F.R.D. 218, 219 (E.D. Pa. 2007) (finding that permitting attorneys to represent similar classes in separate courts against the same defendant would "facilitate cooperation and economic use of judicial resources").

### B.      The Settlement Class Satisfies Rule 23(b)(1)(B)

Rule 23(b)(1)(B) permits certification of a mandatory class when:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of … (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Rule 23(b)(1)(B) is used to certify classes when there is a limited fund available to satisfy all claims against a company and individual actions would deplete the fund and deprive class members of any recovery.  *See Ortiz v. Fibreboard Corp*., 527 U.S. 815, 842 (1999); *Berthelot v. American Postal Workers Union, Local 185*, No. H-10-0018, 2010 WL 4639050, at *6 (S.D. Tex. Nov. 8, 2010) ("Rule 23(b)(1)(B) focuses on whether individual actions would prejudice other class members …, e.g., where individuals seek compensation from a single, common fund

insufficient to settle all claims.").

In *Ortiz*, the Supreme Court held that cases in which mandatory class treatment is appropriate on a limited fund basis have three "presumptively necessary" characteristics. First, the total amount of the fund and the claims against that fund, "set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims." *Ortiz*, 527 U.S. at 838. "Second, the whole of the inadequate fund [will] be devoted to the overwhelming claims." *Id*. at 839. And third, "the claimants identified by [the] common theory of recovery [will be] treated equitably among themselves." *Id*. All three requirements are satisfied here.

### 1. The Settlement Fund Is Limited and Inadequate to Pay the Claims of All Settlement Class Members

Capital Financial has produced insurance documents and financial information that show the company has insufficient assets to pay all claims arising from its sale of Provident securities. In *Ortiz*, the Supreme Court said that insurance assets "would obviously be 'limited' in the traditional sense … if the policies provided aggregate limits falling short of [the total of demonstrable claims]." *Ortiz*, 527 U.S. at 851. Capital Financial's insurance policy proceeds are "limited in the traditional sense" because only $2 million is available for claims arising out of the sale of Provident securities, and the proceeds are reduced by any amount Capital Financial spends on defense costs. Supp. Apx. 0129, 0165-0173. Financial documents produced by Capital Financial and filed with the Court confirm that Capital Financial has limited funds available to pay investors' claims. Apx. 0091-0199; Supp. Apx. 0002-0127. The Court questioned Capital Financial's President and Chief Compliance Officer, John Carlson, about many of these financial documents during a telephonic hearing on January 11, 2011. (Docket No. 188.) Capital Financial's registered representatives, and directors and officers who have been named in FINRA arbitrations have produced their financial information as well. Apx. 0203-0433.

The total fund Capital Financial has available to pay the claims of Provident investors is $1,520,000, which is nowhere close to the amount needed to satisfy the claims of all investors.

Capital Financial sold $65 million in Provident Securities.  Investors who have commenced

FINRA arbitrations against Capital Financial are seeking a total of $11,830,000 in damages.

Supp. Apx. 0174-0176.  Ongoing defense costs and an award in just one or two of the

arbitrations could completely deplete Capital Financial's assets in a matter of months, leaving

most Provident investors with no recovery at all.  "The prosecution of separate actions against

[Capital Financial] unquestionably creates a risk of adjudications that, as a practical matter,

would be dispositive of the interests of class members not parties to the adjudications or would

substantially impair or impede their ability to protect their interests."  *Williams v. Nat'l Security*

*Insurance Co.*, 237 F.R.D. 685, 693 (M.D. Ala. 2006); *see also Baker v. Washington Mutual*

*Finance Group, LLC*, 193 Fed. Appx. 294, 297 (5th Cir. 2006) (affirming the district court's

approval of a Rule 23(b)(1)(B) settlement over the objections of intervenors and class members

that the plaintiffs had not established the inadequacy of the fund to pay all claims).

### 2.      The Settlement Fund Will Be Devoted to the Settlement Class

The second *Ortiz* factor requires that the limited settlement fund be devoted to the claims

of class members to ensure that "the class as a whole was given the best deal; [and that] they did

not give defendant a better deal than seriatim litigation would have produced."  *Ortiz*, 527 U.S. at

839.  Since the Settlement Fund consists of all available insurance proceeds and funds that

Capital Financial has available to pay Provident investors without violating the SEC's Net

Capital Rule, this requirement is satisfied.  In addition, the entirety of the Settlement Fund will

be distributed to Settlement Class Members, less only settlement administration costs, Defense

Costs (attorneys' fees and costs necessary for the defense of claims filed prior to final approval,

but no more than $50,000), and any amount the Court approves as payment for Plaintiffs' Class

Counsel's attorneys fees and expenses.[5]

---

[5] Settlement Class Counsel are applying separately for an award of fees in the amount of 25% of
the settlement fund and $75,000 in partial reimbursement of expenses they have incurred.  The
application also asks the Court to set aside $15,000 from the settlement fund to pay reasonable
administrative costs related to notice, responding to class member calls to the toll-free number
and distributing the settlement fund.

