THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| | : | |
| BILLITTERI v. SECURITIES AMERICA, | : | 3:09-cv-01568-F |
| INC., *et al.* (*Provident Royalties Litigation*) | : | AND RELATED CASES |
| | : | |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| ALL ACTIONS | : | |
| | : | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PARTIAL CLASS
ACTION SETTLEMENT WITH CAPITAL FINANCIAL SERVICES, INC.
AND IN RESPONSE TO THE OBJECTIONS TO THE SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

ARGUMENT ......................................................................................................................3

I.    THE REQUIREMENTS OF RULE 23(b)(1)(B) ARE SATISFIED ................................3

    A.    This Case Is Not Like The Mass Tort Cases In Which Mandatory  Settlement Classes Have Been Disapproved .........................................................................3

    B.    The Evidence Confirms that the Available Funds Are Inadequate  to Pay All of the Claims ...........................................................................................................5

           1.    A Limited Fund Settlement Does Not Have to Drive the Defendant into Bankruptcy or Violation of the SEC's Net Capital Rule ...............................9

           2.    The "Releasees" Are Properly Released in this Settlement .........................12

           3.    The Insurance Proceeds Are Established at Their Upper Limit ...................14

    C.    The Whole of the Fund Will Be Devoted to the Overwhelming Claims and a *Pro Rata* Distribution Will Treat Class Members Equitably ............................16

II.   THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE and MERITS FINAL APPROVAL ...................................................................................................18

III.  THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED........................................19

    A.    The Representative Plaintiff's Claims Are Typical.............................................19

    B.    The Adequacy Requirement Is Satisfied.............................................................20

IV.   THIS COURT MAY, AND SHOULD, ENJOIN ALL LITIGATIONS AND ARBITRATIONS AGAINST CAPITAL FINANCIAL TO IMPLEMENT THE SETTLEMENT...............................................................................................................23

V.    SETTLEMENT DOES NOT INTERFERE WITH THE BANKRUPTCY PLAN..........27

VI.   THE FEDERAL ARBITRATION ACT DOES NOT MANDATE A STAY OF THESE PROCEEDINGS ..............................................................................................27

VII.  THE OBJECTORS DO NOT HAVE A DUE PROCESS RIGHT TO OPT OUT OF A MANDATORY CLASS SETTLEMENT ............................................................29

VIII. THE OBJECTORS' REMAINING OBJECTIONS SHOULD BE OVERRULED.........31

CONCLUSION ..................................................................................................................32

## TABLE OF AUTHORITIES

**Cases**

*Ameritrust Nat'l Bank v. Domore Corp.,*
    147 B.R. 473 (N.D. Ind. 1992) ................................................................................. 27

*Ayers v. Thompson,*
    358 F.3d 356 (5th Cir. 2004) ................................................................................. 18

*Baker v. Washington Mut. Fin. Group, LLC,*
    193 Fed. Appx. 294 (5th Cir. 2006) ................................................................. 8, 9, 17

*Bank of America, N.A. v. UMB Fin. Servs., Inc.,*
    618 F.3d 906 (8th Cir. 2010) ................................................................................. 28

*Bank One Acceptance Corp. v. Hill,*
    367 F.3d 426 (5th Cir. 2004) ................................................................................. 26

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ............................................................................................. 16

*C.D. Anderson & Co. v. Lemos,*
    832 F.2d 1097 (9th Cir. 1987) ............................................................................... 25

*California Fina Group, Inc. v. Herrin,*
    379 F.3d 311 (5th Cir. 2004) ................................................................................. 25

*Continental Casualty Co. v. Orr,*
    No. 8:07CV292, 2008 WL 2704236 (D. Neb. July 3, 2008) ................................... 15

*Cooper v. Miller Johnson Steichen Kinnard, Inc.,*
    No. Civ. 02-1236 (RHK/AJB), 2003 WL 1955169 (D. Minn. Apr. 21, 2003) ........... 11

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ........................................................................... 18, 30

*County Sec. Agency v. Ohio Dept. of Commerce,*
    296 F.3d 477 (6th Cir. 2002) ................................................................................. 31

*De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP,*
    269 F.R.D. 445 (E.D. Pa. 2010) ............................................................................. 19

*Dean Witter Reynolds, Inc. v. Byrd,*
    470 U.S. 213 (1985) ......................................................................................... 25, 26

*DeHoyos v. Allstate Corp.,*
    240 F.R.D 269 (W.D. Tex. 2007) ........................................................................... 19

*Demint v. NationsBank Corp.*,
208 F.R.D. 639 (M.D. Fla. 2002) ................................................................... 24

*Dow Agrosciences, LLC. v. Bates*,
No. Civ. A. 5:01-CV-331-C, 2003 WL 22660741 (N.D. Tex. Oct. 14, 2003) ...................... 31

*French v. First Union Securities, Inc.*,
209 F. Supp. 2d 818 (M.D. Tenn. 2002) .............................................................. 28

*Ganguly v. Charles Schwab & Co.*,
No. 03 Civ. 6454, 2004 WL 213016 (S.D.N.Y. Feb. 4, 2004) .............................................. 25

*Hum v. Dericks*,
162 F.R.D. 628 (D. Haw. 1995) ....................................................................... 8

*In re Baldwin-United Corp.*,
770 F.2d 328 (2d Cir. 1985) ...................................................................... 24, 25

*In re Bendectin Prods. Liab. Litig.*,
749 F.2d 300 (6th Cir. 1984) ................................................................... 4, 5, 8

*In re Cardinal Health, Inc. ERISA Litig.*,
225 F.R.D. 552 (S.D. Ohio 2005) .................................................................... 22

*In re Complaint of River City Towing Services, Inc.*,
204 F.R.D. 94 (E.D. La. 2001) ....................................................................... 4

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ....................................................................... 20

*In re Dennis Greenman Sec. Litig.*,
829 F.2d 1539 (11th Cir. 1987) ....................................................................... 8

*In re Joint Eastern & Southern District Asbestos Litig.*,
14 F.3d 726 (2d Cir. 1993) ......................................................................... 4

*In re Katrina Canal Breaches Litig.*,
628 F.3d 185 (5th Cir. 2010) ........................................................................ 4

*In re Linerboard Antitrust Litig.*,
292 F. Supp. 2d 631 (E.D. Pa. 2003) ............................................................... 13

*In re Linerboard Antitrust Litig.*,
MDL No. 1261, 2008 WL 4461914 (E.D. Pa. Oct. 3, 2008) .............................................. 25

*In re March*,
988 F.2d 498 (4th Cir. 1993) ....................................................................... 24

*In re Packaged Ice Antitrust Litig.*,
  No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011).........................................12

*In re PaineWebber Ltd. P'ships Litig.*,
  No. 94CIV 8547 SHS, 1996 WL 374162 (S.D.N.Y. July 1, 1996).........................................24

*In re Schimmelpenninck*,
  183 F.3d 347 (5th Cir. 1999)...........................................................................................25

*In re Simon II Litig.*,
  407 F.3d 125 (2d Cir. 2005)...........................................................................................4, 8

*In re Telectronics Pacing Sys., Inc.*,
  221 F.3d 873 (6th Cir. 2000)............................................................................4, 8, 11, 13

*In re The Reserve Fund Sec. & Derivative Litig.*,
  673 F. Supp. 2d 182 (S.D.N.Y. 2009).........................................................................13, 26

*In re Trans Union Corp. Privacy Litig.*,
  211 F.R.D. 328 (N.D. Ill. 2002).........................................................................................8

*In re Villarreal*,
  413 B.R. 633 (Bankr. S.D. Tex. 2009)................................................................................27

*In re Xonics Photochemical, Inc.*,
  841 F.2d 198 (7th Cir. 1998)...........................................................................................25

*Jackshaw Pontiac, Inc. v. Cleveland Press Publ'g Co.*,
  102 F.R.D. 183 (N.D. Ohio 1984)......................................................................................22

*James v. City of Dallas*,
  254 F.3d 551 (5th Cir. 2001)............................................................................................19

*Kayes v. Pacific Lumber Co.*,
  51 F.3d 1449 (9th Cir. 1995)...........................................................................................22

*Kidder, Peabody & Co. v. Zinsmeyer Trusts P'ship*,
  41 F.3d 861 (2d Cir. 1994).............................................................................................25

*Kincade v. General Tire & Rubber Co.*,
  635 F.2d 501 (5th Cir. 1981)...........................................................................................30

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010)...............................................................................18

*Klein v. O'Neal, Inc.*,
  No. 7:03-CV-102-D, 2006 WL 325766 (N.D. Tex. Feb. 13, 2006)........................................4, 8

*Kuper v. Quantum Chem. Corp.*,
    145 F.R.D. 80 (S.D. Ohio 1992) ............................................................... 22

