

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG - 4 2011

CLERK, U.S. DISTRICT COURT
By _____
          Deputy

# THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **BILLITTERI v. SECURITIES AMERICA, INC.,** *et al.* (*Provident Royalties Litigation*) | : : : | **3:09-cv-01568-F** **AND RELATED CASES** |
| **THIS DOCUMENT RELATES TO: ALL ACTIONS** | : : : : | |
| **C. RICHARD TOOMEY,** *et al.* v. **SECURITIES AMERICA, INC.,** *et al.* | : : : : | **3:10-cv-01833-F** |
| **IN RE:  MEDICAL CAPITAL SECURITIES LITIGATION** | : : : : | **Case No. ML 10-2145 DOC (RNBx) (C.D. Cal.)** |
| **THIS DOCUMENT RELATES TO:** *McCoy,* SACV09-1084 DOC (RNBx) (C.D. Cal.) | : : : | **Limited transfer for settlement purposes as Case No. 3:11-cv-00191-F (N.D. Tex.)** |

## ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH SECURITIES AMERICA, INC., SECURITIES AMERICA FINANCIAL CORPORATION, AND AMERIPRISE FINANCIAL, INC.

BEFORE THE COURT are the above-captioned class actions' Representative Plaintiffs' Motion for Final Approval of Class Action Settlement with Securities America, Inc., Securities America Financial Corporation, and Ameriprise Financial, Inc., filed on June 14, 2011 (*Billitteri* Docket No. 447, *McCoy* Docket No. 275, *Toomey* Docket No. 116).  Several individual class members and the Commissioner of the Office

1

of Securities and Insurance of the State of Montana filed objections to the settlement.[1]

After considering the Motion, the briefs and submissions to the Court, and the objections,

it is ORDERED that Plaintiffs' Motion for Final Approval of Class Action Settlement is

GRANTED.[2]

## I. Factual Background and Terms of the Proposed Settlement

These class actions arise out of alleged Ponzi schemes related to two entities

known as Provident Royalties, LLC ("Provident") and Medical Capital Holdings, Inc.

("Medical Capital").  Provident's purported business was the development of oil and gas

properties, and the Provident securities were sold as preferred stock and partnership

interests in a series of shale gas ventures.  Provident securities issued by affiliates of

Provident were sold by a number of broker-dealers, including Securities America, Inc.

("Securities America").  Securities America Financial Corporation ("SAFC") is the

parent company of Securities America.  Ameriprise, Inc. ("Ameriprise") is the parent

company of SAFC.  In total, Provident raised over $400 million from investors, and

Securities America sold over $47 million of Provident securities to 543 investors.

Securities America sold Provident securities by the use of Private Placement Memoranda

("PPMs"), which the Representative Plaintiffs contend contained untrue statements of

material fact and omitted material facts about the Provident entities.

---

[1] Several class members filed objections to the amount of attorneys' fees requested without substantively objecting to the settlement itself.  These objections will be addressed in a separate order.

[2] This resolves *Billitteri* Docket No. 447, *McCoy* Docket No. 275 and *Toomey* Docket No. 116.

Medical Capital raised approximately $2.2 billion through the sale of promissory notes issued by affiliated special purpose corporations, which purportedly provided financing to health care providers by purchasing their accounts receivable and by making loans to them. Securities America sold $697 million worth of Medical Capital notes. Similar to the Provident allegations, the Representative Plaintiffs allege that the PPMs contained untrue statements and omitted material facts, which are similar to those used in the alleged Provident Ponzi scheme.

Class members are investors who purchased Provident securities through a Securities America broker-dealer between 2006 and January 2009, when Provident suspended dividend payments, or investors who purchased Medical Capital securities through a Securities America broker-dealer between September 2003 and July 2009.

In 2009, an SEC investigation revealed that Provident and Medical Capital were in fact Ponzi schemes, and many investors lost the bulk of their investments in Provident and Medical Capital. The several Representative Plaintiffs filed suit against Securities America, SAFC, and Ameriprise in an attempt to recover their investments, alleging violations of federal and state securities laws, negligence, and breach of fiduciary duty. The *Billitteri* case, addressing the sale of Provident securities, was filed in the Northern District of Texas on August 24, 2009. The *Toomey* case, also addressing the sale of Provident securities, was originally filed on November 25, 2009, and was transferred from the District of Idaho to the Northern District of Texas on September 14, 2010. The *McCoy* case, which addressed the sale of Medical Capital Securities, was originally filed

on September 18, 2009 in the Central District of California. The *McCoy* case was transferred to this Court on January 31, 2011 for the purposes of settlement negotiations.

While these class actions have been pending, a number of investors who purchased Provident or Medical Capital securities from Securities America have been pursuing arbitrations against Securities America under the auspices of the Financial Industry Regulatory Authority ("FINRA"). Thus, both the class actions and the individual arbitrations have been moving forward on parallel tracks.

Initially, the parties to the class action proposed a settlement involving only Securities America and SAFC which would have distributed over $50 million to all investors in Provident and Medical Capital through Securities America and which was premised upon a "limited fund" theory under Federal Rule of Civil Procedure 23(b)(1)(B). As part of their request for approval of the settlement, the parties asked the Court to enjoin investors' arbitrations against Securities America and SAFC. The Court rejected this proposed settlement in March of 2011. *See* Order Denying Motion for Preliminary Approval of Partial Class Action Settlement with Securities America, *Billitteri* Docket No. 390. Securities America, SAFC, and Ameriprise subsequently participated in a mediation held in Chicago, Illinois with counsel for classes of investors and individual investors who had commenced arbitration proceedings against Securities America. This mediation and subsequent negotiations produced a second proposed settlement, which involves multiple classes, including Provident investors, Medical Capital investors, and separate classes for those who had commenced arbitration.