### 3.     The Settlement Fund Will Be Equitably Distributed

The third *Ortiz* factor, requiring equitable treatment, involves two issues: "the inclusiveness of the class and the fairness of distributions to those within it."  *Ortiz*, 527 U.S. at 854.  The Settlement Class includes all investors in Provident Securities who purchased through Capital Financial, and will be distributed to the investors *pro rata* based on the amount of their investments (net of any return on investment received), or as otherwise ordered by the Court. The defendants and their affiliates, employees and registered representatives are excluded from the class, as are Provident and its affiliates and employees.  These types of exclusions are a common litigation practice necessary to avoid conflicts of interest among class members that would otherwise preclude certification.  *See Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 128-29 (5th Cir. 2005) (affirming certification of a class of investors with comparable exclusions). While there are investors who may have claims against Capital Financial arising from investments in securities other than Provident, there are still insurance proceeds left to resolve those claims.  And FINRA has allocated a separate amount of Capital Financial's surplus capital to pay claims of investors who purchased Medical Capital securities through Capital Financial.

## IV.     Settlement Class Counsel Should Be Appointed Under Rule 23(g)(1)

On January 25, 2011, the Court preliminary appointed Girard Gibbs and Zwerling, Schachter as Settlement Class Counsel.  (Dkt. No. 192)  In making this appointment, the Court must consider counsel's:  (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  Both firms have significant experience in litigating and settling class actions and securities cases and, over the last year and half, they have demonstrated their knowledge of the applicable law, committed substantial resources, conscientiously and vigorously litigated the claims, and skillfully steered the claims against Capital Financial to a resolution that benefits all Settlement Class Members.  Apx. 0032-0050 (Girard Decl., Exs. 2 & 3).  In connection with final approval of the settlement, the Court should appoint Girard Gibbs

and Zwerling Schachter to serve as Settlement Class Counsel.

**V.      The Notice to the Settlement Class Complied With Rule 23 and Due Process**

The notice to the Settlement Class comported with the Federal Rules of Civil Procedure and due process.  Settlement Class Members received "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974) (due process requires the best notice practicable).  Settlement Class Counsel obtained a list of all Settlement Class Members from the Provident Chapter 11 Trustee, who retrieved the information from Provident's business records.  Apx. 0200-0202.  The names and addresses were provided to the settlement administrator, who sent 309 copies of the Court-approved notice by first-class mail on February 2, 2011.  The PR Liquidating Trustee received notice on behalf of all Provident investors who assigned their claims, and notice was also sent to FINRA's regional office in Dallas.  Apx. 0078-0080.

In the notice, Settlement Class Members were "given information reasonably necessary for them to make a decision whether to object to the settlement."  *In re Katrina Canal Breaches Litig.*, 628 F.3d 185,197 (5th Cir. 2010).  The notice stated in plain, easily understood language (1) the nature of the action; (2) the definition of the Settlement Class; (3) the class claims and issues; (4) the general terms of the settlement, including the scope of the release and the maximum amount of attorneys' fees and expenses to be requested; (5) that class members could appear through an attorney at their own expense if they wished; (6) that class members may object to the settlement but cannot exclude themselves; (7) the timing and procedure for objecting to the settlement; and (8) the effect of the Court's final approval order.  The notice also provided the addresses of Settlement Class Counsel and a toll-free number for further information.  The toll-free number is accessible twenty-four hours a day, seven days a week.  Apx. 0086.

The notice satisfied its "essential purpose" of "fairly appris[ing] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them" and

providing them "with sufficient information for them to make a 'rational decision whether they should intervene in the settlement approval procedure.'"  *Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) (citations omitted).

## VI.     The Settlement Is Fair, Adequate and Reasonable and Merits Final Approval

### A.     The Legal Standards for Final Settlement Approval

A court should approve a class action settlement if it is "fair, adequate and reasonable." *Parker v. Anderson*, 667 F.2d 1204, 1208-09 (5th Cir. 1982).  Courts consider six factors in making this determination:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) (quoting *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).  A court's assessment must be guided by "the strong judicial policy favoring settlement of disputes."  *In re Corrugated Container*, 643 F.2d at 207; *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").  "Moreover, the public interest in settlement is best served when a settlement binds all parties without allowing for individual opt outs." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 650 (N.D. Tex. 2010).