*Kurczi v. Eli Lilly & Co.*,
    160 F.R.D. 667 (N.D. Ohio 1995) ............................................................ 22

*Liles v. Del Campo*,
    350 F. 3d 742 (8th Cir. 2003) ............................................................ 24, 25

*Longden v. Sunderman*,
    123 F.R.D. 547 (N.D. Tex. 1988) ............................................................ 19

*Mehl v. Canadian Pac. Ry., Ltd.*,
    227 F.R.D. 505 (D.N.D. 2005) ............................................................... 21

*Moore v. Margiotta*,
    581 F. Supp. 649 (E.D.N.Y. 1984) .......................................................... 22

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ................................................................................... 25

*Oppenheimer & Co. v. Neidhardt*,
    56 F.3d 352 (2d Cir. 1995) ..................................................................... 25

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ........................................................................ *passim*

*Krim v. pcOrder.com*,
    210 F.R.D. 581 (W.D. Tex. 2002) ........................................................... 22

*Pharmaceutical Research & Mfrs. of Am. v. Thompson*,
    259 F. Supp. 2d 39 (D.D.C. 2003) .......................................................... 31

*Reed v. General Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) .................................................................. 18

*Republic Ins. Co. v. Paico Receivables, LLC*,
    383 F.3d 341 (5th Cir. 2004) .................................................................. 25

*Royer v. Dow Corning Corp.*,
    No. 94-213-M, 1995 U.S. Dist. LEXIS 16259 (D.N.H. Nov. 1, 1995) ................. 27

*S.E.C. v. Forex Asset Mgmt. LLC*,
    242 F.3d 325 (5th Cir. 2001) .................................................................. 17

*S.E.C. v. Wealth Mgmt. LLC*,
    628 F.3d 323 (7th Cir. 2010) .................................................................. 17

*Shaw v. Toshiba America Info. Sys., Inc.,*
    91 F. Supp. 2d 942 (E.D. Tex. 2000) ....................................................................... 17

*Smith v. Tower Loan of Mississippi, Inc.,*
    216 F.R.D. 338 (S.D. Miss. 2003) ........................................................................... 30

*Southland Corp. v. Keating,*
    465 U.S. 1 (1984) ................................................................................................... 26

*Stirman v. Exxon Corp.,*
    280 F.3d 554 (5th Cir. 2002) .................................................................................. 19

*Sullivan v. Chase Inv. Servs. of Boston, Inc.,*
    79 F.R.D. 246 (N.D. Cal. 1978) .............................................................................. 22

*Executone Info. Sys., Inc. v. Davis,*
    26 F.3d 1314 (5th Cir. 1994) .................................................................................. 25

*Tedesco v. Mishkin,*
    689 F. Supp. 1327 (S.D.N.Y. 1988) ........................................................................ 22

*Tittle v. Enron Corp.,*
    463 F.3d 410 (5th Cir. 2006) .................................................................................. 28

*United States v. International Brotherhood of Teamsters,*
    266 F.3d 45 (2d Cir. 2001) ..................................................................................... 25

*United States v. New York Tel. Co.,*
    434 U.S. 159 (1977) ............................................................................................... 24

*Plyler v. v. BDO Seidman, L.L.P.,*
    No. 042145 B/AN, 2004 WL 5039849 (W.D. Tenn. Dec. 29, 2004) ...................... 28

*Victor v. Dean Witter Reynolds, Inc.,*
    606 So.2d 681 (Fla. Dist. Ct. App. 1992) ............................................................... 25

*Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.,*
    No. 08 Civ-5655 (LTS), 2010 WL 1222026 (S.D.N.Y. Mar. 29, 2010) .................. 26

*White v. National Football League,*
    822 F. Supp. 1389 (D. Minn. 1993) ........................................................................ 21

*Williams v. National Security Ins. Co.,*
    237 F.R.D. 685 (M.D. Ala. 2006) ................................................................... *passim*

**Statutes**

9 U.S.C. § 3 ........................................................................................................... 27, 28

9 U.S.C. § 4 .............................................................................................................. 28

28 U.S.C. § 1651(a) ............................................................................................... 23, 27

28 U.S.C. § 2283 ...................................................................................................... 26

TEX. REV. CIV. STAT. ANN. art. 581-33F (West Supp. 2009) ....................................... 14

**Rules**

FED. R. CIV. P. 23(b)(1)(B) ..................................................................................... *passim*

FED. R. CIV. P. 23(e)(2) ............................................................................................. 30

**Regulations**

17 C.F.R. § 240.15c3-1 ............................................................................................... 7

**Other**

6 WILLIAM B. RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 20:14 (4th ed. 2010) .......... 30

7A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1769.1 (3d 2010)... 21

## TABLE OF RELEVANT EVIDENCE

| FINANCIAL DOCUMENTS | |
|---|---|
| 2010 Capital Financial Audited Financial Statements | Pltf. Final App. Apx. 0465-0483 (Dkt. No. 394) |
| Individual Registered Representative Financials | Pltf. Final App. Apx. 0203-0430 (Dkt. No. 215) |
| INSURANCE DOCUMENTS and ARBITRATION CLAIMS | |
| Arch Insurance Policy | Pltf. Prel. App. Reply Apx. 0130-0163 (Dkt. No. 170) |
| List of Arbitrations | Pltf. Prel. App. Reply Apx. 0174-0176 (Dkt. No. 170) |
| SETTLEMENT DOCUMENTS | |
| Settlement Agreement | Pltf. Final App. Apx. 0005-0031 (Dkt. No. 215) |
| HEARING TRANSCRIPTS | |
| Excerpts from Jan. 3, 2011 Preliminary Approval Hearing | Pltf. Final App. Apx. 0434-0437 (Dkt. No. 394) |
| Excerpts from Jan. 3, 2011 Status Conference (misdated Jan. 3, 2011) | Pltf. Final App. Apx. 0438-0441 (Dkt. No. 394) |
| Excerpts from Jan. 11, 2011 Preliminary Injunction Hearing | Pltf. Final App. Apx. 0442-0459 (Dkt. No. 394) |

Plaintiffs respectfully submit this Reply Memorandum of Law in Further Support of the Motion for Final Approval of Partial Class Action Settlement with Capital Financial Services, Inc.[1] ("Capital Financial") and in response to the objections[2] that have been filed to the settlement.

## INTRODUCTION

The proposed Settlement Fund is comprised of the only real money available for distribution to Class Members:  (i) the Securities Broker/Dealer and Registered Representative Errors and Omissions Policy (Policy No. SBD002714101) (the "Arch Policy"),[3] with a balance of $1,400,000 remaining; and (ii) the amount that the Financial Industry Regulatory Authority ("FINRA") determined that Capital Financial may contribute to the Settlement without violating its net surplus capital requirements.  Capital Financial sold $65 million in Provident Securities, and individual arbitrations alone seek a total of $11,830,000 in damages.  There is no dispute that Capital Financial will be unable to make its Provident investors whole, even if the Objectors

---

[1]  Unless otherwise stated all capitalized terms have the same meanings as set forth in the Settlement Agreement.  *See* Appendix in Support of Plaintiffs' Motion for Final Approval of Partial Class Action Settlement with Capital Financial Services, Inc. ("Apx.") (Dkt. No. 215) at 0005-0031.  References to "Supp. Apx." are to the Appendix in Support of Plaintiffs' Reply to the Liquidating Trustee's Objections to Plaintiffs' Motion for Preliminary Approval of Partial Class Action Settlement (Dkt. No. 170).  References to "Reply Apx." are to Plaintiffs' Supplemental Appendix filed herewith.

[2]  The Objectors are: (1) Milo H. Segner, Jr., Liquidating Trustee of the PR Liquidating Trust (the "Trustee"); (2) Amber D. Campen, John A. Campen, Gary F. Jackson, Ben M. Kennerly, Elizabeth A. Meinhold, Executor of the Estate of Dorothy C. Thawley, Don C. Ribacchi, Karen M. Rohde, Richard N. Rohde, Ann M. Vollmer, and Joe G. Vollmer (the "Campen Objectors"); (3) Don Latimer; (4) Terry and Carolyn Stanfield; (5) Christine Meengs; (6) Craig and Brenda Benson; and (7) Kevin Erickson, George Blohowiak, Michale Cunneen, Raymond Kronfost, Roger Wilson, Harry Wilson, Elaine Wilson, Irene Strughold, David Vail, Karla Vail, Charles Null and Carolyn Null (the "Erickson Objectors").

[3]  Plaintiffs have previously submitted a copy of the Arch Policy issued by Arch Specialty Insurance Company ("Arch") and a list of Provident-Related FINRA arbitrations against Capital Financial.  Supp. Apx. at 0164-0176.

were able to pursue all of their purported remedies successfully.

None of the Objectors' arguments provides a basis to deny final approval of the Settlement for the following reasons:

- Any effort to pursue litigation to obtain additional insurance monies will deplete the existing policy proceeds, which comprise more than 90% of the Settlement Fund.