4

The instant Motion asks the Court to issue an order finally approving the Settlement Agreement that was submitted to the Court in conjunction with the instant Motion filed on June 14, 2011. *See* Settlement Agreement, Pls.' App., *Billitteri* Docket No. 449-3, at 183-212. The proposed settlement would establish an $80 million settlement fund from contributions of Securities America, SAFC, and Ameriprise to be distributed to members of the two Settlement Classes that would be established by the Settlement Agreement. The Provident Settlement Class would consist of "all Investors, their successors and assigns, who purchased Provident Securities from [Securities America] and were damaged thereby." *Id.* at 188. A number of investors in Provident have assigned their claims to Milo Segner, Jr., the Liquidating Trustee of the Provident Royalties Liquidating Trust established in June 2010 by the Bankruptcy Court; these investors are also covered by the Settlement Agreement. The Medical Capital Class would consist of "all Investors, their successors and assigns, who purchased Medical Capital Notes from [Securities America] and were damaged thereby." *Id.* at 186. There are approximately 2,158 total members of the proposed Settlement Classes, 30 of whom have opted out of the proposed settlement. According to counsel for Securities America, two of these opt-outs have not filed claims at this time, and the remaining 28 opt-outs have elected to pursue individual arbitrations.

The settlement fund would be distributed to the members of the Provident Settlement Class and the Medical Capital Settlement Class on a *pro rata* basis, while funds to be distributed to Provident class members who had assigned their claims to the Provident Royalties Liquidating Trust would be distributed directly to the Trustee for

distribution to those class members in accordance with the Bankruptcy Plan. Based on the information provided to the Court by the parties, this settlement would provide a recovery of approximately 40 cents on the dollar to class members, minus attorneys' fees, costs, and administrative expenses. The settlement will be funded through a special purpose loan by Ameriprise to Securities America. All claims by the class members against these three entities that are covered by the Settlement Agreement would be released, and the claims against these three entities in the *Billitteri*, *Toomey*, and *McCoy* class actions would be dismissed with prejudice, after severance orders are entered. Since the Court now approves this settlement by this Order, severance of the claims against the settling defendants at issue in the instant Motions is necessary before final judgment can be entered because the class action plaintiffs have similar claims against other defendants in these cases.

A separate proposed settlement would settle claims with investors in Provident and Medical Capital who had made their investments through Securities America broker-dealers and who had commenced arbitration proceedings against Securities America, SAFC, or Ameriprise. These investors' claims will be settled through a separate fund in the amount of $70 million. Over 650 arbitration claimants are included in this separate settlement with Securities America, which does not require the approval of this Court in this Order.

The Representative Plaintiffs filed Motions for Preliminary Approval of this proposed settlement with Securities America, SAFC, and Ameriprise on April 18, 2011 (*Billitteri* Docket No. 424, *Toomey* Docket No. 104, *McCoy* Docket No. 260). The Court

6

preliminarily approved the proposed settlement on May 5, 2011 (*Billitteri* Docket No.

435, *Toomey* Docket No. 109, *McCoy* Docket No. 266).   Class members were

subsequently given an opportunity to object to or comment upon the settlement.   Notice

of the settlement and opportunities to object to or opt out of the settlement was sent via

first class mail to all members of the class.   Several individual class members filed

objections to the settlement, as well as the Office of the Commissioner of Securities and

Insurance of the state of Montana, which is currently pursuing an action in Montana state

court against Securities America.   A fairness hearing was held on July 27, 2011.

## II. Analysis

The Court now moves to the analysis surrounding certification of a class under

Rule 23(a) and Rule 23(b)(3), notice to the class under Rule 23(c) and Rule 23(e), and

approval of a class action settlement under Rule 23(e).   The Court shall also address the

merits of any objections to the proposed settlement.

### A. Requirements of Rule 23(a)

A district court has wide discretion in deciding whether or not to certify a

proposed class. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 471-72 (5th Cir. 1986).

However, that discretion is not unlimited; the Court must undertake a "rigorous analysis"

to ensure that the requirements of Rule 23(a) are met. *General Tel. Co. of Southwest v.*

*Falcon*, 457 U.S. 147, 161 (1982).   "Rule 23(a) requires that the proposed class

representatives demonstrate numerosity, commonality, typicality, and adequacy of

representation."   *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir.

2007).   The Court shall address each of these Rule 23(a) factors in turn.

### 1. Numerosity

Numerosity is satisfied when the proposed class is "so large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). It is clear that the Settlement Classes created by the proposed settlement sufficiently satisfy the numerosity requirement. The proposed Provident Settlement Class includes 178 investors, and the proposed Medical Capital Settlement Class includes 1,983 investors. A class of such a size is comparable or excessive of the sizes of other classes certified within this Circuit. *See, e.g., Mullen*, 186 F.3d at 624 (noting that a class of 100 to 150 members satisfies the numerosity requirement). Furthermore, members of the Settlement Classes are geographically dispersed, decreasing the practicability of joinder into one action. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (noting the relevance to the numerosity requirement of "geographic dispersion" of the class).