### B.     There Is No Fraud or Collusion Behind the Settlement

This proposed settlement is the product of arm's-length negotiations by experienced counsel over several months that included a two-day session with a mediator and numerous subsequent telephonic discussions.  Apx. at 0002-0003 (Girard Decl., ¶¶ 5-7).  FINRA was involved in the process, and determined the amount that Capital Financial could pay without violating its minimum capital requirements.  Settlements achieved through arms'-length negotiations and with the assistance of an experienced mediator, as in this case, are entitled to a presumption of fairness. *See, e.g., DeHoyos*, 240 F.R.D. at 287 (numerous negotiating sessions,

both in person and by telephone, by counsel with significant class action experience); *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005) (lengthy negotiations that involved highly regarded mediators and were "undertaken at arm's length by counsel on both sides who have substantial experience and expertise in representing parties in securities class actions"); *Quintanilla v. A&R Demolition Inc.*, Civil Action No. H-04-1965, 2007 WL 5166849, at *4 (S.D. Tex. May 7, 2007) (negotiations by experienced counsel at arm's-length and mediation with a neutral).

The absence of collusion is also shown by the terms of the settlement itself. Capital Financial has agreed to pay all available insurance proceeds and an additional contribution from its available surplus net capital. The Settlement Fund will be distributed *pro rata* to Settlement Class Members. The negotiations resulted in a settlement that is fair to all class members and does not unjustly benefit any class members over others. *See Vaughn v. American Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007) ("There was no bias, collusion, or coercion in favor of any party or group of class members. This fact weighs heavily in favor of approval.").

### C.     Litigation of this Case Would Likely Be Complex, Expensive and Protracted

In considering this factor, "it is important to be mindful of 'the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.' … Consequently, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *DeHoyos*, 240 F.R.D. at 291 (citation omitted); *see also Klein*, 705 F. Supp. 2d at 653 ("Approval of the Settlement Agreement provides relief while simultaneously freeing class members and defendants alike from the burdens and uncertainty inherent in additional litigation."). The proposed settlement avoids the cost, delay and risk of continuing with the litigation and provides Settlement Class Members with a certain recovery. Because Capital Financial's limited assets would be drained by any ongoing defense of the litigation and numerous arbitrations, it is unlikely that there would be any funds left to compensate investors if the case were prosecuted to an outcome on the merits. This is a case in which "the bird in the

13

hand" is definitively the best option for achieving a resolution that is fair to all Settlement Class Members.

**D.      The Litigation Has Reached a Stage at Which the Parties Can Accurately Assess the Benefit of the Proposed Settlement to the Class**

This factor evaluates whether "the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Ayers*, 358 F.3d at 369.  "The Court should consider all information which has been available to the parties." *DeHoyos*, 240 F.R.D. at 292.  Settlement Class Counsel obtained and reviewed more than 1,150,000 pages of documents produced by the defendants, including more than 40,000 pages from Capital Financial, as well as 3,200,000 pages of documents produced by third parties. Settlement Class Counsel deposed Chapter 11 Trustee Dennis Roossien and Provident's Chief Restructuring Officer David N. Phelps.  The defendants deposed the named plaintiffs, including Representative Plaintiff Donald Stott.  In addition, as part of the settlement process, Capital Financial and its registered representatives have produced information about their finances. Settlement Class Counsel have sufficient information to determine that "the proposed settlement is fair, adequate and reasonable and, more importantly, to plaintiffs' ultimate benefit." *Id*.

**E.      Procedural Hurdles and Capital Financial's Limited Resources Reduce the Probability of Plaintiffs' Success on the Merits**

"A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case." *Reed*, 703 F.2d at 172.  "The court, however, must not try the case in the settlement hearings because '[t]he very purpose of the compromise is to avoid the delay and expense of such a trial.'" *Id.* (quoting *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971)).  "The proposed settlement is not required to 'achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation.'" *DeHoyos*, 240 F.R.D. at 286 (citation omitted).

While the plaintiffs are confident of the merits of their claims, litigation of this case, like all class action cases, would require plaintiffs to overcome procedural hurdles that could reduce

the probability of success.  The Court granted in part the defendants' motion to dismiss and has not yet ruled on the sufficiency of the plaintiffs' amended complaint.  *See Schwartz*, 2005 WL 3148350, at *18 ("Even assuming some parts of the Complaint were found to state a claim, Defendants have identified in their motions to dismiss what they believe are substantial legal and factual defenses that they believe ultimately would prevail—either on a motion for summary judgment or at trial.").  Class certification can be challenging, particularly when choice-of-law issues are involved.  *See, e.g., DeHoyos*, 240 F.R.D. at 290 (citing cases).  And "securities litigation on the whole is 'notoriously difficult and unpredictable.'"  *In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *7 (W.D. Tex. June 11, 2010) (citation omitted).