- FINRA has determined that Capital Financial cannot meet its minimum capital requirements if it contributes more than the $120,000 which FINRA already determined was the maximum Capital Financial could contribute to this Settlement. Any additional contribution could result in the downfall of Capital Financial along with the funds presently available for this Settlement.

- Capital Financial's officers, directors and Registered Representatives are foregoing insurance coverage provided by the Arch Policy. Arch will not pay the insurance proceeds without the release of these individuals, and the Settlement provides for cooperation in pursuing other Defendants in this litigation, particularly Capital Financial's parent, Capital Financial Holdings, Inc. ("Capital Holdings"). Thus, there is ample consideration for the releases.

- Capital Holdings is not a party to this Settlement, is not released from liability and Plaintiffs are continuing to pursue class claims against it in this action. The Objectors either cannot bring claims against Capital Holdings or they have not done so to date.

- Certain Objectors would have this Court apply requirements of Rule 23(b)(3) not applicable to the determination of certification of a settlement class under Rule 23(b)(1)(B).

- The Settlement Fund is comprised of (i) discrete insurance proceeds which are limited to claims arising out of the Provident investments and not available to resolve claims by Medical Capital investors, and (ii) an allocation of the surplus capital as determined by FINRA.

In sum, this Settlement represents the only viable mechanism to equitably distribute the limited funds available to investors who purchased their Provident Securities through Capital Financial. Absent the Court's exercise of its power to finally approve the Settlement pursuant to Rule 23(b)(1)(B) and bar and enjoin Settlement Class Members from pursuing any of the Settled Claims, those limited funds will disappear, leaving Settlement Class Members with no assurance of recompense for the actions of Capital Financial. Thus, there is no purported conflict.

## ARGUMENT

## I.     THE REQUIREMENTS OF RULE 23(b)(1)(B) ARE SATISFIED

This Settlement merits final approval because it has the three necessary characteristics of a limited fund as defined by *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 838-42 (1999) for purposes of Rule 23(b)(1)(B) certification.

### A.     This Case Is Not Like The Mass Tort Cases In Which Mandatory Settlement Classes Have Been Disapproved

Plaintiffs' claims pose none of the problems in the cases Objectors cite, where the class members' injuries were too disparate or unquantifiable for resolution by Rule 23(b)(1)(B) limited fund certification. In *Ortiz*, class members suffered from such a variety of injuries that the court could not determine the total amount of claims. 527 U.S. at 850. The Supreme Court described the conflicts that are inherent in settlement classes that include "holders of present and future claims (some of the latter involving no physical injury and attributable to claimants not yet born"): the currently injured seek "generous immediate payments" but future claimants are better served by "an ample, inflation-protected fund for the future." *Id.* at 856. With a class with

such diverse injuries and damages, a court can never be sure of the total claims or that all class members will be treated equitably. *Id.* at 850, 854. The Fifth Circuit similarly rejected the settlement in *In re Katrina Canal Breaches Litig.,* 628 F.3d 185 (5th Cir. 2010), in part because the class members suffered vastly different types of injuries that could not be treated equitably. *Id.* at 193-94 ("The class members in this case suffered a wide variety of injuries, ranging from property damage to personal injury and death, and no method is specified for how these claimants will be treated vis-à-vis each other.").

Similar problems plagued the proposed settlements in most of the other mass tort cases the Objectors cite. *See In re Simon II Litig.*, 407 F.3d 125, 130-31 (2d Cir. 2005) (lawsuit against tobacco companies on behalf of smokers who suffered or died from a variety of diseases); *In re Telectronics Pacing Sys., Inc.*, 221 F.3d 873, 880 (6th Cir. 2000) (products liability case brought on behalf of approximately 40,000 individuals with allegedly defective pacemaker leads that caused heart and blood vessels injuries); *In re Joint Eastern & Southern District Asbestos Litig.*, 14 F.3d 726, 728 (2d Cir. 1993) (class of persons with present and future asbestos claims); *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 301-02 (6th Cir. 1984) ("a massive products liability lawsuit" against drug manufacturer alleging that the drug Bendectin caused birth defects); *Klein v. O'Neal, Inc.*, No. 7:03-CV-102-D, 2006 WL 325766, at *1 (N.D. Tex. Feb. 13, 2006) (a products liability case arising "out of the manufacture and distribution of...a pharmaceutical product administered intravenously to premature infants"); *In re Complaint of River City Towing Services, Inc.*, 204 F.R.D. 94, 94 (E.D. La. 2001) ("*River City*") (class action to recover damages following spill of a hazardous substance).

This case does not involve personal injury claims and does not include future, unrealized claims. Some Objectors focus on the Supreme Court's use of the word "unliquidated" and, in an

effort to make this case resemble *Ortiz*, argue that the investors' claims and potential relief vary widely because of variations in state laws governing interest rates, attorneys' fees, punitive damages and some distributions that were made to some class members. *See* Intervenors' Brief in Opposition to Plaintiffs' Motion for Final Approval of Partial Class Action Settlement ("Campen Br.") (Dkt. No. 279) at 19.   But the Supreme Court's focus in *Ortiz* was on "the difficulties facing limited fund treatment of huge numbers of actions for unliquidated damages arising from mass torts" like the asbestos exposure cases, which included a broad spectrum of personal injuries as well as unknown future claimants. *Ortiz*, 527 U.S. at 850.   Securities claims, because they are essentially economic, are more amenable to a formulaic calculation and *pro rata* distribution.

### B. The Evidence Confirms that the Available Funds Are Inadequate to Pay All of the Claims

The Supreme Court explained in *Ortiz* that courts use two different standards when evaluating limited funds:   (1) whether adjudication of competing claims "inescapably compromise[s] the claims of absent class members" or (2) whether there is a "substantial probability – that is, less than a preponderance but more than a mere possibility – that if damages are awarded, the claims of earlier litigants would exhaust the defendants' assets." *Ortiz*, 527 U.S. at 850 n.26 (quotation marks and citation omitted); *see also In re Bendectin*, 749 F.2d 306. Applying either standard, the evidence in this case shows that the claims of absent class members will be compromised because Capital Financial's limited resources will be completely depleted by defense costs and payment of any awards in whichever arbitrations are first to proceed.

It is undisputed that Capital Financial sold $65 million of Provident Securities, Reply Apx. at 0436 (Preliminary Approval Hearing Transcript, Jan. 3, 2011 ("Jan. 3 Tr.") 105:4-10) and that its exposure in FINRA arbitrations totals $11,830,000 in damages.   Supp. Apx. at 0174-

0176; Reply Apx. at 0448 (Hearing on Motion for Preliminary Injunction Transcript, Jan. 11, 2011 ("Jan. 11 Tr.") 36:3-8.).

The limited settlement fund is comprised of $1.4 million, representing the remaining sublimit proceeds of a "wasting" policy of insurance available to cover the Provident claims, and an additional payment by Capital Financial of $120,000 of $200,000 excess net capital ("net capital contribution"). Reply Apx. at 0447 (Jan. 11 Tr. 30:13-17). There is no dispute that the net capital contribution was determined by FINRA to be the maximum amount payable by Capital Financial to avoid a net capital violation and the consequent shut down of its business. Reply Apx. at 0449-0451 (Jan. 11 Tr. 38:18-41:2). The allocation of the sum of $120,000 to this Settlement was also determined by FINRA. Reply Apx. at 0449-0450, 0453 (Jan. 11 Tr. 38:18-39:4; 52:3-15). The Objectors' arguments that more can be contributed to the Settlement Fund are unsupported by the record in this case.

# REDACTED

# REDACTED

There are no additional available funds that Capital Financial can contribute if it is to remain in operation. Thus, it is clear that Capital Financial cannot satisfy the claims of all investors.

# REDACTED

---

[4] The Net Capital Rule requires broker-dealers to maintain certain levels of their own liquid assets to prevent insolvency and protect their customers' assets. *See* 17 C.F.R. § 240.15c3-1.