### 2. Commonality

Commonality is met when "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The test of commonality is "not demanding"; all that is required is that "there is one common question of law or fact." *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001). "The interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1006 (5th Cir. 1993) (quoting

*Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)). Here, all of the members of the Settlement Classes invested in Provident or Medical Capital through Securities America, creating at least one major issue of fact in common with all class members. Furthermore, the claims of the class members are replete with common questions of law that class members would have to prove in pursuing their claims, including whether Securities America as a broker-dealer can be held liable for the misrepresentations in the PPMs, whether the PPMs contained misrepresentations, and whether Ameriprise can be held liable as a control person of Securities America. Accordingly, the commonality requirement is met.

### 3. *Typicality*

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The test for typicality is "not demanding," and "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen*, 186 F.3d at 625; *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1997). "Typicality does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics as those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James*, 254 F.3d at 571 (quoting 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 23.24[4] (3d ed. 2000)). "The prerequisite in the settlement context requires 'proof that the interests of the class representatives and the

9

class are commonly held for purposes of receiving similar or overlapping benefits from a settlement.'" *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 281 (W.D. Tex. 2007) (Biery, J.) (citation omitted).

The Representative Plaintiffs of the Provident Class and the Medical Capital Class assert claims that arise out of Securities America's sale of Provident and Medical Capital securities, and each class member's claims would involve proving the similar facts about Securities America's actions in selling those securities and making statements or omissions concerning those securities. *See Longen v. Sunderman*, 123 F.R.D. 547, 557 (N.D. Tex. 1988) (Sanders, J.) ("The individual factual differences between the class representatives will not defeat class certification in this case where Plaintiffs have alleged a continuous course of conduct by defendants which is uniformly fraudulent and that they, as well as each member of the class, suffered a financial loss as a result of the . . . scheme."). The Representative Plaintiffs have each brought claims that are typical of the members of the Settlement Classes. Accordingly, the Representative Plaintiffs' claims satisfy the typicality requirement.

### 4. Adequacy of Representation

"Rule 23(a)(4) is satisfied where: (1) the named plaintiffs' counsel will prosecute the action zealously and competently; (2) the named plaintiffs possess a sufficient level of knowledge about the litigation to be capable of taking an active role in and exerting control over the prosecution of the litigation; and (3) there are no conflicts of interest between the named plaintiffs and the absent class members." *Hamilton v. First Am. Title*

*Ins. Co.*, 266 F.R.D. 153, 163-64 (N.D. Tex. 2010) (Fish, J.) (citing *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005)).

Based on the information provided to the Court and the Court's involvement with counsel in this case, the adequacy of representation requirement is satisfied as to the Settlement Agreement. First, class counsel in this case and other counsel involved in the representation of class members in this matter, all of whom possess substantial experience in class action litigation, have zealously pursued the claims of class members, and have produced a satisfactory result for class members that exceeds the typical amount of recovery in securities class action. Indeed, the Court has had the opportunity to closely monitor the work of counsel in this litigation, and the diligent efforts of class counsel and their fellow representatives of investors is strongly deserving of commendation. Second, the Representative Plaintiffs, through submitted statements and declarations, have provided to the Court sufficient indications that they will continue to take an active role in the prosecution of this class action to its conclusion. The Court's observations throughout this litigation have also established that the Representative Plaintiffs have and will exert control over the prosecution of the litigation. Finally, the Court is satisfied that no conflict of interest exists between counsel for the Representative Plaintiffs and absent class members. Here, considering the effort expended to achieve a substantial recovery, the Court is convinced that "all class members are asserting [the] common right [of] achieving a maximum potential recovery for the class"; accordingly, "the class interests are not antagonistic for representation purposes." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981); *see also McNamara v. Bre-*

11

*X Minerals Ltd.*, 214 F.R.D. 424, 428-29 (E.D. Tex. 2002) (Folsom, J.) (finding that the adequacy of representation requirement was met when the named plaintiffs and class members all sought maximum recovery and where class counsel was skilled and experienced).

### B. Requirements of Rule 23(b)(3)

"Before certifying a class under Rule 23(b)(3), a court must determine that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Madison v. Chalmette Refining, L.C.C.*, 637 F.3d 551, 555 (5th Cir. 2011). The Court will address each of these requirements in turn.

### 1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "In order to 'predominate,' common questions must constitute a significant part of the individual cases." *Jenkins*, 782 F.2d at 472. "The predominance inquiry is 'more demanding than the commonality requirement of Rule 23(a)' and requires courts 'to consider how a trial on the merits would be conducted if a class were certified.'" *Maldonado*, 493 F.3d at 525 (quoting *Bell Atl. Corp. v. AT & T Corp.*, 339 F.3d 294, 301, 302 (5th Cir. 2003)). "Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625. Regarding the predominance requirement, the Fifth Circuit recently wrote,

Determining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) requires district courts to consider how a trial on the merits would be conducted if a class were certified. This, in turn, entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials.

*Madison*, 637 F.3d at 555.