But the most critical fact for evaluating this settlement is that even if plaintiffs succeeded on the merits, there will be no recovery for all Capital Financial investors because the company's limited assets will be depleted by defense costs and arbitration awards.  The volume of claims arising from the sale of Provident securities and other private placement securities has already driven two broker-dealers out of business.  GunnAllen Financial Inc. filed a voluntary petition for Chapter 11 bankruptcy protection on April 26, 2010, and QA3 Financial Corp. ceased operations on February 11, 2011.[6]  This settlement avoids that risk and provides "immediate and automatic benefit to the class."  *American Honda*, 627 F. Supp. 2d at 747.

F.     **The Range of Possible Recovery and the Immediate Benefit Support Settlement**

"A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances."  *Klein*, 705 F. Supp. 2d at 649.  Settling Provident investors' claims against Capital Financial now achieves the maximum possible recovery for class members.  Further litigation will only deplete the limited fund, reducing—and almost certainly eliminating—any possible recovery for most investors.  The immediate benefit that Settlement Class Members will

---

[6] *See* Bruce Kelly, "B-D down: QA3 to close up shop next week," *Investment News*, Feb. 4, 2011 (http://www.investmentnews.com/article/20110204/FREE/110209926).

receive far "outweigh[s] the risk of an uncertain, potentially protracted and costly litigation" that is likely to result in no benefit at all.  *DeHoyos*, 240 F.R.D. at 291.

> **G.  The Opinions of Class Counsel, Class Representatives and Absent Class Members**

Courts give substantial weight to the opinion of the attorneys who prosecuted the case and negotiated the settlement.  *See Reed*, 703 F.2d at 175 ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid.  Lawyers know their strengths and they know where the bones are buried."); *see also Klein*, 705 F. Supp. 2d at 649 ("The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight.").  "In a case like this one, where the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically 'defer to the judgment of experienced trial counsel who has evaluated the strength of his case.'"  *Schwartz*, 2005 WL 3148350, at *21 (citation omitted); *see also American Honda*, 627 F. Supp. 2d at 748 ("The counsel for the parties in this case are experienced in class action litigations, and their opinion that the settlement should be approved and is fair to the class is entitled to weight.").

Settlement Class Counsel strongly support the settlement and believe it is in the best interest of all Settlement Class Members.  Proceeding in any other manner risks leaving the majority of class members with no recovery at all.  Apx. 0003 (Girard Decl., ¶ 10.).  Representative Plaintiff Donald Stott also supports the settlement.  Apx. 0076-0077 (Stott Decl., ¶¶ 6-8).  The Court should also consider the opinions of absent class members, who have until March 4 to object to or comment on the settlement.  The Fifth Circuit, however, is "clear that a settlement can be approved despite opposition from class members, including the named plaintiff."  *Ayers*, 358 F.3d at 373; *see also Reed*, 703 F.2d at 174-75 (affirming the district court's approval of a settlement despite "the objections of twenty-three of twenty-seven named plaintiffs and nearly forty percent of the 1,517 member class"); *Cotton*, 559 F.2d at 1331 ("A settlement can be fair notwithstanding a large number of class members who oppose it.").

## VII.    Conclusion

The requirements for class certification are satisfied and the proposed settlement is fair, reasonable and adequate.  Representative Plaintiff Donald Stott therefore requests that the Court grant his motion for final approval of the settlement and enter the Proposed Order of Final Settlement Approval and Judgment.


Dated: February 18, 2011                          Respectfully submitted,

**GIRARD GIBBS LLP**

By:    /s/  Daniel C. Girard

Daniel C. Girard
Amanda M. Steiner
Dena C. Sharp
601 California Street, 14th Floor
San Francisco, CA  94108
Tel:  (415) 981-4800

Susan Salvetti
Sona R. Shah
**ZWERLING, SCHACHTER &**
   **ZWERLING, LLP**
41 Madison Avenue
New York, NY  10010
Tel:  (212) 223-3900


Dan Drachler
**ZWERLING, SCHACHTER &**
   **ZWERLING, LLP**
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Tel:  (206) 223-2053

*Settlement Class Counsel*


Lewis T. LeClair
**McKOOL SMITH P.C.**
State Bar No. 12072500
300 Crescent Court, Suite 1500

17

Dallas TX 75201
Tel: 214.978.4984
Fax: 214.978.4044

*Liaison Plaintiffs' Counsel*


Ari H. Jaffe
**KOHRMAN JACKSON & KRANTZ, PLL**
One Cleveland Center, 20th Floor
Cleveland, OH  44114
Tel:  (216) 696-8700

David M. Foster
**DAVID M. FOSTER PC**
30833 Northwestern Highway
Suite 209
Farmington Hills, MI 48334
Tel:  (248) 855-0940

*Plaintiffs' Counsel*

18