# REDACTED

# REDACTED [6]

The evidence is sufficient for the Court to grant final approval of a mandatory settlement class in this case. The Fifth Circuit's approval of a limited fund settlement in 2006 – post *Ortiz* – supports such a finding. *See Baker v. Washington Mut. Fin. Group, LLC*, 193 Fed. Appx. 294, 298 (5th Cir. 2006) (affirming the district court's certification of a mandatory punitive damages settlement class under Rule 23(b)(1)(B)). In *Baker*, the Fifth Circuit addressed the same

## REDACTED

---

[6] Unlike the cases cited by the Objectors, this Settlement is supported by a sufficient evidentiary record. For example, in *Ortiz*, the Supreme Court characterized as the "defect of certification" the fact that there had been an "uncritical adoption" by the district and appeals courts of "figures agreed upon by the parties in defining the limits of the fund and demonstrating its inadequacy." *Ortiz*, 527 U.S. at 848 (footnotes omitted). In most of the other cases cited by the Objectors the parties failed to present evidence that showed the inadequacy of the fund to pay the available claims, often resulting in inadequate findings by the district court. *In re Telectronics*, 221 F.3d at 878-79 (the district court did not take into account the resources of parent companies that were to be released as part of the settlement); *In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1546 (11th Cir. 1987) ("The court made no specific findings of the defendants' financial status. Absent such findings the district court could not properly rely on [a limited fund] for certification."); *In re Bendectin*, 749 F.2d at 306 ("[T]he district court, as a matter of law, must have a fact-finding inquiry on this question and allow the opponents of class certification to present evidence that a limited fund does not exist."); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 347 (N.D. Ill. 2002) (in opposing the defendant's motion to deny certification, the plaintiffs asserted that certification was appropriate under Rule 23(b)(1)(B) because "Trans Union has argued that statutory damage to a nationwide class would subject it to liability in an amount exceeding Trans Union's net worth"); *In re Simon II*, 407 F.3d at 138 ("[T]he record in this case does not evince a likelihood that any given number of punitive awards would . . . overwhelm the available fund."); *Klein*, 2006 WL 325766, at * 5 (plaintiffs could not estimate their damages upon settlements involving the defective product paid "more than 20 years ago" and failed to show that an earlier insurance policy period was not inapplicable); *River City*, 204 F.R.D. at 96 (the court, *inter alia*, had not determined whether a maritime statute may limit the defendant's liability); *Hum v. Dericks*, 162 F.R.D. 628, 642 (D. Haw. 1995) ("[T]here exist several other Defendants whose finances [plaintiff] does not discuss.").

argument the Objectors make in this case: that the plaintiffs failed to establish the inadequacy of the fund "because they have not demonstrated with precision 'the upper limit' of the fund." *Id.* at 297. The appealing objectors argued that valuations of the company's net worth provided only "theoretical limits" and the amount of the limited fund "must have been 'plucked out of thin air' by the settling parties." *Id.* at 297-98. The Fifth Circuit rejected this argument, holding that the district court had properly relied upon facts relating to the defendants' financial condition and concluded that "if the class is not certified it is likely that tens of thousands of individual lawsuits will ensue" at a "breathtaking cost." *Id.* As in *Baker*, the amount of the limited fund has not been "plucked out of the air," but is based on the real limits of Capital Financial's available funds.

### 1. A Limited Fund Settlement Does Not Have to Drive the Defendant into Bankruptcy or Violation of the SEC's Net Capital Rule

The Objectors argue that Capital Financial must contribute all of its assets to the Settlement Fund. That argument has been rejected by another court which approved a limited fund settlement that was based on the defendant's excess net capital. *See Williams v. National Security Ins. Co.*, 237 F.R.D. 685, 692-93 (M.D. Ala. 2006). In *Williams,* the defendant (NSIC) was an insurance company with future obligations to policyholders, so its solvency was regulated by the Alabama Department of Insurance (ALDOI). *Id.* at 692. The court assessed the defendant's surplus as of the end of the prior year, and found that the proposed settlement reduced the surplus by approximately 35%. *Id.* The court also found that twenty individual lawsuits involving 174 plaintiffs were then pending against the defendant, with another 835 plaintiffs poised to sue, and the reasonable costs to defend these actions was estimated at nearly $49 million. *Id.* The ALDOI deputy commissioner stated that:

> **One of the obvious signs which concern regulators from the standpoint of solvency is a large reduction in surplus.** The subject proposed settlement involves a cost to NSIC of in excess of 30 % of its surplus. In the context of solvency regulation, this cost is very large in relation to the surplus of NSIC and is a matter for concern. The cost of this settlement is definitely material to the solvency of NSIC but does not require that it be placed under supervision.  A further material negative development could well affect its surplus, its financial viability and its ability to continue in business, not to mention the performance of its obligations under the subject proposed settlement. … **ALDOI considers the non opt-out feature of this settlement to be essential because the cost of defense of numerous individual cases or the imposition of a large verdict, could require that ALDOI place this company under supervision or in receivership.**

*Id.* at 693 (alteration in original) (citation omitted) (emphasis added).  The district court held that "[t]he prosecution of separate actions against NSIC unquestionably creates a risk of adjudications that, as a practical matter, would be dispositive of the interests of class members not parties to the adjudications or would substantially impair or impede their ability to protect their interests."  *Id.*  The court found that "the protection afforded by 23(b)(1)(B) is necessary to protect absent class members and accomplish the settlement proposed."  *Id.*

Like the defendant in *Williams*, Capital Financial's solvency is regulated because of its ongoing obligations to its customers.  It is therefore appropriate to use Capital Financial's excess net capital to determine the upper limit of the settlement fund.

# REDACTED

Thus, as in *Williams*, the protections of Rule 23(b)(1)(B) are required because continued

prosecution of the arbitrations against Capital Financial creates a risk that other class members'

interests would be substantially impaired or impeded.[7]

The Objectors argue that a limited fund settlement must include *all* of the company's

assets, effectively driving the company into violation of its solvency obligations or bankruptcy.

In *Ortiz*, the Supreme Court recognized that a defendant's assets "would obviously be 'limited'

in the traditional sense if the total of demonstrable claims would render [it] insolvent." *Ortiz*,

527 U.S. at 851 (referring to the insurers who were to provide the bulk of the settlement fund).

The Supreme Court did not say that the limited fund must bankrupt the defendant.  Rather, the

Court stated: "We need not decide here how close to insolvency a limited fund defendant must

be brought as a condition of class certification." *Id.* at 860 n.34.  The Court said that the

defendant may not provide "only a *de minimis* contribution" to the settlement fund, but did not

require that the defendant turn over all of its assets. *Id.*

The Objectors also cite *In re Telectronics*, in which the Sixth Circuit said that "the threat

of bankruptcy alone … cannot be the basis for finding a limited fund" and "[s]imply

demonstrating that there is a possibility, even a likelihood, that bankruptcy might at some point

occur cannot be the basis for finding that there is a 'limited fund' in an ongoing corporate

concern." 221 F.3d at 880.  Plaintiffs have not asked the Court to find a limited fund based on

"the threat of bankruptcy alone."  The evidence confirms that Capital Financial's available assets

are insufficient to pay all of the claims against it and that investors have nothing to gain from

continued litigation.

---

[7] As some Objectors point out, another district court did not accept a limited fund settlement that used net capital to measure the company's ability to satisfy the claims against it. *See Cooper v. Miller Johnson Steichen Kinnard, Inc.*, No. Civ. 02-1236 (RHK/AJB), 2003 WL 1955169 (D. Minn. Apr. 21, 2003).  However, the *Cooper* court cited *Ortiz*, which does not require net worth or current sale value to prove the existence of a limited fund.

### 2.  The "Releasees" Are Properly Released in this Settlement

The Objectors contend that the Settlement Agreement releases Capital Financial's officers, directors, and Registered Representatives without any consideration or contribution to the Settlement Fund.  That argument ignores that Arch is contributing the remainder of the policy limit to the Settlement Fund on behalf of all of the "Insureds" under the Arch Policy, which includes Capital Financial, its officers, its directors and its Registered Representatives.[8]  Apx. at 0135 (Arch Policy § III. F.).  Thus, they have all contributed the insurance proceeds to the fund and have relinquished their rights to coverage, providing consideration for their release.[9]

In addition, the Settlement Agreement contemplates the cooperation of Capital Financial's Registered Representatives in the continued litigation against the Non-Settling Defendants, including Capital Financial Holdings.[10]  Apx. at 0020 (Settlement Agreement § VIII. D. 7).  This is a further benefit the Registered Representatives provide to the Settlement Class. *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *10 (E.D. Mich. Feb. 22, 2011) ("[O]f significant value is the fact that the Settlement Agreement . . . includes the promise of cooperation from Home City … under which [it] will now be obligated to provide

---

# REDACTED

---

[9]  To the extent that a registered representative is not covered by the Arch policy, that representative is not a "Registered Representative" as defined in Section I. ¶ 16 of the Settlement Agreement (Apx. at 0008), and Section III. N. of the Securities Broker/Dealer and Registered Representative Errors and Omissions Policy, and is therefore not released.  Supp. Apx. at 0137.

### REDACTED

actual witnesses and continued document production."). *See also In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("There is another benefit of the settlement that does not have a precise monetary value.... [T]he Settlement Agreement obligates the settling defendants to provide significant cooperation to class plaintiffs in pursuing their case against the non-settling defendants immediately upon execution.... The provision of such assistance is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement.").