The proposed settlement resolves class members' claims for violations of Section 33(A)(2) of the Texas Securities Act, Section 12(a)(2) of the federal Securities Act of 1933, negligence, and breach of fiduciary duty. Regarding the Texas Securities Act claims, Section 33(A)(2) provides that "[a] person who sells a security . . . by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him . . . ." Tex. Rev. Civ. Stat. art. 581, § 33(A)(2). A defendant may avoid liability by proving that either (a) the buyer knew of the untruth or omission, or (b) the defendant did not know, and in the exercise of reasonable care could not have known, of the untruth or omission. *Id.* To prove the liability of SAFC or Ameriprise, a plaintiff must first establish Securities America's liability and then prove that Ameriprise or SAFC "directly or indirectly controls" Securities America. *Id.* at § 33(F)(1). To demonstrate that Ameriprise or SAFC is a control person, a plaintiff "must prove that the alleged controlling person (1) had actual power or influence over the controlled person, and (2) had the power to control or influence the specific transaction or activity that gave rise to the underlying violation." *Fernea v. Merrill Lynch Pierce Fenner & Smith, Inc.*, No. 03-

09-00566-CV, 2011 WL 2769838, at *15 (Tex. App. –Austin, July 12, 2011).  A plaintiff

would not have to prove the control person's culpable participation.  *Barnes v. SWS Fin.*

*Servs. Inc.*, 97 S.W.3d 759, 763 (Tex. App. – Dallas 2003, no pet.).  Ameriprise or SAFC

may avoid liability by "sustain[ing] the burden of proof that he did not know, and in the

exercise of reasonable care could not have known, of the existence of the facts by reason

of which the liability is alleged to exist."  *Id.*

> Section 12(a)(2) provides,
>
> Any person who . . . offers or sells a security . . . , by the use of any means
> or instruments of transportation or communication in interstate commerce
> or in the mails, by means of a prospectus or oral communication, which
> includes an untrue statement of a material fact or omits to state a material
> fact necessary in order to make the statements, in the light of the
> circumstances under which they were made, not misleading (the purchaser
> not knowing of such untruth or omission), and who shall not sustain the
> burden of proof that he did not know, and in the exercise of reasonable care
> could not have known, of such untruth or omission, shall be liable, subject
> to subsection (b) of this section, to the person purchasing such security
> from him . . . .

15 U.S.C. § 77l(a)(2).  As with the Texas Securities Act claims, plaintiffs would have to

demonstrate that SAFC or Ameriprise had power or control over Securities America.

*G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 957-58 (5th Cir. 1981).

The Court is convinced that there are sufficient common class-wide issues and

questions that are prevalent throughout the cases of individual class members for these

securities claims under federal and state law to satisfy the predominance requirement.

All of the class members invested in either Provident or Medical Capital through

Securities America, which utilized much of the same materials from Provident and

Medical Capital entities.   At trial, the class members would be faced with common

questions of fact, such as the conduct of Securities America and the representations that the company and the Provident and Medical Capital entities made, that would apply to each of their claims. *See Eatmon v. Palisades Collection, LLC*, 2:08-CV-306-DF-CE, 2010 WL 1189571, at *8 (E.D. Tex. Mar. 5, 2010) (Everingham, J.) (noting that it is proper to allow a class action where a defendant is alleged to have acted in the "same basic manner" towards an entire class) (quoting *Randolph v. Crown Asset Mgmt., LLC*, 254 F.R.D. 513, 520 (N.D. Ill. 2008)). As Judge Sanders noted in *Longen*, "[t]he class action device is appropriate in securities fraud cases involving similar or identical misrepresentations, even if they are issued at different times." *Longen*, 123 F.R.D. at 553. This case involves misrepresentations or omissions made regarding the same investments and similar PPMs issued by those organizations. These identical or near-identical alleged misrepresentations or omissions "are not only significant but pivotal" to the class members' claims, *Mullen*, 186 F.3d at 626, and the analysis of each would be remarkably similar. *See In re Dell, Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *7 (W.D. Tex. June 11, 2010) (Sparks, J.) (holding predominance requirement to be met in approval of class action settlement when analysis of fraudulent misrepresentation or omission and other questions would be similar for each class member). The centrality of these issues to the securities claims weighs heavily in favor of the settlement meeting the predominance requirement.

The class members in this case also raise negligence and breach of fiduciary duty claims based upon state law. A cause of action for negligence arises when an actor breaches a legal duty and the breach proximately causes damages. *Columbia Med. Ctr.*

*of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008).   Under Texas law, "[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and the defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant."   *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.–Dallas 2006, pet. denied)).   There are class-wide issues of whether there was a legal duty for negligence purposes on the part of Securities America, as well as whether a fiduciary relationship and duty existed between class members and Securities America.

The common issues and elements of the claims asserted by class members, the issues that must be proved to establish the liability of Securities America and Ameriprise, and the common questions that are raised by Securities America's and Ameriprise's defenses are all sufficient to establish predominance in this case.   Furthermore, the amount of damages is relatively easily obtainable and distributable on a *pro rata* basis. In sum, the Court is convinced that this case would not "degenerat[e] into a series of individual trials," *Bell Atl.*, 339 F.3d at 302, that would render class treatment impossible. Sufficient common questions predominate over individual questions to satisfy the predominance requirement.

### 2. Superiority

Superiority under Rule 23(b)(3) is met when a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).   "[T]he superiority analysis requires an understanding of the relevant claims,

defenses, facts, and substantive law presented in the case." *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010) (citations and quotation marks omitted). Among the interests that the Court must consider are the interests of class members in individually controlling the prosecution and defense of separate actions, the extent and nature of any litigation concerning the controversy already begun by or against class members, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). None of these factors militate against approval of the settlement. Approximately 30 class members have opted out of the class already and can pursue their own litigation or arbitration. A separate proposed settlement is currently being contemplated for any investors who have brought arbitration claims, ensuring that the class members' interests in controlling their own paths of litigation will not interfere with approval of this settlement.