Moreover, if the directors, officers and Registered Representatives are not released, any litigation against them regarding sales of Provident Securities may prompt indemnification claims against Capital Financial which it cannot withstand and continue to operate, thereby depriving Settlement Class Members of the benefits of this Settlement. *See In re The Reserve Fund Sec. & Derivative Litig.*, 673 F. Supp. 2d 182, 202-03 (S.D.N.Y. 2009). As a result, *In re Telectronics* is inapposite. Thus, the argument that the Registered Representatives must be shown to have limited funds fails.

The Campen Objectors focus on the financial statements of eight Registered Representatives, even though none of the Campen Objectors purchased Provident Securities from those Registered Representatives. Interv. Final Apx. at 2-23.

# REDACTED

# REDACTED

While the Settlement is conditioned on the Registered Representatives' disclosure of their financial condition, these conditions of default are discretionary. Apx. at 0019-20 (Settlement Agreement § VIII. D. 4). While the Court has discretion to disapprove the Settlement on this basis, Class Counsel have seen no evidence that suggests that any Registered Representative has the means to increase the Settlement Fund by a material amount or that the cost of pursuing a contribution from any Registered Representative is in the best interest of the Settlement Class.

Finally, the Objectors argue that the Settlement should not be approved because Capital Holdings has not contributed. But Capital Holdings is *not a party* to the Settlement Agreement, and the Settlement Agreement *does not release* Capital Holdings from liability. Representative Plaintiff will continue to litigate against Capital Holdings on behalf of the class.[11]

### 3. The Insurance Proceeds Are Established at Their Upper Limit

No Objector disputes that: (a) the Arch Policy is the only insurance coverage that Capital

---

[11] The argument that absent its settlement, Capital Holdings would "try an empty chair" to foist all blame on its subsidiary Capital Financial misconstrues the liability to which the parent is exposed as a "control person." Trustee Br. at 21. Texas law provides for joint and several liability of the control person to the same extent that the controlled person was found liable: "A person who directly or indirectly controls a seller, buyer, or issuer of a security is liable…jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer…." TEX. REV. CIV. STAT. ANN. art. 581-33F (West Supp. 2009). Thus, were trial to proceed only against the parent company, the parent gains no benefit by shifting the blame to the subsidiary if the court finds the parent to be a "control person" of the subsidiary. In fact, shifting the blame only helps establish its own secondary liability.

Financial possesses to pay claims on Provident investments made through Capital Financial; (b) the Arch Policy is a wasting policy whose proceeds will continue to be depleted by defense counsel fees in the event of further litigation against Capital Financial; and (c) the Arch Policy contains a $2 million sublimit, of which approximately $1.4 million remains.  Reply Apx. at 0444-0446 (Jan. 11 Tr. 12:3-12, 13:23-14:4).[12]

Some Objectors argue that the upper limit should be the $5 million aggregate.  Yet, those same Objectors concede (Campen Br. at 17) that *Ortiz* recognizes that a fund's limit may be determined by its "value discounted by risk" so long as the amount is the product of arm's length bargaining.  *Ortiz*, 527 U.S. at 851.  The agreement to accept the remaining sub-limit proceeds was based on the reality that there are no guarantees of success in litigation, even with favorable facts or favorable law.

Arch takes the position that the $5 million aggregate amount is not available because the claims regarding Provident are "related."  While Plaintiffs do not concede the legal conclusion asserted, the Arch Policy states that:

> Related Claims means all Claims, whether made against more than one Insured or by more than one claimant, arising out of a single Wrongful Act or a series of Wrongful Acts that have as a common nexus any fact, circumstance, situation, even, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

Supp. Apx. at 0137 (emphasis omitted).   It further provides that "All Related Claims shall be deemed a single Claim. . . ."  Supp. Apx. at 0141 (emphasis omitted).  Some courts have determined that separate acts in a variety of circumstances are "related" for purposes of evaluating coverage.  *See, e.g., Continental Casualty Co. v. Orr*, No. 8:07CV292, 2008 WL

---

[12] There was no delay in preventing the depletion of the policy proceeds.  As soon as Plaintiffs became aware of the depleting policy proceeds and the limited resources of Capital Financial, Plaintiffs acted to protect these funds for the benefit of the Class through this settlement mechanism.

2704236, at *5-7 (D. Neb. July 3, 2008) (malpractice claims arising from misrepresentations "made against individual attorneys, alleging unique damages to different clients to whom the lawyers owed separate duties" were "related," invoking $2 million per-claim policy limit, not $4 million aggregate limit). However, there is little certainty whether litigating the insurance limits would yield any additional proceeds. The Objectors' discussion of cases where "relatedness" was not found only underscores this uncertainty. What is certain, however, is that such litigation would deplete the remaining insurance proceeds, leaving nothing for the Settlement Class to recover.[13]

### C. The Whole of the Fund Will Be Devoted to the Overwhelming Claims and a *Pro Rata* Distribution Will Treat Class Members Equitably

The second and third characteristics of a limited fund have also been met. *Ortiz*, 527 U.S. at 839. *Ortiz's* second requirement is intended to ensure "that the class as a whole was given the best deal" and that the defendant did not get "a better deal than *seriatim* litigation would have produced." *Ortiz*, 527 U.S. at 839. The Benson Objectors argue that this requirement is not met because Settlement Class Counsel have requested Court approval of an award of attorneys' fees. *See* Benson Objection to Proposed Settlement/Notice of Intention to Appear at Fairness Hearing at 8. However, the Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The underlying justification for attorney reimbursement from a common fund, as explained by the Supreme Court in three early cases, is that unless the costs of litigation are spread to the beneficiaries of the fund they will be unjustly

---

[13] The Campen Objectors are incorrect in their assertion that the class could be "underinclusive." Campen Br. at 19. Even if the full $5 million insurance proceeds were available for this Settlement, the Settlement Class would be identical.

enriched by the attorney's efforts." *Shaw v. Toshiba America Info. Sys., Inc.*, 91 F. Supp. 2d 942, 962 (E.D. Tex. 2000) (citation omitted).

*Ortiz's* third requirement considers "the inclusiveness of the class and the fairness of distributions to those within it." *Ortiz*, 527 U.S. at 854. The Supreme Court observed that "[f]air treatment…[is] characteristically assured by straightforward *pro rata* distribution of the limited fund." *Id.* at 855. Other courts have recognized that when recoverable assets are insufficient to pay all investors in full, a *pro rata* distribution "ensures that investors with substantively similar claims to repayment receive proportionately equal distributions. Courts have routinely endorsed *pro rata* distribution plans as an equitable way to distribute assets held in receivership in this situation." *S.E.C. v. Wealth Mgmt. LLC*, 628 F.3d 323, 333 (7th Cir. 2010); *see also S.E.C. v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 331 (5th Cir. 2001) (holding that the district court did not abuse its discretion in determining that a *pro rata* distribution to investors was fair and equitable).

The fact remains that Capital Financial sold $65 million in Provident Securities, and FINRA arbitrations alone against Capital Financial seek a total of $11,830,000 in damages. The available fund totals $1.52 million. Thus, the totals of the aggregated liquidated claims and the funds available for satisfying them, set definitely at their maximums, are inadequate to pay all claims. "The prosecution of separate actions against [Capital Financial] unquestionably creates a risk of adjudications that, as a practical matter, would be dispositive of the interests of class members not parties to the adjudications or would substantially impair or impede their ability to protect their interests." *Williams*, 237 F.R.D. at 693; *see also Baker,* 193 Fed. Appx. at 297.

## REDACTED

**REDACTED**

## II.     THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE AND MERITS FINAL APPROVAL

The Fifth Circuit is "clear that a settlement can be approved despite opposition from class members, including named plaintiffs." *Ayers v. Thompson*, 358 F.3d 356, 373 (5th Cir. 2004); *see also Reed v. General Motors Corp.*, 703 F.2d 170, 174-75 (5th Cir. 1983) (affirming the district court's approval of a settlement despite "the objections of twenty-three of twenty-seven named plaintiffs and nearly forty percent of the 1,517 member class"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("A settlement can be fair notwithstanding a large number of class members who oppose it.").

As fully discussed in Plaintiffs' memorandum in support of final approval (Dkt. No. 214 at 12-16), this Settlement satisfies the legal standards for final settlement approval.  Objectors offer mere "innuendo" about collusion, but cite no evidence – because there is none.  There was no "sid[ing] with the broker-dealers" as the Trustee states.  Trustee Br. at 29.  To the contrary, Plaintiffs opposed the Trustee's proposal to create a litigation trust because the proponents of the litigation trust refused to discuss a plan for avoiding duplication of effort with the class action proceedings.  Thus, it may be presumed that no collusion has occurred here.  *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) ("The court may presume that no fraud or collusion occurred between counsel, in the absence of evidence to the contrary." (quotation marks and citation omitted)).