These cases were brought before this Court or transferred to this Court in the Northern District of Texas for the purposes of settlement negotiations that have succeeded, which increases the desirability of class action settlement treatment in this forum. There have been no difficulties raised by any parties as to the difficulty of managing the class action; in any case, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Accordingly, the Court is convinced that the superiority requirement is met in this case.

*C. Notice Requirements of Rule 23(c)(2)*

In relevant part, Rule 23(c)(2)(B) provides, "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B) also requires such notice to provide to class members in plain, easily understood terms (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Rule 23(e)(2) requires Court "to direct notice in a reasonable manner to all class members who would be bound by the proposal."

Notice was provided of this proposed settlement to all class members, whose contact information was compiled by and received from the Medical Capital and Provident Receivers, by first class mail sent out on May 16, 2011. The Court has reviewed the notice and finds it to be in compliance with the provisions of Rule 23(c) and Rule 23(e). The nature of the action, the definitions of the Settlement Classes, and the claims, defenses, and issues were clearly provided. Class members were provided with the date of the fairness hearing and were given the opportunity to object to or exclude themselves from the settlement, which was described in clear terms. *See* Pls.' App., *Billitteri* Docket No. 449-3, at 242-51. The scope of the class and effect of the judgment were clearly explained to the recipients of the notice. Accordingly, the requirements of

Rule 23(c) and Rule 23(e) as to notice are satisfied, and the Court finds that class members have been given reasonable notice. *In re Dell*, 2010 WL 2371834 at *5; *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K (lead case), 2005 WL 3148350, at *11 (N.D. Tex. Nov. 8, 2005) (Kinkeade, J.).

Having viewed submissions by counsel as well, the Court also concludes that the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, have been met. Notice was sent to all relevant state and federal officials, several of whom submitted briefings throughout the course of this litigation, and one of whom objects to this settlement. *See* Decl. of Peter Carter, *Billitteri* Docket No. 467.

### D. Fairness, Reasonableness, and Adequacy of the Settlement

In regard to a proposed class action settlement, Rule 23(e)(2) provides, "If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." The Fifth Circuit has provided six factors for district courts to consider in determining if a settlement satisfies the "fair, reasonable, and adequate" standard:

> (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004); *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). These factors are commonly referred to as the *Reed* factors, and the Court will address each of them in turn. The Court will also address any

objections to the settlement in regard to the *Reed* factor that they relate to for the Court's consideration.

### *1. Evidence that the Settlement was Obtained by Fraud or Collusion*

As for the first factor, there is no evidence that the settlement was obtained by fraud or collusion. On the contrary, this settlement was diligently negotiated after a long and hard-fought process that culminated in ultimately successful mediation in Chicago before retried United States District Judge James Rosenbaum. *See Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2007 WL 5166849, at *4 (S.D. Tex. May 7, 2007) (Rosenthal, J.) (holding a class action settlement to be free of fraud or collusion when "[t]he settlement was reached through arms-length negotiations after a long, hard-fought mediation with a neutral"). The representations of the parties throughout this litigation have impressed upon the Court that this settlement was negotiated at arms' length and was free of any fraud or collusion that would cause the Court to reject the settlement under this factor. *DeHoyos*, 240 F.R.D. at 287. The proposed settlement does not favor any class member or group of class members, which also weighs against any evidence of fraud or collusion and in favor of approval. *Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007) (Ward, J.).

### *2. Complexity, Expense, and Likely Duration of the Litigation*

The second factor addresses the complexity, expense, and likely duration of the litigation. The Court is of the opinion that this factor weighs in favor of approval of the settlement. There is no doubt that this litigation is particularly complex, as it implicates state and federal claims, class actions transferred from Idaho and California (with the

latter being for the limited purpose of attempted settlement), the implications of various investors taking their claims to arbitration, the involvement of the trustee of a Liquidating Trust created by the Bankruptcy Court, sprawling related litigation, and various other complicated aspects. Indeed, this case perhaps best demonstrates why "securities litigation on the whole is 'notoriously difficult and unpredictable.'" *In re Dell*, 2010 WL 2371834 at *7 (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)). As Judge Sparks remarked in *Dell*, "Securities claims are difficult to prove, and without agreeing to a settlement, Plaintiffs no doubt face unpredictable and significant delays and expense in prosecuting this case." *Dell*, 2010 WL 2371834 at *7. In the event of a trial, "they would face tall hurdles in establishing the elements of their claims in the district court and convincing the jury of liability and the amount of damages." *Id.* Plaintiffs in this case would have the further unenviable task of demonstrating Ameriprise's liability for Securities America's alleged wrongs, as well as surviving a motion to dismiss, motion for summary judgment, class certification, and an almost-certain appeal. *See DeHoyos*, 240 F.R.D. at 291-92 (holding that the complexity, expense, and likely duration factor to favor approval of the settlement when further proceedings would include class certification, dispositive motions, Rule 23(f) appeal, trial, and further appeals). The Court has little doubt that the amount of time it would take to recover on behalf of class members, many of whom invested substantial portions of their retirement investments in these alleged Ponzi schemes, would measure in years rather than the months contemplated by the parties at this stage. *See Schwartz*, 2005 WL 3148350 at *19 (weighing a potential "delay in the receipt of any relief" in

favor of approving a proposed settlement). Considering the potential road ahead for the litigants, the second factor weighs strongly in favor of approving this settlement.