## III.  THE REQUIREMENTS OF RULE 23(a) ARE SATISFIED

### A.  <u>The Representative Plaintiff's Claims Are Typical</u>

Nothing in the Objectors' arguments regarding typicality undermines the conclusion that the claims of the Representative Plaintiff share the "same essential characteristics of those of the putative class." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001).  Nor do their arguments avoid the conclusion that typicality is satisfied here because the interests of the Class Representative and the class "are commonly held for purposes of receiving similar or overlapping benefits" from the Settlement. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 281 (W.D. Tex. 2007) (quotation marks and citation omitted).  Like the Representative Plaintiff, the claims and financial losses of the entire Settlement Class – including all the Objectors – arise out of Capital Financial's sale of Provident Securities. *See Longden v. Sunderman*, 123 F.R.D. 547, 556-57) (N.D. Tex. 1988) (finding the typicality requirement satisfied in a securities case arising out of the sale of interests in real estate limited partnerships).  Typicality is satisfied.

What Objectors are actually arguing are issues relating to predominance and superiority.  However, predominance and superiority are elements necessary only to a Rule 23(b)(3) class – not to a Rule 23(b)(1)(B) class.  Thus, arguments and case law proffered by Objectors regarding purported differences in state's laws and asserted claims, or issues of reliance are irrelevant to the 23(b)(1)(B) proposed settlement because they address Rule 23(b)(3) requirements for predominance, superiority and manageability.[14]

---

[14]  Although *Stirman v. Exxon Corp.*, 280 F.3d 554 (5th Cir. 2002) relied upon by the Trustee, sets forth the criteria for typicality, it is factually distinguishable.  There, the class representative's claims were not typical because, unlike the class she sought to represent, one of the leases she held did not permit a breach of implied covenant claim under Texas law. *Id.* at 562.  The Trustee cites to *De Lage Landen Fin. Servs., Inc. v. Rasa Floors, LP*, 269 F.R.D. 445 (E.D. Pa. 2010) – in which the court found that the typicality requirement was satisfied.  The

### B.      The Adequacy Requirement Is Satisfied

The Objectors also argue that Settlement Class Counsel cannot adequately represent the Settlement Class because they represent investors in both Provident and Medical Capital Securities.  This argument does not take into account the fact that the funds for this Settlement are derived from a different source than the funds available to compensate investors who purchased Medical Capital Securities through Capital Financial.

# REDACTED

There was no "hold back" of funds to settle other claims, as the Trustee asserts. Trustee Br. at 11-12.  This limited fund is set at its maximum amount, and consists of all funds available to compensate Provident investors.

In *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 207 (5th Cir. 1981), the Fifth Circuit rejected similar arguments.  The objectors to a class settlement argued that class counsel represented subclasses with conflicting interests and that the conflict adversely affected their representation of one or both classes.  After assuming a conflict existed, the Fifth Circuit held that the issue for the district court "was whether these interests conflicted at the point of settlement negotiation, and thus deprived either class of the vigorous and unqualified advocacy in settlement negotiations to which both were entitled." *Id.* at 208.

In affirming the district court's finding that there was no conflict, the Fifth Circuit observed that the goal of both classes was to maximize the recovery for the class, and there was

---

Trustee's quotes are from the court's discussion of whether the class action would be manageable – a 23(b)(3) concern that is not present in a settlement-only class.

no suggestion that "two sets of negotiators leading to two sets of settlements might have better achieved the common aims of the two subclasses." *Id.* "[I]n these circumstances, logic dictates that one set of negotiators, with the authority to release defendants from all claims, would be in a better bargaining position than negotiators with authority to compromise only part of the action." *Id.*; *see also White v. National Football League*, 822 F. Supp. 1389, 1405 (D. Minn. 1993) (finding that class counsel's participation in other closely-related lawsuits did not create a conflict and was instead of benefit to the class).

Moreover, "[m]ost courts have held that class counsel may represent more than one class against the same set of defendants in large part because of the procedural safeguards in place to protect the proposed class; *i.e.*, the court must approve any proposed settlement." *Mehl v. Canadian Pac. Ry., Ltd.*, 227 F.R.D. 505, 515 (D.N.D. 2005) (granting class certification in toxic exposure case, despite class counsel's concurrent representation of other plaintiffs in actions against the same defendant for the same railroad accident). Here, the Court has taken a very active role in overseeing the litigation and the settlement process; the Court has allowed various Objectors to express their concerns at the preliminary approval hearing and to cross-examine witnesses at the preliminary injunction hearing, all of which reinforces the protections in place for absent class members.

As with most aspects of class action litigation, the district court has broad discretion in assessing whether counsel will adequately represent the class. *See* 7A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1769.1 (3d ed. 2010) ("[T]he fact that the counsel is engaged in multiple parallel or overlapping class suits does not, standing alone, establish a conflict. The court will look carefully at what is involved in each litigation, and may deem an attorney to be an adequate representative if it determines that no real conflict exists.").

The cases the Objectors cite involve very different circumstances. In *Ortiz*, the Supreme Court found fault in the proposed limited fund settlement because separate counsel was not appointed to represent future claimants. This conflict was heightened by "side settlements" reached on behalf of some of the class counsel's clients prior to the class settlement, "the full payment of which was contingent on a successful Global Settlement Agreement or the successful resolution of the insurance coverage dispute." *Ortiz*, 527 U.S. at 853. There are no "future claimants" in this Settlement Class, since their losses occurred in the past. There are also no "side settlements" or preferences for a particular group of investors in this case. All investors will be treated equally. Nor is this case like *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995), where the plaintiffs had a conflict with the rest of the class because they had asserted their own separate non-class claims against the defendants and thus had an incentive to put their own interests ahead of the class. Likewise, in *Krim v. pcOrder.com, Inc.*, the plaintiffs' counsel represented four different proposed classes in four different courts against the same defendant, but did not disclose that fact to their clients; counsel also "participated in a full week of settlement negotiations with Defendants who offered to settle *all* lawsuits against pcOrder.com" without disclosing the global nature of the negotiations to their clients. 210 F.R.D. 581, 589-90 (W.D. Tex. 2002).[15]

---

[15] The other cases cited are equally inapposite as none involved a limited fund settlement, and all lacked the additional procedural safeguards in place here. *See Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667 (N.D. Ohio 1995); *Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80 (S.D. Ohio 1992); *Sullivan v. Chase Inv. Servs. of Boston, Inc.*, 79 F.R.D. 246 (N.D. Cal. 1978)**;** *Tedesco v. Mishkin*, 689 F. Supp. 1327 (S.D.N.Y. 1988); *Moore v. Margiotta*, 581 F. Supp. 649 (E.D.N.Y. 1984); *Jackshaw Pontiac, Inc. v. Cleveland Press Publ'g Co.*, 102 F.R.D. 183 (N.D. Ohio 1984); *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552 (S.D. Ohio 2005). For the same reason, there is no merit to certain some Objectors' argument that Rule 1.06(2) of the Texas Disciplinary Rules of Professional Conduct has been violated.

The Trustee argues that Class Counsel cannot adequately represent the Trustee or the claims assigned to the PR Liquidating Trust, but has not articulated any actual conflict among investors who have assigned their claims to the Trustee and those who have not. Regardless of previous litigation positions taken, the Trustee, as assignee of claims of class members, is a Settlement Class Member whose interests are aligned with every other Settlement Class Member, and those interests are being represented in the same manner as the interests of all Settlement Class Members. It is irrelevant that the Trustee has asserted or may assert other claims because those claims have yet to produce any recovery for the Settlement Class Members.

## IV. THIS COURT MAY, AND SHOULD, ENJOIN ALL LITIGATIONS AND ARBITRATIONS AGAINST CAPITAL FINANCIAL TO IMPLEMENT THE SETTLEMENT

The Court has the authority to enjoin further litigation by any Settlement Class Member, including the Objectors who have commenced FINRA arbitrations. In its orders preliminarily enjoining all other legal proceedings against Capital Financial, the Court relied upon the All Writs Act, which vests federal courts with the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). *See* Order Granting Plaintiffs' Motion for Temporary Restraining Order, Dec. 28, 2010 ("Dec. 28 Order") (Dkt. 159); Order Preliminarily Enjoining Other Proceedings By Settlement Class Members, Jan. 11, 2011 ("Jan. 11 Order") (Dkt. No. 184). *See also* Order Staying All Proceedings, Jan. 25, 2011 ("Jan. 25 Order") (Dkt. No. 190). In doing so, the Court recognized that, "[i]n a complex class action such as this one, district courts have been ruled to have the authority to stay proceedings taking place elsewhere 'in aid of their respective jurisdictions' to assist the courts in the complex task of ensuring resolution to the claims before

it." Dec. 28 Order at 3; Jan. 11 Order at 3 (*citing In re Baldwin-United Corp.*, 770 F.2d 328, 336, 338 (2d Cir. 1985), and *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977)).