### 3. Stage of Litigation and Availability of Discovery

The third consideration is the stage of litigation and availability of discovery. This litigation has been ongoing for approximately two years, and this is the second attempt at a settlement of claims involving the sale of Provident and Medical Capital securities involving Securities America. Settlement negotiations between the parties have been an ongoing proposition for months, and the parties and the Court are very aware of the magnitude of the case and the positions of the parties. Although there has not been a full range of discovery in this case, sufficient information has been disseminated to give the Court and the parties an effective view of the important issues in this case. As raised by class counsel at the July 27, 2011 hearing, such documentation has been made available through the exchange of millions of pages of documents, depositions by class counsel of the key players in Provident's business, documentation obtained by the S.E.C.-appointed receiver that has been reviewed by the parties, and the availability of documents and analysis stemming from a recently-settled regulatory action by the state of Massachusetts against Securities America. In any case, "the lack of [formal discovery] does not compel the conclusion that insufficient discovery was conducted" for the purposes of settlement approval. *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977). At this stage, the Court and the parties "possess ample information with which to evaluate the merits of the competing positions." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). Accordingly, this factor favors approval of the settlement.

### 4. *Probability of Success on the Merits*

The Court now addresses the fourth factor of the probability of success on the merits, which the Fifth Circuit has identified as the "most important factor." *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). "A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of this case." *Reed*, 703 F.2d at 172. Here, the Court is of the opinion that the potential result favors approval of the settlement. If the class action had proceeded to trial and the class was to prevail, recovery from either Securities America, which, as noted at a previous hearing, is perilously undercapitalized, would be extremely difficult. Recovery against Ameriprise, as the parent company of Securities America's parent company, SAFC, would be similarly difficult. Class members would have to prove not only that the statements contained within the Private Placement Memoranda ("PPM") issued by Provident or Medical Capital entities were false, but that Securities America knew or should have known of the untruths or omissions within the PPMs. Even if they were to succeed, the testimony of Securities America CFO Kelly Windorski at the March 18, 2011 preliminary approval hearing for a previous proposed settlement indicates that full recovery of a judgment from Securities America or SAFC would be nearly impossible due to the small amount of assets available; indeed, the previous proposed settlement contemplated a $21 million contribution from Securities America and SAFC on a Rule 23(b)(1)(B) "limited fund" theory (which the Court ultimately rejected), and it is clear that the total amount of assets available from Securities America or SAFC are not sufficient to cover the full amount of all claims.

Ameriprise's voluntary contribution of tens of millions of dollars to this settlement provides class members with an opportunity to recover a substantial portion of their losses when it would be difficult to even demonstrate Ameriprise's control person liability were this litigation to continue.   Plaintiffs would have to demonstrate that Ameriprise, the parent company of SAFC, which is the parent company of Securities America, had actual power or influence over Securities America and its sales of Provident and Medical Capital securities. *G.A. Thompson & Co*, 636 F.2d at 957-58; *Fernea*, 2011 WL 2769838 at *15.   While the Court does not presume to rule on Ameriprise's knowledge, influence, and ultimate liability, piercing the corporate veil in such a manner is a very difficult task.   Furthermore, the costs of litigating this dispute with all three entities and the burdens that the class would have to overcome further include surviving renewed motions to dismiss and motions for summary judgment, obtaining class certification, convincing a jury at trial, and very likely overcoming an eventual appeal.   The settlement contemplated here would avoid those costs and difficulties.

In further support of the difficulty of the road ahead for the class, class counsel directs the Court to a recent decision in a related case, *Brown v. J.P. Turner & Co.*, No. 1:09-cv-2649-JEC, 2011 U.S. Dist. LEXIS 53118 (N.D. Ga. May 17, 2011) (Carnes, J.). *Brown* is similar to this case; it is a suit brought by Provident investors against a broker-dealer who sold them Provident securities, alleging claims for fraud, negligence, negligent misrepresentation, and violations of Georgia securities laws.   The burdens faced by the plaintiffs in *Brown* are very similar to those that would be faced by the class

24

in this case. Judge Carnes recently granted a motion to dismiss that case, and raised

grounds for the dismissal that the class in this case would also have to demonstrate,

including whether the broker-dealers had a duty to verify the accuracy of the PPMs for

negligence purposes, whether the misrepresentations were made by Provident rather than

the broker-dealer in the case, and whether there was a legal duty on the part of a broker-

dealer to perform due diligence on the Provident securities. *Id.* at *14-*16. The Court

agrees with class counsel that *Brown* demonstrates the difficulty of the class's case;

accordingly, a recovery of the amount contemplated by this settlement would amount to a

fair, reasonable, and adequate recovery for purposes of the fourth *Reed* factor.