The Court has also cited *Liles v. Del Campo*, 350 F. 3d 742, 746 (8th Cir. 2003), in which the Eighth Circuit considered a court's authority under the All Writs Act in the context of a limited fund class action settlement, and upheld an injunction "to preserve the settlement fund, to eliminate the risk of inconsistent or varying adjudications that would deplete the fund, to avoid confusion among class members, and to save scarce judicial resources." As this Court has observed, "district courts have used [their] authority under the All Writs act to enjoin arbitration proceedings that would interfere with class action settlements." Jan. 11 Order at 3 (*citing Demint v. NationsBank Corp.*, 208 F.R.D. 639, 644 n.8 (M.D. Fla. 2002) (enjoining under the All Writs Act the arbitration of claims that were resolved under a class action settlement); *In re PaineWebber Ltd. P'ships Litig.*, No. 94 CIV 8547 SHS, 1996 WL 374162, at *4 (S.D.N.Y. July 1, 1996) (holding that a court "may enjoin arbitration – even before judgment has been entered in this action – where that injunction would be 'in aid of its jurisdiction' within the terms of the *Baldwin-United* line of cases" and that "it would be incongruous if the Court had the authority to stay pending litigation, but not enjoin arbitration….")).

For the same reasons, the Court has the power under the All Writs Act to enjoin the Trustee from continuing to litigate his claims against Capital Financial in the bankruptcy proceedings. *See In re March*, 988 F.2d 498, 500 (4th Cir. 1993) (holding that a Virginia district court acted within its authority under the All Writs Act by enjoining further proceedings by a bankruptcy trustee in a New York bankruptcy court). That the Trustee asserts bankruptcy claims on behalf of the Provident Entities and Rule 506 Entities, which are excluded from the Settlement Class definition, does not restrict the Court's power to enjoin the Trustee from

pursuing those claims. *See Liles*, 350 F.3d at 746 ("Injunctions of related proceedings in other federal courts are appropriate when necessary for adjudication or settlement of a case"); *In re Baldwin-United*, 770 F.2d at 338-39 (holding that All Writs Act injunctions "prevent third parties from thwarting the court's ability to reach and resolve the merits of the federal suit before it"); *see also United States v. International Brotherhood of Teamsters*, 266 F.3d 45, 50 (2d Cir. 2001) ("[a]n important feature of the All Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction" (alteration in original)); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2008 WL 4461914, at *5 (E.D. Pa. Oct. 3, 2008) (court's "authority under the All Writs Act extends to both parties and non-parties.").[16]

None of the cases the Objectors cite involved a federal court's need to protect a Rule 23(b)(1)(B) limited fund from depletion by competing claims. Instead, the cases were mostly individual actions in which the parties disputed the arbitrability of certain claims.[17] Nor do the

---

[16] *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 202 (7th Cir. 1998) and *In re Schimmelpenninck*, 183 F.3d 347, 359-60 (5th Cir. 1999), cited by the Trustee, do not address a court's authority to enjoin bankruptcy claims under the All Writs Act.

[17] *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352 (2d Cir. 1995) (in broker action to stay claimants' arbitration, broker was not entitled to trial on issue of whether claimants were customers); *Kidder, Peabody & Co. v. Zinsmeyer Trusts P'ship*, 41 F.3d 861 (2d Cir. 1994) (declaratory judgment action by broker seeking determination as to customer's arbitration rights); *California Fina Group, Inc. v. Herrin*, 379 F.3d 311 (5th Cir. 2004) (in declaratory judgment action by broker as to customer's arbitration rights, granting customer's motion for arbitration); *Ganguly v. Charles Schwab & Co.*, No. 03 Civ. 6454, 2004 WL 213016 (S.D.N.Y. Feb. 4, 2004) (customer suit to confirm arbitration award against brokerage for trading losses); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314 (5th Cir. 1994) (breach of warranty counterclaims were arbitrable in manufacturer's action against former shareholders); *C.D. Anderson & Co. v. Lemos*, 832 F.2d 1097 (9th Cir. 1987) (broker action against customer for payment of debt was precluded by arbitration award); *Victor v. Dean Witter Reynolds, Inc.*, 606 So.2d 681 (Fla. Dist. Ct. App. 1992) (broker declaratory action seeking determination that clients were barred from arbitration by statute of limitations); *Republic Ins. Co. v. Paico Receivables, LLC*, 383 F.3d 341 (5th Cir. 2004) (insurer held to have waived right to arbitration in action over reinsurance agreement); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1

FINRA Rules that the Objectors cite support their position. None of the FINRA Rules addresses a customer's arbitration rights within the context of a limited fund settlement.[18] The Objectors have also cited no decision holding that the FAA supersedes a district court's authority under the All Writs Act to enjoin proceedings that threaten a valid Rule 23(b)(1)(B) settlement. Certain Objectors present a false analysis in comparing the power of the FAA to Rule 23, arguing that Rule 23 does not trump the FAA. However, the correct analysis is a comparison of the power embodied in the FAA with the power invested with the court embodied in the All Writs Act.[19]

Permanently enjoining proceedings that threaten to deplete the settlement fund is critical to the purpose of this Settlement, which is to provide a fair, *pro rata* distribution to all. *See In re The Reserve Fund*, 673 F. Supp. 2d at 202-03 (enjoining state court actions against insolvent defendant's assets, recognizing that the individual claims, if not enjoined, would "siphon assets away" from the limited fund, thereby "undermining the implementation of the *pro rata* distribution this Court has deemed necessary to treat all claimants fairly and equitably.").

---

(1983) (in construction dispute among hospital, contractor and architect, hospital's claims against architect could be arbitrated); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985) (in investor action against broker asserting state and securities claims, refusal to compel arbitration of state claims was error); *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, No. 08 Civ-5655 (LTS), 2010 WL 1222026 (S.D.N.Y. Mar. 29, 2010) (denying plaintiff's motion to stay a pending FINRA arbitration upon granting defendant's motion to compel arbitration of all plaintiff's claims, and holding All Writs Act injunction unnecessary); *Southland Corp. v. Keating*, 465 U.S. 1 (1984) (holding that California franchise could not void arbitration clause); *Bank One Acceptance Corp. v. Hill*, 367 F.3d 426 (5th Cir. 2004) (holding that Mississippi Supreme Court properly determined the unconscionability of arbitration clause in automobile lease).

[18] Rule 12204(b) does not contemplate a Rule 23(b)(1)(B) class settlement, and FINRA Rule 12200 does not reference class actions at all.

[19] Indeed, if Congress had intended to limit the reach of the All Writs Act as to the FAA, it would have done so, as it did in limiting the reach of the All Writs Act in connection with the Anti-Injunction Act. 28 U.S.C. § 2283. The Anti-Injunction Act limits the All Writs Act by providing that: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

## V.   THE SETTLEMENT DOES NOT INTERFERE WITH THE BANKRUPTCY PLAN

The Settlement does not interfere with, or jeopardize, the success of the bankruptcy plan because the Trustee, a Settlement Class Member by virtue of the assignments, will share in the limited fund on a *pro rata* basis with all other class members.  The Trustee may then allocate that share in accordance with the bankruptcy plan.  Apx. at 0024 (Settlement Agreement § VIII. G. 2(b)).  In any event, this Court is not bound by the Bankruptcy Court's injunction. *See Ameritrust Nat'l Bank v. Domore Corp.*, 147 B.R. 473, 475 (N.D. Ind. 1992) ("The bankruptcy court's conclusions do not bind the district court and are entitled only to such deference as the district court sees fit."); *see also In re Villarreal*, 413 B.R. 633, 641 (Bankr. S.D. Tex. 2009) ("The decisions of one district judge do not bind another judge of the same court …. This [Bankruptcy] Court operates as a unit of the District Court."). Further, the Court has the authority to modify or dissolve the bankruptcy injunction.  *See Royer v. Dow Corning Corp.*, No. 94-213-M, 1995 U.S. Dist. LEXIS 16259, at *12-13 (D.N.H. Nov. 1, 1995) ("To the extent the bankruptcy court's injunction purports to enjoin the parties from invoking this court's independent equitable jurisdiction under either the All Writs Act, 28 U.S.C. § 1651(a), or other applicable law to consider and rule upon petitions for extraordinary equitable relief, it is likewise entirely ineffective and is hereby dissolved, and is not enforceable against the parties to this action.").