### 5. Range of Possible Recovery by the Class

The fifth factor is the range of possible recovery by the class. This factor includes

an inquiry into whether the terms of the settlement "fall within *a reasonable range of*

*recovery*, given the likelihood of the plaintiffs' success on the merits." *Klein*,

705 F. Supp. 2d at 656 (emphasis in original) (quoting *Turner v. Murphy Oil USA, Inc.*,

472 F. Supp. 2d 830, 849-50 (E.D. La. 2007)). Class counsel has presented a number of

empirical studies and examples that show that this recovery of approximately 40 cents on

the dollar for investors in a securities class action far exceeds the normal amount

recovered in such suits. Indeed, this potential recovery compares very favorably to

recoveries seen in other securities class actions in this district. Based on a review of the

empirical evidence and the Court's own experience in this litigation, the Court is inclined

to agree with class counsel's assertions. The previous proposed settlement, which only

involved Securities America and SAFC, amounted to a recovery of mere pennies on the

dollar; by contrast, this amounts to a significantly greater recovery for class members. Considering the proposed settlement amount and percentage of recovery for class members far exceeds the normal result of class action settlements, this factor weighs strongly in favor of settlement.

"Under [the range of possible recovery] factor, 'a court should consider the views of objecting class members when their 'objections to the settlement agreement center on their view that the relief it provides is inadequate.'" *Klein*, 705 F. Supp. 2d at 656 (quoting *Ayers*, 358 F.3d at 370). In assessing the potential range of recovery, the Court takes into account the risks involved in the litigation and the potential costs involved, and ultimately considers whether the settlement amount is fair and reasonable and falls within a reasonable range of recovery. *See id.* (citations omitted).

One of the objections to the settlement focuses on the inadequacy of this result compared to the recovery of Massachusetts Medical Capital investors. Kim Runkle and James Yonkers argue that forty cents on the dollar minus costs and attorneys' fees does not amount to a fair settlement, especially in light of Securities America's agreement with the state of Massachusetts to fully compensate Massachusetts Medical Capital investors. They ask the Court to reject the settlement and send the parties back into negotiations or proceed with class certification litigation. While it is true that certain class members at this point will achieve a 100% recovery as opposed to a 40% recovery based solely upon the advocacy of Massachusetts securities regulators, the Court is not convinced that this is a reason to reject the entire settlement. These objections, while reasonable, do not take into account the full context of the process that produced this settlement and the

circumstances that the class as a whole and the settling defendants face. The unique recovery of the Massachusetts investors arose out of the result to a completely separate litigation that occurred with no involvement of this Court and not in conjunction with the class represented in this case. In any case, the additional recovery for certain members of the class based on an entirely separate proceeding is no reason to reject a settlement that still provides a substantially favorable recovery to the remainder of the class. This objection is therefore overruled.

A second objection by Thomas and Germaine Simon argues that investors should be able to recover interest on their investments in addition to the principal. However, this addition would amount to a negligible additional recovery that is not a sufficient reason to reject the settlement before the Court. The Simons' objection does not take into account the breadth of the negotiations taken in this case to secure the substantial recovery for all class members that far exceeds previously contemplated amounts. The Court shall not reject this settlement because the settlement does not include a small additional amount based on interest; accordingly, the Simons' objection is overruled. Overall, the objections of four class members out of thousands whose claims will be resolved by this settlement do not preclude approval. *See Klein*, 705 F. Supp. 2d at 650 ("That one class member of 369 has objected to the proposed settlement does not preclude the court from approving it.").

The Court is also convinced that the business model of Securities America would make the reality of full recovery extraordinarily difficult, if not impossible, in the wake of a successful legal victory. As the Court has repeatedly observed throughout this

27

litigation, the undercapitalized and underinsured nature of the business model used by Securities America would have ensured that, even if the plaintiffs were to secure a legal victory in this case, Securities America and SAFC would not possess nearly enough assets to provide a recovery of the amount necessary to fully compensate class members. Mr. Windorski's testimony and the scope of the previously-rejected settlement strongly support this assessment. The scope of this settlement, which has been greatly magnified by Ameriprise's voluntary contribution to the settlement fund, is especially attractive considering the reality of the potential recovery in this case when taking the business model and assets of Securities America into account.

In light of these considerations, the fifth factor weighs in favor of approving the settlement.

### 6. *Opinions of Class Counsel, Class Representatives, and Absent Class Members*

The final factor is the opinions of class counsel, class representatives, and absent class members. As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330; *see also Reed*, 703 F.2d at 175. Here, class counsel, other counsel affiliated with the class action and ultimate settlement result, the Liquidating Trustee of the Provident Royalties Liquidating Trust, and the Provident and Medical Capital Receivers have enthusiastically endorsed the proposed settlement as a substantial achievement and recovery for class members, and the Court is inclined to agree. All class representatives have also submitted affidavits in

support of the settlement, further supporting approval. Only 30 of over 2,000 class members have opted out of this settlement. "The extremely small number of opt-outs suggests a favorable opinion by the absent class members." *Vaughn*, 627 F. Supp. 2d at 748. Furthermore, a very small number of objections have been received, and the several of the objections from class members actually approve of the amount of the settlement, instead objecting to the amount of attorneys' fees requested by counsel.[3] One class member, Patricia MacDonald, wrote in support of the settlement. The opinion of the personnel involved in the litigation toward the proposed settlement has been overwhelmingly positive, and the Court considers all of the contributions to weigh heavily in favor of approving the settlement.

Accordingly, the Court is convinced that all of the prescribed factors for evaluating a class action settlement support approval of the settlement agreement before the Court.