## VI.   THE FEDERAL ARBITRATION ACT DOES NOT MANDATE A STAY OF THESE PROCEEDINGS

Some Objectors suggest that this Court should stay these proceedings under the provisions of Section 3 of the Federal Arbitration Act.  9 U.S.C. § 3 (mandating a stay of litigation when the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration."). *See* Erickson Intervenors' Opposition to the Proposed Settlement with

Capital Financial Services, Inc. (Dkt. No. 276) at 3-5.  But the requirements for a Section 3 stay are not met.  As the Objectors acknowledge, Section 3 applies only when three requirements are satisfied: (1) the applicant for a stay must have an agreement to arbitrate; (2) the issues raised in the action to be stayed must be within the scope of the arbitration agreement; and (3) the applicant must not be in default of his obligation to proceed with arbitration.  *See, e.g., Tittle v. Enron Corp.*, 463 F.3d 410, 417 n.6 (5th Cir. 2006) ("Under 9 U.S.C. § 3, a stay is mandatory at the request of a party if the dispute is arbitrable under 9 U.S.C. § 4 and it is referred to arbitration….").  Because the class action claims are not "referable to arbitration," the second requirement is not satisfied.

The arbitration provision in the Capital Financial customer agreement limits the issues that the parties will arbitrate by specifically excluding claims brought on behalf of a class. *See* Intervenors/Objectors' Supplemental Appendix in Opposition to Plaintiffs' Motion for Preliminary Approval of Partial Class Action Settlement ("Interv. Supp. Apx.") (Dkt. No. 183) at 137-40. Another court construing a virtually identical arbitration provision concluded that "[t]his language certainly bars the arbitration of class-action claims." *French v. First Union Securities, Inc.* 209 F. Supp. 2d 818, 833 (M.D. Tenn. 2002); *see also Plyler v. BDO Seidman, L.L.P.*, No. 042145 B/AN, 2004 WL 5039849 (W.D. Tenn. Dec. 29, 2004) (in a case involving a similar arbitration provision, the court deferred ruling on the defendant's motion to compel arbitration with NASD because the plaintiff was a member of a settlement class that had been preliminarily approved).

Because the issue is not "referable to arbitration," Section 3 does not apply.  *See, e.g., Bank of America, N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 914 (8th Cir. 2010) (holding that "[t]he district court did not err in denying the motion to stay its proceedings pending arbitration

because...there was no 'issue referable to arbitration under an agreement in writing' that would have triggered the court's obligation to stay proceedings"). Accordingly, the Court should decline the Erickson Objectors' invitation to stay these proceedings.

## VII. THE OBJECTORS DO NOT HAVE A DUE PROCESS RIGHT TO OPT OUT OF A MANDATORY CLASS SETTLEMENT

The Objectors argue that they have a due process right to opt out of the Settlement, even if the Court certifies a mandatory 23(b)(1)(B) settlement class. The Objectors cite *Ortiz*, in which the Supreme Court discussed due process concerns where the district court's certification of the class "did not support the essential premises of mandatory limited fund actions." 527 U.S. at 848. The Court found that the record "showed exclusions from the class and allocations of assets at odds with the concept of limited fund treatment and the structural protections of Rule 23(a) explained in *Amchem*." *Id*. Those due process concerns do not arise where Rule 23(b)(1)(B) requirements are met. *See Williams*, 237 F.R.D. at 699 (finding that a limited fund settlement was "fully consistent and in compliance with … the Due Process Clause"). The Court does not have to find that each Settlement Class member has sufficient minimum contacts or has consented to jurisdiction. Accepting the Objectors' argument would imply that a limited fund settlement could never be accomplished, as there inevitably will be unknown or unavailable claimants who cannot expressly consent to jurisdiction. As one commentator has explained:

> [T]he raison d'etre of a limited fund or impairment class action settlement is the prejudice and impairment of rights that would result to some claimants if others are permitted to seek individual adjudications. When the impairment tests of Rule 23(b)(1)(B) have been strictly applied and the court certifies a class under that section, permitting class members to opt out of such a class action … would defeat its essential purpose. Nothing in *Shutts* suggests that the Supreme Court intended to go beyond common question Rule 23(b)(3) – type class actions and to emasculate all mandatory class actions … through the imposition of opt-out rights.

6 WILLIAM B. RUBENSTEIN ET AL., NEWBERG ON CLASS ACTIONS § 20:14 (4th ed. 2010). [20]

Moreover, "additional protections are afforded class members when a class action is settled." *Kincade v. General Tire & Rubber Co*, 635 F.2d 501, 507 (5th Cir. 1981). Rule 23(e) precludes the compromise of a class action without the approval of the court and a finding that the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Members of a mandatory settlement class have the right to comment in support of or in opposition to the settlement. *Kincade*, 635 F.2d at 507. And the district court must "examine the settlement in light of the objections raised and set forth on the record a reasoned response to the objections, including findings of fact and conclusions of law necessary to support the response." *Id.* (quoting *Cotton*, 559 F.2d at 1331).

The Fifth Circuit has also cited the "overriding public interest in favor of settlement" as "an important policy consideration" for precluding opt-outs in this type of case. *Id.* at 507 (quoting *Cotton*, 559 F.2d at 1331). "[A]llowing objectors to opt out would discourage settlements because class action defendants would not be inclined to settle where the result would likely be a settlement applicable only to class members with questionable claims, with those having stronger claims opting out to pursue their individual claims separately." *Id.*; *see also Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338, 379 (S.D. Miss. 2003) (approving a mandatory settlement class under Rules 23(b)(1)(A) and (b)(2) and stating that "*Allison* [*v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998)] itself confirms that no due process right to opt out arises in a properly certified Rule 23(b)(1) or Rule 23(b)(2) class action. Class Members

---

[20]   All of the authority relied upon by the Campen Objectors in support of their argument regarding a lack of personal jurisdiction (Campen Br. at 34) pre-dates *Ortiz*, and thus, is unavailing because, as discussed in *Ortiz*, once the essential premises of a 23(b)(1)(B) class are satisfied, due process concerns are resolved. *Id.* at 845-48. Similarly, the authority cited by the Campen Objectors as to what constitutes "minimum contacts" (*id.* at 33-34) is entirely irrelevant as the Court need not engage in such an analysis for purposes of a Rule 23(b)(1)(B) class.

here have no constitutionally-protected property right to personally vindicate their claims for monetary relief in separate litigation." (citation omitted)).

The Objectors who intervened  have also consented, as a matter of law, to the jurisdiction of this Court.  *See County Sec. Agency v. Ohio Dept. of Commerce*, 296 F.3d 477, 483 (6th Cir. 2002) ("[A] motion to intervene is fundamentally incompatible with an objection to personal jurisdiction."); *Dow Agrosciences, LLC. v. Bates*, No. Civ. A. 5:01-CV-331-C, 2003 WL 22660741, at *5 (N.D. Tex. Oct. 14, 2003) (holding that "[b]y spontaneously and voluntarily appearing before the Court," party became a "*de facto* intervenor…and submitted itself to the personal jurisdiction of this Court"); *Pharmaceutical Research & Mfrs. of Am. v. Thompson*, 259 F. Supp. 2d 39, 59 (D.D.C. 2003).

## VIII.   THE OBJECTORS' REMAINING OBJECTIONS SHOULD BE OVERRULED

Because this Settlement involves only claims arising out of Capital Financial's offer and sale of Provident Securities, the Objectors' arguments regarding non-Provident claims are not relevant.  Apx. at 0009 (Settlement Agreement § I. ¶ 21).  If the Court grants final approval, the Objectors may still pursue their non-Provident Securities claims.

## CONCLUSION

For the foregoing reasons, and the reasons discussed in Plaintiffs' opening brief, Plaintiffs respectfully requests that the Court grant their motion for final approval of the Settlement.

Dated: March 25, 2011                     Respectfully submitted,

**ZWERLING, SCHACHTER & ZWERLING, LLP**

By:    /s/ Susan Salvetti

Susan Salvetti
Sona R. Shah
Stephen L. Brodsky
Justin M. Tarshis
41 Madison Avenue
New York, NY 10010
Tel:  (212) 223-3900

Dan Drachler
**ZWERLING, SCHACHTER & ZWERLING, LLP**
1904 Third Avenue, Suite 1030
Seattle, WA 98101
Tel:  (206) 223-2053

**GIRARD GIBBS LLP**
Daniel C. Girard
Jonathan K. Levine
Amanda M. Steiner
Christina H.C. Sharp
601 California Street, 14th Floor
San Francisco, CA 94108
Tel:  (415) 981-4800

*Settlement Class Counsel*

Lewis T. LeClair
**McKOOL SMITH P.C.**
State Bar No. 12072500
300 Crescent Court, Suite 1500
Dallas TX 75201
Tel: 214.978.4984
Fax: 214.978.4044

*Liaison Plaintiffs' Counsel*


Ari H. Jaffe
**KOHRMAN JACKSON & KRANTZ, PLL**
One Cleveland Center, 20th Floor
Cleveland, OH  44114
Tel:  (216) 696-8700

David M. Foster
**DAVID M. FOSTER PC**
30833 Northwestern Highway
Suite 209
Farmington Hills, MI 48334
Tel:  (248) 855-0940

*Plaintiffs' Counsel*