*E. Objections by the Commissioner of Securities and Insurance of Montana*

The Office of the Commissioner of Securities and Insurance of the state of Montana, which is not a party to this litigation, has submitted a brief objecting to the settlement to the extent it impedes upon the power of Montana state regulators to bring actions against any settling defendant for violations of Montana state law. A civil action by the state of Montana is currently proceeding against Securities America. Montana does not appear to object to approval of the settlement itself, but only to the extent that it

---

[3] As noted earlier, these objections shall be addressed in a separate order.

interferes with the ability of Montana state regulators to pursue actions against Securities

America under the laws of the state of Montana.

While Montana does not specifically identify what language in the Settlement

Agreement it objects to, the Court believes that its concerns focus on the following

provisions in Part C:

> 3. Dismiss all Released Claims with prejudice and without costs to any
> Settling Party as against any other Settling Party, and adjudge that
> Releasees are released from any and all liability as to the Released Claims,
> such that *any and all Claims filed by, or on behalf of, or for the benefit of,
> or in the name of any Settlement Class Member(s) in any forum against
> Releasees are or shall be dismissed to the extent they assert the Released
> Claims*;
>
> 4. Bar and permanently enjoin Settlement Class Members, and *any other
> persons purporting to act in the name of, or on behalf of, or for the benefit
> of any Settlement Class Members, from prosecuting, commencing or
> continuing any and all Released Claims which they had or have, against
> the Releasees in any forum*;
>
> * * *
>
> 6. Bar and permanently enjoin Releasees, *and any other persons purporting
> to act in the name or on behalf of any Releasee*, from prosecuting,
> commencing or continuing against any Settlement Class Member any and
> all claims that they had or have based upon the matters set forth in
> paragraph VIII.C.5 above . . .

Settlement Agreement, Pls.' App., *Billitteri* Docket No. 449-3, at 198-99 (emphasis

added).

The proposed settlement presented to the Court for approval contemplates settling

claims for restitution by investors in the class.[4]  This settlement does not prevent a state

---

[4] According to counsel for Securities America, there are six Provident investors
who are residents of the state of Montana.  Five have claims that are covered by this

such as Montana from bringing claims or charges against Securities America, SAFC, or Ameriprise for violating its laws or securities regulations. Should a state choose to bring such claims or charges, there is no impediment to the assessing of fines, penalties, or injunctive relief against the settling Defendants. At this stage, the question of whether the state of Montana or any other state may pursue claims against Securities America or any other settling defendant for the purpose of recovering on behalf of class members is not presently before the Court, and the Court shall not reject the settlement based upon this objection. *See Larson v. Sprint Nextel Corp.*, No. 07-5325, 2010 WL 234934, at *16 (D.N.J. Jan. 15, 2010) ("[T]o the extent that the State of Minnesota encourages the Court to declare that the release provision contained in the *Larson* Settlement Agreement does not prevent its right to pursue law enforcement action (and corresponding restitution claims) in Minnesota state court, such matters are not presently before this Court and, therefore, will not be addressed at this juncture.").

In *In re American Investors Life Insurance Co. Annuity Marketing & Sales Practices Litigation*, 263 F.R.D. 226 (E.D. Pa. 2009), Judge McLaughlin faced similar objections to a settlement from the Attorneys General of two states. *Id.* at 241. Judge McLaughlin overruled these objections, writing,

> In terms of foreclosed claims or relief, the issue of whether a . . . restitution remedy may be foreclosed is not currently before the Court. The defendants in this action are entitled to a release of all claims held by class members in exchange for providing the relief outlined in the settlement. The attorneys' general law enforcement powers are not claims the plaintiffs have, and as such, the plaintiffs do not release any of these claims.

settlement, and one is an arbitration claimant whose claims are covered by the settlement addressing arbitration claims.

*Id.* The Court is convinced that a similar result is mandated in this case. The question of whether Montana is foreclosed from pursuing certain actions by this settlement is not before the Court, and it is unnecessary and inappropriate to reject the settlement based upon a controversy that the Court need not and should not consider at this stage. In any case, even if the Court were to find merit to Montana's objections, it lacks the authority to comply with its apparent request to alter or omit certain language within the settlement. *See DeHoyos*, 240 F.R.D. at 286 (noting that "the court cannot the terms of the proposed settlement; rather, the Court must approve or disapprove of the proposed settlement as a whole") (quoting *Garza v. Sporting Goods Props., Inc.*, No. SA-93-CA-108, 1996 WL 56247, at *11 (W.D. Tex. Feb. 6, 1996) (Biery, J.)). Montana's objection to the proposed settlement is therefore overruled.

## Conclusion

"A proposed settlement need not obtain the largest conceivable recovery for the class to be worthy of approval; it must simply be fair and adequate considering all of the relevant circumstances." *Klein*, 705 F. Supp. 2d at 649. Here, the Court is convinced that the proposed settlement before it provides a fair, reasonable, and adequate recovery for class members, and meets all of the requirements of Rule 23. Accordingly, it is ORDERED that the Motion for Class Action Settlement with Securities America, Inc., Securities America Financial Corporation, and Ameriprise Financial, Inc. is GRANTED. After an order of severance is issued, the Court shall issue a separate order detailing the Settlement Agreement and providing for final judgment of the claims against Securities

America, SAFC, and Ameriprise in the *Billitteri*, *Toomey*, and *McCoy* cases.  The Court shall also address the issue of attorneys' fees in a separate order.

IT IS SO ORDERED.

Signed this  4th day of August, 2011.

Royal Furgeson
Senior United States District Judge